UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
INVENSYS SYSTEMS, INC.,           )
       Plaintiff,               )
                                 )
  v.                              )   Civ. No. 1:05-CV-11589-WGY
                                 )
CENTENNIAL INSURANCE COMPANY,     )
       Defendant.               )
_____)   **REQUEST FOR HEARING**

## OPPOSITION OF PLAINTIFF INVENSYS SYSTEMS, INC. TO DEFENDANT CENTENNIAL'S MOTION OF FOR SUMMARY JUDGMENT

     To succeed on a defense of either "late notice" or "voluntary payments," Massachusetts law requires the insurer to prove that it incurred actual and substantial prejudice.

     Defendant Centennial Insurance Company fails to satisfy its burden of proof.  In its Motion for Summary Judgment, Centennial merely *speculates* about categories of prejudice that it theoretically could have suffered.  It does not provide any evidence, through affidavit or deposition testimony or otherwise, that its position was adversely affected in any way by either late notice or so-called voluntary payments.

     In fact, there was no prejudice.  For example:

- **Defense of the Underlying Action:** It is undisputed that Plaintiff Invensys Systems, Inc. was well-defended in the underlying action.  Even if Centennial had decided to spend money associating in the defense -- which would have been virtually unheard of for an excess carrier -- Centennial identifies nothing concrete that would have played out any differently (let alone any better) in the defense of the case.

- **Centennial's Ability to Investigate the Insurance Claim:** Centennial was able to conduct a complete investigation of Invensys's excess insurance claim.  All of Centennial's inquiries were answered to its satisfaction; at no time did Centennial complain of missing documents or unavailable witnesses.  And when it finally issued a coverage position after a year-long investigation, Centennial's denial of coverage was based an alleged failure to exhaust all primary coverage, not on prejudice resulting from late notice or so-called voluntary payments.  At no time -- during the

  investigation or in discovery in this case -- has Centennial asserted that its ability to investigate the claim was compromised.

- **Centennial's Net Financial Exposure:** If anything, Centennial actually *benefited* by being absent from the original coverage action against the primary insurer, since Liberty Mutual's settlement offer likely would not have included $650,000 in indemnity payments under primary policies having pollution exclusions if it had known of Centennial's $5 million excess/umbrella policy containing no pollution exclusion.

In sum, there was no prejudice from any alleged breach of a policy condition. Accordingly, Plaintiff Invensys Systems, Inc. respectfully requests the Court to ***deny*** Centennial's Motion for Summary Judgment, and to grant Plaintiff's own cross-motion.

## FACTUAL BACKGROUND

Invensys respectfully incorporates the statement of facts that it set forth in its own Motion for Summary Judgment filed September 22, 2006, as well as the Plaintiff's Separate Statement and attached exhibits, deposition testimony and affidavits.

In addition, Invensys respectfully calls the Court's attention to ***what is missing*** from Centennial's Separate Statement of Facts. At no point in its Statement of Facts does Centennial identify any specific prejudice that it has suffered as a result of Invensys's alleged breach of policy conditions. The absence of actual and substantial prejudice is the single most important fact in this case.

## SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, a court must "look at the record in the light most favorable to the opposing party and indulge all inferences favorable to that party." Early v. Eastern Transfer, 699 F.2d 552, 554 (1st Cir. 1983), citing Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904, 47 L. Ed. 2d 754, 96 S. Ct. 1495 (1976).

"[The] only pertinent inquiry must be whether, on the pleadings, depositions, affidavits, and exhibits, there exists a fact in dispute which is material. [The] search is not for likelihoods or probabilities, but for possibilities within a fairly wide range or remoteness." Massengale v. Transitron Electronic Corp., 385 F.2d 83, 88 (1st Cir. 1967).

"[T]he test remains a fairly rigorous one," Greenburg v. Puerto Rico Maritime Shipping Auth., 835 F.2d 932, 934 (1 Cir. 1987), and summary judgment is appropriate only in "rare instances." Fadum Enterprises, Inc. v. Liakos, 1989 U.S. Dist. LEXIS 1096, *7 (D. Mass. 1989). A grant of summary judgment will be upheld only "if there exists no genuine issue of material fact and the [movants] are entitled to judgment as a matter of law." Early, 699 F.2d at 554-55.

## ARGUMENT

Centennial asserts that it is entitled to summary judgment because Invensys violated two conditions under the excess policy: (1) Invensys provided extremely late notice of the underlying One Wheeler Road lawsuit; and (2) Invensys violated the cooperation clause by entering into a "voluntary" settlement prior to providing notice of the claim. However, Centennial does not meet its burden of proving actual and substantial prejudice with respect to either alleged breach. Further, it has failed to meet its burden of proving that Invensys violated any policy condition concerning so-called "voluntary payments."

For these reasons, Centennial's motion for summary judgment should be denied.

I. **CENTENNIAL FAILS TO PROVE PREJUDCE CAUSED BY LATE NOTICE**

On summary judgment, as at trial, Centennial has the burden of proving that it suffered actual and material prejudice as a result of late notice of the underlying claim. See Darcy v. Hartford Ins. Co., 407 Mass. 481, 486, 554 N.E.2d 28 (1990). Centennial does not carry its burden of proof.

The totality of Centennial's attempt to show that it suffered prejudice from late notice is contained in a single paragraph, on pp. 14-15 of its Memorandum of Law, in which it declares that "[n]o clearer case of late notice prejudicing Centennial's rights can be imagined." Centennial Memo. at 14. In that paragraph, Centennial makes a three-part argument. First, it sets forth a chronology to support its position that late notice in this case was "extreme." Id. at 14-15. Second, it asserts that this extreme late notice violated Invensys's duty under the excess policy to provide immediate notice of all suits. Id. at 15. Finally, Centennial states its entire prejudice argument: "By the time that Centennial received notice of this matter it was too late for it to do anything to protect its interests; the case was over." Id.

Centennial does nothing more. In particular, Centennial makes no argument that its position would have been enhanced in any respect had it received earlier notice of the Wheeler Road matter. For example:

- Centennial does not contend that, by the time it received notice, any key witnesses had died or any material evidence had been lost or destroyed. Indeed, it cannot make this argument, because (a) the claims correspondence demonstrates that Centennial received answers to all of its material inquiries, see Invensys Exh. 7-23, and (b) when Centennial denied coverage, it did not contend that its claims investigation had been hindered in any way by unavailable witnesses or evidence. See Invensys Exh. 23.

- Centennial does not establish that the underlying defense would have been conducted any differently (let alone any more successfully) had it received earlier notice. Such an argument would have been unreasonable, given (a) Invensys was represented by

experienced environmental defense attorneys appointed by Liberty Mutual, see Invensys Fact Nos. 66-67; (b) Invensys utilized the services of experienced environmental consultants from Dames & Moore, see Invensys Fact No. 67; and (c) defense counsel procured an excellent result at trial by avoiding any liability for soil remediation costs, notwithstanding substantial evidence that Invensys had contaminated the soil. See Invensys Fact Nos. 32-35.

- Centennial adduces no evidence that the underlying case could have been resolved more favorably if Centennial had been involved at an earlier point. To the contrary, the resolution of the underlying case reflected the well-supported findings of fact and rulings of law issued by Judge Stearns. See Invensys Fact Nos. 41-42. More to the point, Centennial identifies no aspect of Judge Stearns' ruling or final judgment that was reasonably susceptible to reversal on appeal.

- Centennial makes no argument, and provides no evidence, that earlier notice to Centennial would have resulted in a more favorable settlement with the primary insurer, Liberty Mutual. Just the opposite is the case: By not being represented in the initial coverage litigation between Invensys and the primary insurer, Centennial realized a windfall of $650,000 arising from Liberty Mutual's payment of that same amount under policies containing pollution exclusions. See Invensys Exh. 36 at ¶ 13(d) (settlement dynamics would have been less favorable to Centennial if its excess policy containing no pollution exclusion had been involved in coverage litigation against Liberty Mutual).

- Finally, Centennial does not provide any evidence, by affidavit or otherwise, that earlier notice would have caused it to act any differently than how it did in this case. In its coverage determination, Centennial asserted only one defense: That it had no obligation to provide coverage or defend the case, because Invensys should be looking solely to the primary insurer for coverage. See Invensys Fact No. 76; Invensys Exh. No. 23. In its summary judgment motion, Centennial does not even attempt to explain how it would have taken a different position had it received earlier notice. Indeed, it makes the opposite argument, by asserting that Invensys had some $4.8 million in available primary coverage that it should have tapped before coming after Centennial. See Dfdt. Separate Statement, Fact No. 53.[1]

Rather than demonstrating specific examples of actual prejudice, Centennial asks the

court to *presume* prejudice. But as numerous courts have held, prejudice cannot be presumed; it

---

[1] What Centennial does *not* say, however, is that of this $4.8 million in "available" coverage, some $4.5 million was subject to a limited pollution exclusion that, according to Liberty Mutual, barred coverage. See Pl. Fact No. 63; Pl. Exh. 7 (December 3, 1991 letter denying coverage based on pollution exclusion); Pl. Exh. 35 (Franciose Aff., Exh. 35 at ¶¶19-21); Pl. Exh. 38, 39 (Liberty Mutual policy forms with pollution exclusions).

must be proven with particularity. See, e.g., Employers' Liability Assur. Corp. v. Hoechst Celanese Corp. ("Hoechst-Celanese"), 43 Mass. App. Ct. 465, 476, 684 N.E.2d 600, 609 (1997) (where insurer fails to present "grass roots evidence of the effects upon them of delayed notice," Appeals Court rejects attempt "to postulate general propositions or presumptions" as to prejudice the insurer might have suffered).

Thus, there must be a specific showing of actual prejudice. But what, exactly, must such showing entail? The Massachusetts courts have elucidated the "prejudice" requirement in several respects. First, the prejudice must go directly to the purpose for which notice was required, i.e., the ability of the insurer to defeat or limit underlying claims:

> Attention is … to be directed, not to the nature of the insured's dereliction in providing late notice, but rather to what prejudice the insurer has incurred, and could not by its own actions reasonably avoid, in consequence of the late notice -- any such prejudice having to relate to the insurer's general object of defeating fraudulent, invalid, or exaggerated claims.

Hoechst Celanese, supra, 43 Mass. App. Ct. at 476, 684 N.E.2d at 607-08. In other words, if Centennial cannot provide concrete evidence of exactly how its ability to defeat or limit coverage was impaired, then it cannot prevail on a late notice defense. The record is bereft even of an assertion that Centennial was impaired in its ability to defeat or limit coverage, let alone concrete evidence.

Second, the prejudice cannot simply be theoretical; rather, the late notice must demonstrably place the insurer in a worse position than it would have been in had timely notice been afforded:

> And the prejudice shown, to relieve the insurer, must have been material and specific. The insurer is challenged to show that it suffered "actual prejudice," not just a "possibility" of it; that there has been "actual harm" to its interests; that it has been

>relegated to a "substantially less favorable position than it would have been in had timely notice been provided."

Id., citing Darcy v. Hartford Ins. Co., 407 Mass. 481, 486, 554 N.E.2d 28 (1990) (requiring showing that "the insurer's interests have been actually harmed"). For example, the insurer can establish prejudice by showing that its claims investigation was materially hindered by "the loss of critical evidence, or testimony from material witnesses despite diligent good faith efforts on the part of the insurer to locate them." See Darcy, 407 Mass. at 486, 554 N.E.2d at 31-32; see also Eastern Products Corp. v. Continental Cas. Co., 58 Mass. App. Ct. 16, 23-24, 787 N.E.2d 1089, 1095 (2003) (prior to providing notice, key witness had died and insured had destroyed all of its correspondence and business records). Here Centennial does not identify a single document or witness that it needed, but could not procure, due to late notice.

Indeed, it is fair to say that Centennial does exactly the opposite of that which is prescribed in the above-cited cases. Contrary to what is proscribed in Hoechst-Celanese, Centennial improperly focuses its analysis on "the nature of the insured's derelication in providing late notice, …rather [than on] what prejudice the insurer has incurred":

>No clearer case of late notice prejudicing Centennial's rights can be imagined. Centennial was not put on notice… until sixteen years after the contamination was discovered and fifteen years after Trans-Sonics was named as a potentially responsible party by the DEQE; nine years after the suit was filed; four years after entry of the Final Judgment; nearly four years after Trans-Sonics paid the Final Judgment; and only after Trans-Sonics had entered into a settlement that obligated it to pay additional amounts.

See Centennial Memo. at 14-15. In other words, Centennial is arguing that because notice was extremely late, the Court should hold that it was prejudiced. However, as numerous Massachusetts courts have stressed, "Standing alone, length of time is insufficient to satisfy a showing that delay in notification materially prejudiced an insurer. … This is true even if the

delay could be fairly characterized as 'extreme.'" Lighter, supra, 43 Mass. App. Ct. at 417, 683 N.E.2d at 299, citing Darcy v. Hartford Ins. Co., 407 Mass. 481, 486, 554 N.E.2d 28 (1990).

Moreover, a presumption of prejudice is particularly inappropriate with respect to excess insurers like Centennial. As explained in Hoechst-Celanese:

> To create a presumption of prejudice in favor of excess insurers would be quite anomalous. Excess carriers are not as likely as primary carriers to suffer harm from late notice because they are at a remove from the investigation and handling of claims: ordinarily they are not bound to do this work and they have no duty to defend the insured. Mostly they rely on the primary insurer in the first instance to do the job.

Hoechst-Celanese, 43 Mass. App. Ct. at 478-79, 684 N.E.2d 609.[2] This same point is set forth in detail by Plaintiff's expert, Gene Waymon, a former Commercial Union claims supervisor with 25 years experience handling primary and excess claims. See Invensys Exh. 36 at ¶¶ 6-7. As explained by Mr. Waymon, excess insurers have neither the exposure, nor the financial incentive, nor the need to do much of anything with an environmental claim, since they can "'piggyback' on the claims-handling effort of primary insurers. … Excess insurers … understand that it makes economic sense simply to make paper requests to their policyholders and to rely on the primary insurers to do thorough investigations and to ensure that the policyholders are adequately represented." Id., ¶ 6.[3]

---

[2]  Centennial directs the Court to Fireman's Fund Ins. Co. v. Valley Manuf. Products Co., Inc., 765 F. Supp. 1121, 1123 (D. Mass. 1991). However, that decision is inapposite to this case. In Fireman's Fund, Judge Harrington expressly found that key witnesses had died prior to the date of notice, thereby creating actual and substantial prejudice to the excess insurer. See id. at 1128-29. By contrast, Centennial cannot identify a single witness or document (let alone a *material* witness) that was became unavailable during the period of delayed notice.

[3]  In response the holding in Hoechst-Celanese that a rule of *per se* prejudice is particularly inappropriate in the context of excess coverage, Centennial relies on contrary out-of-state authority interpreting Texas law. See Dfdt. Memo. at 12-13, citing Motiva Enterprises v. St. Paul Fire & Marine Ins. Co., 445 F.3d 381, 386 (5th Cir. 2006). This out-of-state authority is unpersuasive in this case, for at least three reasons. First, Motiva is a "voluntary payments" case, not a "late notice" case. Thus, to the extent it is relied upon to support a "late notice" defense, it is inapposite. Second, whether cited in support of "late notice" or "voluntary payments," the Motiva adopts a rule of *per se* prejudice that not only appears to be at odds with Texas state rulings but, more importantly, has been

Significantly, the case upon which Centennial places the greatest reliance in arguing for a presumption of prejudice -- the Lusalon decision -- does not even remotely stand for the proposition for which Centennial cites it.  Specifically, Centennial claims (incorrectly) that "[t]he Massachusetts Supreme Judicial Court ahs expressly held that were a judgment has already been entered against the insured, thus thwarting any ability on the part of the insurer to investigate, respond or have any input at all with respect to the claim, prejudice will be presumed as a matter of law."  See Centennial Memo. at 10, citing to Lusalon, Inc. v. Hartford Accid. & Indem. Co., 400 Mass. 767, 511 N.E.2d 595 (1987).  Later, Centennial claims that the SJC "declare[ed]" (i.e., held) that where a policyholder gives notice after a judgment has been entered, "'[t]his delay is prejudicial as a matter of law.'"  See Centennial Memo. at 11, quoting Lusalon, 400 Mass. at 769, 511 N.E.2d at 596.  Centennial then asserts, "*Lusalon* controls the issues in this case and requires that judgment be entered for Centennial.

Centennial's selective quotation from Lusalon is a gross distortion of the holding in that case.  In fact, the line that Centennial ascribes to the SJC -- "[t]his delay is prejudicial as a matter of law" -- was not the opinion of the Supreme Judicial Court.  Rather, these words are found in a footnote, and they constitute the SJC's quotation of the Appeals Court's ruling.  See Lusalon, 400

---

expressly rejected by the appellate courts in Massachusetts as well as federal courts in this District.  Indeed, far from adopting a rule of *per se* prejudice, the SJC has refused even to permit a *rebuttable presumption* of prejudice even in cases of extreme prejudice.  See Darcy, supra, 407 Mass. at 485-86, 554 N.E.2d at 31 (rejecting insurer's request to adopt "rebuttable presumption of prejudice" where late notice exceeds five years).  Simply put, Motiva is contrary to the established law of this state.

Finally, the facts of Motiva are materially different than the facts of this case, because the "umbrella" coverage at issue in Motiva is materially different than the "excess" insurance at issue in this case.  The umbrella coverage in Motiva incorporated a direct duty to defend on the part of the umbrella insurer, which placed that insurer in a materially different position (essentially, as a primary insurer) than the remote position occupied by Centennial (*qua* excess insurer) in this case.

Mass. at 769 n.3, 511 N.E.2d 596 n.3 ("Concluding that this delay was 'prejudicial as matter of law,' id., the Appeals Court affirmed the Superior Court judge on the issue of Hartford's duty to defend as well."). What Centennial does not disclose is that the Supreme Judicial Court declined to adopt the Appeals Court's holding, instead affirming the decision on a wholly different ground that did not involve the issue of late notice or prejudice. See id., 400 Mass. at 773 n.9, 511 N.E.2d at 599 n.4 ("The Appeals Court appears to have concluded that Hartford had no duty to defend Lusalon … because of lack of notice. We reach the same result on different grounds."). In short, Centennial's reliance upon Lusalon is misplaced; Lusalon is irrelevant to this case.[4]

As a final argument, Centennial cites an out-of-state case holding that the notice-prejudice rule does not apply if the policyholder is a corporation. See Centennial Memo. at 14, citing to Avco Corp. v. Aetna Casualty & Surety Co., 679 A.2d 323, 330 (R.I. 1996). The major problem with this argument is that Massachusetts courts have repeatedly applied the notice-prejudice rule in cases involving business policyholders. See, e.g., Sarnafil, Inc. v. Peerless Ins. Co., 418 Mass. 295, 306, 636 N.E.2d 247, 253 (1994) (applying notice-prejudice rule in case involving corporate policyholder); Hoechst-Celanese, 43 Mass. App. Ct. at 478-79, 684 N.E.2d 609 (same); cf. Rubenstein v. Royal Ins. Co., 429 Mass. 355, 357-58, 708 N.E.2d 639, 641-42 (1999) (SJC rejects similar argument, in context of fee-shifting, that business policyholders should be treated less favorably than consumer policyholders).

The bottom line is that Massachusetts law is clear that late notice -- even extreme late notice -- is insufficient to relieve an insurer of coverage obligations, unless the insurer proves

---

At bottom, the Court need not to look to authority from Texas or any other state, because Massachusetts law is clear: Prejudice must be proven, and will *not* be presumed, especially when dealing with excess insurers having no duty to defend.

[4] Because it was vacated upon the SJC's granting of further appellate review, the Appeals Court decision in

actual and substantial prejudice. "[A]n insurance company may only deny [coverage] because of the insured's failure to provide timely notice to the company if that delay materially prejudiced the company." Lighter v. Lumbermens Mutual Cas. Ins. Co., 43 Mass. App. Ct. 415, 417, 683 N.E.2d 297, 299 (1997), citing Goodman v. American Cas. Co., 419 Mass. 138, 142, 643 N.E.2d 432 (1994).

Having failed to establish any actual and substantial prejudice due to late notice, Centennial is not entitled to summary judgment on this issue.

**II.     CENTENNIAL'S "VOLUNTARY PAYMENTS" ARGUMENT SHOULD BE REJECTED, BECAUSE (A) THERE WAS NO "VOLUNTARY PAYMENT" AND (B) THERE WAS NO PREJUDICE**

For two reasons, Centennial is not entitled to summary judgment with respect its "voluntary payments" defense. First, there was no "voluntary payment," because all indemnity payments have been made by Invensys pursuant to a trial court judgment. Under the policy itself, such payments are not "voluntary."

Second, Centennial has failed to prove, or even allege, any particularized prejudice that it suffered as a result of the supposed voluntary payments.

---

Lusalon is of no precedential value.

### A. As a Matter of Undisputed Fact and Law, There Was No "Voluntary Payment"

As an initial matter, there has not been any "voluntary payment" by Invensys. It is undisputed that Invensys made no payments until after it had been adjudged liable, pursuant to a final trial court judgment, in the amount of $1,144,523.79. At the point it paid the judgment, post-judgment interest was accruing daily and its property had been levied upon. See Pl. Fact No. 41. Similarly, the February 2000 settlement agreement allocated responsibility for post-trial remediation costs in strict accordance with the declaration of rights that Judge Stearns incorporated into the trial court's final judgment. See Fact No. 42. It is unreasonable -- and at odds with reality -- for Centennial to describe any of these payments as "voluntary." See, e.g., Waymon Aff., Exh. 36 at ¶ 14-15.

In addition, the suggestion that the payment of a trial court judgment is a "voluntary payment" is at odds with the terms of the Centennial policy. The Policy expressly provides coverage for "damages by reason of the liability imposed upon the insured by law." See Exh. 4, Policy Form Page 1 (Insuring Agreement I). Moreover, the very section upon which Centennial relies -- Condition E (Insured's Duties in the Event of Occurrence, Claim or Suit) -- expressly provides that "in the event that the amount of ultimate net loss becomes certain … through trial court judgment …, then the insured may pay the amount o f ultimate net loss to the claimant to effect settlement and, upon submission of due proof thereof, the company shall indemnity the insured for that part of such payment which is in excess of the retained limit …." See Pl. Exh. 4, Policy Form Page 3 (Condition E(3)).

Finally, Centennial disregards Mass. Gen. L. c. 175, §§ 112 and 113, which provide that

the legal liability the insurer under a liability policy becomes fixed as of the date of entry of a final judgment against the policyholder. Thereafter, any payment or settlement based on this final judgment is deemed to be compulsory, not voluntary. In this case, the February 4, 2000 Settlement Agreement constituted an implementation of the Judge Stearns' Final judgment dated April 19, 1996, insofar as it allocated liability for past and future groundwater to Invensys/Foxboro and allocated liability for past and future soil remediation to One Wheeler Road Associates. Thus, as a statutory matter, the predicate "voluntary payment" does not exist.[5]

For all of these reasons, Centennial has failed to meet its burden of proving that there was a "voluntary payment." On that ground alone, summary judgment should be denied.

### B.   Centennial Has Failed to Establish Actual and Substantial Prejudice

Both in the preceding section, dealing with the "late notice" defense, and in its own Motion for Summary Judgment filed on September 22, 2006, Invensys discussed the failure of Centennial to allege, let alone prove, any particularized form of actual, substantial prejudice. See supra at 4-10; see also Memo. in Support of Pl. Motion for Summary Judgment at 11-13, 15-17. In the interests of time and space, Invensys respectfully incorporates those discussions into this part of its Opposition. The facts and legal discussion in those sections set forth very clearly the reasons why Centennial is not entitled to summary judgment in this case.

---

[5]   It also should be noted that in order to establish a "voluntary payment" defense, the insurer must demonstrate that it was not notified of the underlying claim prior to the date of the supposed voluntary payment. In this case, Invensys provided a combination of oral and written notice of the underlying claim in June and July 1999, some eight months prior to the February 4, 2000, settlement agreement. Counsel for Invensys expressly referenced those conversations in the formal tender letter dated June 9, 2000 (Pl. Exh. 10), and at no time did Centennial's claims personnel dispute that such oral disclosures had taken place. See, e.g., Pl. Exh. 12 (Centennial's initial response to tender letter does not dispute that oral notice of the underlying case had been provided).

Invensys does wish to briefly address, however, Centennial's assertion through its citation to Augat, Inc. v. Liberty Mutual Ins. Co., 410 Mass. 117, 123, 571 N.E.2d 357, 361 (1991) and two Appeals Court cases, that prejudice may be presumed when notice is given after an underlying case has been resolved. This proposition has been squarely rejected by the appellate courts of Massachusetts. In particular, the SJC has made it clear beyond purview that prejudice arising from an alleged voluntary payment ***cannot be presumed, but instead must be proven***:

> "Finally, apart from the factual considerations just discussed, before Peerless could be relieved of responsibility based on Sarnafil's violations of insurance provisions [including voluntary payments], Peerless would have to show that had incurred actual prejudice."

See Sarnafil, supra, 418 Mass. at 305, 636 N.E.2d at 253. That is, "[t]he insurer is challenged to show that it suffered 'actual prejudice,' not just a 'possibility' of it; that there has been 'actual harm' to its interests; that it has been relegated to a 'substantially less favorable position than it would have been in had timely notice been provided.'" Hoechst-Celanese, supra, 43 Mass. App. Ct. at 476, 684 N.E.2d at 607-08. The cases cited by Centennial constitute nothing more than examples of where a *primary* insurer has in fact come forward with evidence of specific, actual, substantial prejudice to its position -- something that Centennial has failed to do in this case.

Due to Centennial's failure to prove actual and substantial harm resulting from the alleged voluntary payment, this Court should deny Centennial's Motion for Summary Judgment.

## CONCLUSION

Invensys respectfully requests the Court to deny Centennial's Motion for Summary Judgment, and to allow Invensys's own Motion for Summary Judgment.

Respectfully submitted,
PLAINTIFF INVENSYS SYSTEMS, INC.,
By its attorneys,

_____/s Robert J. Gilbert/_____
Robert J. Gilbert, Esq. (BBO # 565466)
GILBERT & RENTON LLC
344 North Main Street
Andover MA 01810
Tel (978) 475-7580
Fax (978) 475-1881

Dated: November 1, 2006

## CERTIFICATE OF SERVICE

I, Robert J. Gilbert, hereby certify that on November 1, 2006, a true and correct copy of the foregoing document was served electronically upon John T. Harding, Esq., counsel of record for Defendant Centennial Insurance Company.

_____/s Robert J. Gilbert/_____
Robert J. Gilbert