UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INVENSYS SYSTEMS, INC., ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 1:05-CV-11589-WGY |
| ) | |
| CENTENNIAL  INSURANCE  COMPANY, ) | |
| Defendant. ) | |
| ) | **REQUEST FOR HEARING** |

**OPPOSITION OF PLAINTIFF INVENSYS SYSTEMS, INC.
TO DEFENDANT CENTENNIAL'S MOTION TO STRIKE EXPERT REPORTS**

There is no merit to Defendant Centennial Insurance Company's motion to strike the

expert reports of, respectively, Leonard C. Sarapas and Gene Waymon.  As set forth below, the

reports are timely.  They are also relevant to issues in this case and easily satisfy the Daubert

standard for admissibility of expert testimony.  Accordingly, Invensys asks the Court to deny

Defendant's motion to strike.

**I.       There Is No Basis to Strike the Expert Report of Gene Waymon**

Gene Waymon's expert report is timely and relevant.

Gene Waymon was hired for one purpose only: To rebut the assertions of theoretical

prejudice that Centennial claimed, in its interrogatory responses, to have suffered as a result of

alleged late notice or voluntary payments.

That is, Centennial's discovery responses triggered the need for an expert witness.  Prior

to the service of its answers to interrogatories, Centennial had never specified the precise

prejudice that it had supposedly incurred as a result of the alleged breach of conditions by

Invensys.  Thus, until Centennial served its responses, it was literally impossible for Invensys to

procure an expert report that would be responsive to the assertions of prejudice that Centennial

1

was making.  Indeed, Invensys had no idea that an expert would reasonably be required, because Invensys expected (A) that Centennial would attempt to point to ***factual*** prejudice (i.e., a key witness had died, or a key document was lost or had been destroyed, or Invensys had failed to hire competent counsel, or something concrete), and (B) that Invensys's response to the alleged prejudice would be (as in most cases of alleged prejudice) to challenge the factual assertion that the concrete example had actually and materially injured Centennial's position.  That would be, principally, a factual dispute.

But when Centennial finally did get around to answering Invensys's interrogatories, it threw a curveball.  Rather than identifying concrete ways in which it had been prejudiced, Centennial instead asserted a series of vague, theoretical ways in which it might have been harmed.  Its answer is set forth in the margin.[1]

---

1       In response to Interrogatory No. 10, Centennial asserted the following instances of prejudice:

- "●     Centennial was deprived of an opportunity to make a timely investigation of the facts relating to the *Wheeler Road Lawsuit*
- ●     Centennial was deprived of its contractual right to associate in the defense of the *Wheeler Road Lawsuit*
- "●     Centennial was deprived of an opportunity to explore the issue of whether the *Wheeler Road Lawsuit* could be settled or otherwise resolved without trial
- "●     Centennial was prejudiced because Trans-Sonics was aware during the course of the *Wheeler Road Lawsuit* that the damages being sought by the plaintiff could be in the range of several million dollars and that its primary insurer, Liberty Mutual Insurance Company, had denied coverage for the claim
- "●     Centennial had no opportunity to participate in the decision to take the *Wheeler Road Lawsuit* to trial, including after Liberty Mutual had withdrawn from the defense of the case
- "●     Centennial was prejudiced because a Final Judgment was entered against Trans-Sonics several years before notice of the *Wheeler Road Lawsuit* was provided to Centennial
- "●     Centennial was deprived of any opportunity to participate in the decision not to appeal the Final Judgment in the *Wheeler Road Lawsuit*
- "●     Trans-Sonics entered into a binding settlement of the *Wheeler Road Lawsuit* without providing notice of the existence of the suit or the Final Judgment to Centennial
- "●     Trans-Sonics incurred substantial costs pursuant to the terms of the settlement that it entered into with the plaintiffs in the *Wheeler Road Lawsuit* without providing notice of the existence of the suit, the Final Judgment or the settlement to Centennial
- "●     Trans-Sonics did not notify Centennial of the fact that its primary insurer, Liberty Mutual Insurance Company, had denied coverage for the claim

On its face, these responses constitute exactly the sorts of "general propositions or presumptions" that a host of courts have rejected as inadequate to satisfy the requirement of "actual and substantial prejudice." See, e.g., Employers' Liability Assur. Corp. v. Hoechst Celanese Corp. ("Hoechst-Celanese"), 43 Mass. App. Ct. 465, 476, 684 N.E.2d 600, 609 (1997) (where insurer fails to present "grass roots evidence of the effects upon them of delayed notice," Appeals Court rejects attempt "to postulate general propositions or presumptions" as to prejudice the insurer might have suffered). See also Darcy v. Hartford Ins. Co., 407 Mass. 481, 486, 554 N.E.2d 28 (1990) (requiring insurer to show that it had been relegated to a "substantially less favorable position than it would have been in had timely notice been provided" and that "the insurer's interests have been actually harmed").

Rather than asserting specific ways in which its position was actually worse, Centennial asserted a series of general postulates, for example, that it had been denied an opportunity to associate with the defense, that it had been denied an opportunity to weigh in on trial strategy, that it had not been asked to opine on whether to settle post-trial or press forward with an appeal, etc. See Pl. Exh. 31 at 18-20. In other words, Centennial took the position that its interests as an

---

"•    Trans-Sonics did not notify Centennial that it was involved in litigation with Liberty Mutual relating to coverage for the *Wheeler Road Lawsuit* until the coverage litigation was on the eve of trial, when it was too late for Centennial to seek to intervene in the coverage action in order to protect its rights against Trans-Sonics and Liberty Mutual

"•    Liberty Mutual issued primary and umbrella insurance policies to Trans-Sonics and/or Invensys that had limits that were more than sufficient to cover all of Trans-Sonics' liabilities (past and future) relating to the *Wheeler Road Lawsuit*. Centennial was prejudiced because Trans-Sonics entered into a settlement agreement with Liberty Mutual that compromised Trans-Sonics' claim against Liberty Mutual for substantially less than the amount of coverage that Liberty Mutual had provided to Trans-Sonics"

See Centennial Answer to Interrogatory No. 10 (Pl. Exh. 31 at 18-20).

excess insurer were harmed simply by losing these opportunities to participate, even if it cannot point to anything that would have changed for the better if it had participated.

This interrogatory response -- that prejudice is shown by the mere loss of opportunity to participate, without any showing of actual harm -- is the proposition that Gene Waymon was hired to rebut. Centennial makes no argument that Mr. Waymon is not an expert, or that the substance of his opinions is defective in some way. Rather, it argues that his opinion is too late, and that under <u>Daubert</u> it is not relevant.

Neither of these arguments is persuasive. As for the timing, the following chronology is relevant: Invensys timely served interrogatories on May 4, 2006, seeking the basis for Centennial's claim of prejudice. <u>See</u> Pl. Exh. 40, attached hereto. Centennial finally answered more than four months later, on September 18, 2006 -- only four days before summary judgment motions were due. <u>See</u> Pl. Exh. 31. One day later, Gene Waymon was contacted by Plaintiff's counsel, and three days after that -- September 22, 2006 -- Mr. Waymon issued his opinion.

While four days may not be the shortest time ever for procuring an expert opinion, it is certainly within striking distance of the record. Moreover, the Waymon opinion is directed solely at the substance of Centennial's interrogatory answers, and it was Centennial (not Invensys) that controlled the timing of Centennial's disclosure of the basis for its claim of prejudice. Having delayed its interrogatory responses, Centennial can hardly complain that the resulting expert opinion was either untimely or prejudicial.[2]

---

[2]    It is also noteworthy that Centennial itself did not serve any interrogatories or document requests seeking an expert disclosure. Apparently, Centennial is taking the position that Invensys not only is required to respond to interrogatories that have never been asked, but must also use a crystal ball to predict what Centennial's own interrogatory responses will be so that Invensys knows what its expert should say. This is absurd.

In addition, any claim of prejudice is undercut by Centennial's own actions and inaction. Centennial fails to disclose that on September 21 -- three days after Centennial provided discovery responses -- Plaintiff's counsel called Centennial's counsel to alert him that the opinion would be coming and to suggest that the parties agree on a schedule for deposing experts. Rather than accepting this offer to depose experts, and rather than procuring its own counter-expert, Centennial did nothing for six weeks. See Gilbert Aff., Pl. Exh. 44. Finally, on November 1, Centennial filed a motion to strike. Because it failed to take any reasonable steps in response to an expert report that truly could not have been issued any sooner than it was, any resulting prejudice to Centennial is simply self-inflicted.

There is similarly no merit to Centennial's Daubert objection. Centennial has tried to prove prejudice by arguing -- as stated in response to Invensys's interrogatories -- that as an excess carrier, it could have been expected to do certain things (like spend money to associate in the defense, or take over the appeal, or involve itself with settlement negotiations), but that Invensys's alleged late notice and voluntary payments deprived Centennial of these opportunities. Centennial has thus opened the door to expert testimony concerning what, as a general matter, a reasonable excess insurer would typically do in a case involving environmental insurance claims.

Having opened this door, Centennial can hardly complain that a seasoned excess claims-handler like Mr. Waymon (whose expertise and opinions are not challenged) has opined that Centennial is full of baloney, and that excess carriers simply don't do the sorts of expensive, unproductive things that Centennial claims it lost the opportunity to do. Mr. Waymon's opinion

is 100% tracked to Centennial's interrogatory response claiming prejudice.  If Centennial's claim

of prejudice is relevant to the case, then so too is Mr. Waymon's expert opinion.

For these reasons, Invensys requests this Court to deny Centennial's motion to strike the

expert report of Gene Waymon.


**II.    There Is No Basis for Striking the Expert Report of Leonard Sarapas**

More than one year ago -- on September 19, 2005 -- Plaintiff informed Centennial in its

initial disclosures that Leonard Sarapas would be a witness. <u>See</u> Pl. Exh. 41.  Far from

attempting to sand-bag Centennial, Invensys identified him as ***the first witness*** on its disclosure.


For whatever reason, Centennial chose not to take Mr. Sarapas's deposition.  In fact,

Centennial chose not even to serve an interrogatory seeking the substance of any testimony that

he would provide. <u>See</u> Pl. Exh. 42.

Mr. Sarapas has now served an affidavit in support of summary judgment.  ***The affidavit***

***is almost 100% fact-based***, setting forth a summary of the evidence (or lack of evidence) that

was proffered at trial, as well as a summary of his own knowledge of site conditions.  It sets forth

the basis of how he accumulated that knowledge -- serving as the consultant retained by

Invensys to oversee the site -- and what that knowledge is. To the extent Mr. Sarapas is setting

forth facts of his own personal knowledge, there is no basis whatsoever to strike his affidavit.

Indeed, Centennial does not object to any of the fact-based portions of his affidavit.

* * * * *

Although Mr. Sarapas's affidavit is almost 100% fact-based, Invensys nevertheless provided a report of Mr. Sarapas's expert credentials in order to preempt a potential Centennial objection on the grounds that some degree of expert knowledge is wrapped up in Mr. Sarapas's statements of fact from his own personal knowledge. The "opinion" aspects of the affidavit are truly *de minimis*, and Centennial has provided no sound basis for striking them. As noted, Centennial never once requested, through interrogatories or document requests, the identity or substance of expert opinions. The scheduling order itself did not state a deadline for exchanging reports; and even Centennial's counsel would concede that both sides anticipated that if settlement talks were unavailing, then the parties would jointly move to extend the discovery deadline. <u>See</u> Pl. Exh. 43. Finally, Centennial fails to point out that it was given a full opportunity to take Mr. Sarapas's deposition, and that it declined to do so. <u>See</u> Gilbert Aff., Pl. Exh. 44. Thus, Centennial's suggestion that this was some kind of sandbag is simply not credible.

Centennial' <u>Daubert</u> objection is similarly unavailing. Centennial does not dispute Mr. Sarapas's experience and expertise, nor does it challenge the basis for his very limited opinion testimony. In fact, it is a bit difficult to determine what, exactly, Centennial objects to. Mr. Sarapas was intimately involved in the site for several years; he attended and participated intimately in the trial; and he is uniquely qualified not only to testify about the evidence that was and was not introduced at trial, but also the issues as to which such evidence was introduced.

\* \* \* \* \*

One final point should be made. Centennial raises no serious argument, either in its own summary judgment motion or in its opposition to Invensys's motion for summary judgment, that

a long-term occurrence took place at the site, that the resulting property damage was neither expected nor intended, that third-party property damage resulted, and that the essential elements of coverage have been established. Indeed, all of these matters were established by findings of fact and rulings of law that Judge Stearns issued, and that constitute the *res* for purposes of Invensys's liability and request for insurance coverage. See Pl. Exh. 1.

Thus, Mr. Sarapas's affidavit is simply "belt-and-suspenders" evidence, filed by Invensys for the purpose of demonstrating that there was no evidence in the trial record to contradict the findings of fact issued by Judge Stearns to the effect that the property damage at the site was not intentional, that it did not result from intentional discharges into the environment, .

For all of these reasons, Invensys requests the Court to deny Centennial's motion to strike the expert report of Leonard C. Sarapas. In addition, Invensys requests the Court to consider all factual matters set forth in the Sarapas affidavit, as Mr. Sarapas was a fully disclosed fact witness whose deposition Centennial chose not to take.

### CONCLUSION

Invensys requests the Court to deny Centennial's Motion to Strike Expert Reports.

Respectfully submitted,
PLAINTIFF INVENSYS SYSTEMS, INC.,
By its attorneys,

_____/s Robert J. Gilbert/_____
Robert J. Gilbert, Esq. (BBO # 565466)
GILBERT & RENTON LLC
344 North Main Street
Andover MA 01810
Tel (978) 475-7580
Dated: November 10, 2006          Fax (978) 475-1881

### CERTIFICATE OF SERVICE

8

I, Robert J. Gilbert, hereby certify that on November 10, 2006, a true and correct copy of the foregoing document was served electronically upon John T. Harding, Esq., counsel of record for Defendant Centennial Insurance Company.

_____/s Robert J. Gilbert/_____
Robert J. Gilbert

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
************************************
INVENSYS SYSTEMS, INC.,            *
        Plaintiff,                 *
                                   *
        v.                         *        CIVIL ACTION NO: 05-11589 WGY
                                   *
CENTENNIAL INSURANCE COMPANY, *
        Defendant.                 *
************************************
```

## PLAINTIFF'S FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Invensys Systems, Inc. ("Plaintiff") propounds its First Set of Interrogatories to Defendant Centennial Insurance Company ("Defendant").

## DEFINITIONS

A.     "Plaintiff" and "Invensys" mean Plaintiff Invensys Systems, Inc., formerly known as The Foxboro Company. "Trans-Sonics" means Trans-Sonics, Inc.

B.     "Defendant," "You," "Your" and "Centennial" means Defendant Centennial Insurance Company.

C.     "Affiliate" means any insurance company, insurance services company, or holding company that is a corporate affiliate, corporate subsidiary (direct or indirect), or corporate parent (direct or indirect) of Centennial.

D.     The "Policy" means Centennial Insurance Company Policy No. 42-00 76 30, effective January 1, 1972-1975.

E.     The "Underlying Action" means <u>One Wheeler Road Associates, et al.</u> v. <u>The Foxboro Company</u>, No. 90-12873k (D. Mass.).

1

F.    "Liberty Mutual" means Liberty Mutual Insurance Company.

G.    The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all documents, information or responses that might otherwise be construed as outside the scope.

H.    "Communication" or "communicated" refers to the transmittal of information in the form of facts, ideas, inquiries or otherwise.

I.    "Concerning" means relating to, referring to, describing, evidencing or constituting.

J.    "Document" and "documents" shall be given the broadest possible interpretation permitted by Rule 34 and shall include, without limitation, all correspondence, records, tables, charts, graphs, pictures, schedules, appointment books and calendars, diaries, reports, memoranda, notes, letters, telegrams, messages (including reports of telephone conversations and conferences), tapes, recordings, transcriptions, studies, analyses, books, magazines, newspapers, booklets, circulars, bulletins, notices, instructions, minutes and other communications (including inter- and intra-office communications), questionnaires, indexes, data sheets and surveys and other written, recorded, printed, typed, transcribed, taped, electronic, mechanical, photographic, filmed, graphic, magnetic or digital matter, or other matter of any kind or nature however produced or reproduced and each copy of any of the foregoing (regardless of origin). "Document" shall also include the file jackets, and any labels thereon, in which responsive documents are contained. If the existence of any document is known to you, but the document is no longer in your possession or control, state what disposition was made of the document and when. A draft or non-identical copy is a separate "document" within the meaning of the terms "document" and "documents."

K.    The use of the singular form of any word includes the plural and vice-versa.

## INSTRUCTIONS

L.    If you object to any discovery request or a sub-part thereof, state all grounds for the objection. With respect to any objection based on privilege, protection or immunity such as the attorney-client privilege or the attorney-work-product protection, provide a privilege log stating, with respect to each withheld document, (i) the document's author, (ii) all recipients of the document, (iii) all persons who have seen the document, (iv) the date of the document, (v) the type of document, (vi) the subject matter of the document, and (vii) the specific basis for withholding the document.

M.    The fact that investigation is continuing or that discovery is incomplete shall not excuse your failure to respond to each request as fully as possible. The failure to produce any responsive document shall be deemed a representation that the existence of such document is not known to the responding party, its counsel, or other representatives at the time of service of its response and production of documents.

N.    Documents shall be produced within thirty (30) days at the law offices of Gilbert & Renton LLC, 23 Main Street, Andover, Massachusetts 01810.

## INTERROGATORIES

### INTERROGATORY NO. 1

Please identify all insurance policies (or portions thereof) issued by Centennial or any of its affiliates to each of the following entities during any portion of the time period from January 1, 1954 through January 1, 1991:

    a.     Invensys

    b.     The Foxboro Company

    c.     Trans-Sonics, Inc.

    d.     Foxboro/Trans-Sonics, Inc.

### INTERROGATORY NO. 2

Please identify all documents concerning all insurance policies (or portions thereof) issued by Centennial or any of its affiliates to each of the following entities during any portion of the time period from January 1, 1954 through January 1, 1991:

    a.     Invensys

    b.     The Foxboro Company

    c.     Trans-Sonics, Inc.

    d.     Foxboro/Trans-Sonics, Inc.

**INTERROGATORY NO. 3**

Please identify all documents concerning the existence, terms, conditions, provisions, endorsements, exclusions and contents of all insurance policies issued by Centennial or any of its affiliates to each of the following entities during any portion of the time period from January 1, 1954 through January 1, 1991:

      a.       Invensys

      b.       The Foxboro Company

      c.       Trans-Sonics, Inc.

      d.       Foxboro/Trans-Sonics, Inc.

**INTERROGATORY NO. 4**

Please identify all documents concerning (a) any requests for policies or information by Invensys or Trans-Sonics to Centennial or any of its affiliates, (b) any notices by Invensys or Trans-Sonics to Centennial or any of its affiliates, (c) any communications by Invensys or Trans-Sonics to Centennial or any of its affiliates, (d) any demands for coverage made by Invensys or Trans-Sonics to Centennial or any of its affiliates), and/or (e) Centennial's (or any of Centennial's affiliates') consideration of and response to any requests, notices, communications or demands. This interrogatory is limited to any insurance policy issued to Trans-Sonics or Invensys. It is not limited solely to the Wheeler Road Lawsuit.

**INTERROGATORY NO. 5**

Please identify all documents that reference insurance policies for which Centennial or its affiliates cannot find copies, but that may have provided coverage to Invensys or Trans-Sonics.

**INTERROGATORY NO. 6**

Does Centennial contend that the coverage in the Policy contains or is otherwise subject to any form of pollution exclusion?

**INTERROGATORY NO. 7**

If the answer to Interrogatory No. 6 is anything other than an unqualified "no," please state all facts, identify all relevant policy provisions, and identify all documents concerning the issue whether the Policy contains or is otherwise subject to any form of pollution exclusion.

**INTERROGATORY NO. 8**

Does Centennial contend that it received late or insufficient notice of Invensys's claim for coverage in connection with the Underlying Action or any related proceedings or settlements?

**INTERROGATORY NO.9**

Does Centennial contend that it was prejudiced by any late or insufficient notice?

**INTERROGATORY NO. 10**

Please state all facts, identify all relevant policy provisions, and identify all documents concerning the issue whether Centennial received and/or was prejudiced by any late or insufficient notice.

**INTERROGATORY NO. 11**

Does Centennial contend that Invensys violated any prohibition or limitation on so-called "voluntary payments" (or any similar concept in the Centennial policy) in connection with the Underlying Action or any related proceedings or settlements.

**INTERROGATORY NO. 12**

Does Centennial contend that it was prejudiced by any violation of any prohibition or limitation on so-called "voluntary payments" (or any similar concept in the Centennial policy)?

**INTERROGATORY NO. 13**

Please state all facts, identify all relevant policy provisions, and identify all documents concerning the issue whether Invensys violated any prohibition or limitation on so-called "voluntary payments" (or any similar concept in the Centennial policy) and whether Centennial received and/or was prejudiced by any such "voluntary payments."

**INTERROGATORY NO. 14**

Is there any instance since 1990 in which Centennial, in its capacity as an excess or umbrella insurer (but not a primary insurer) has exercised any right to associate with the insured in the defense and control of any suit asserting environmental liabilities against one of its policyholders?

**INTERROGATORY NO. 15**

If the answer to Interrogatory No. 14 is anything other than an unqualified "no," then with respect to each instance since 1991 in which Centennial, in its capacity as an excess or umbrella insurer (but not a primary insurer) associated in the defense and control of the suit asserting environmental liabilities against one of its policyholders, please provide the following information:

- The title, case name, jurisdiction and court of the suit;

- The name, address and telephone number of the defense counsel who associated on Centennial's behalf in the defense and control of the suit;

- All pleadings and correspondence concerning the suit; and

- A copy of the policy(ies) pursuant to which Centennial was asserting its right to associate in the defense and control of the suit.

**INTERROGATORY NO. 16**

Please state the number of cases since 1991 in which Centennial has declined to exercise the right, in its capacity as an excess or umbrella insurer, has had the right to associate in the defense and control of a suit asserting environmental liabilities against one of its policyholders.

**INTERROGATORY NO. 17**

With respect to all defenses or affirmative defenses upon which Centennial intends to or might rely in connection with summary judgment proceedings or trial in this case, please state all facts, identify all relevant policy provisions, and identify all documents concerning each such defense or affirmative defense.

**INTERROGATORY NO. 18**

With respect to any claim by Centennial that all or part of the amounts sought from Centennial by Invensys instead should be allocated to other insurers or should be retained by Invensys, please identify all facts, identify all relevant provisions in the Centennial Policy, identify all other affected insurers and their respective policies, and identify all documents concerning the allocation issue.

**INTERROGATORY NO. 19**

For each expert upon which Centennial intends to rely at trial or in connection with summary judgment motions, please provide all information and reports required to be provided under the Federal Rules of Civil Procedure and the Local Rules of this Court.

**INTERROGATORY NO. 20**

Please identify all drafting history (whether consisting of documents created by Centennial, any insurance industry organization or rating bureau, or other third party) and filings with state regulatory officials in New York and in Massachusetts by or on behalf of Centennial or any Affiliate, concerning any forms or endorsements that Centennial contends to be part of the Policy (including but not limited to any clause concerning any form of pollution exclusion, the sections of the Policy that may be entitled "Assistance and Cooperation," "Ultimate Net Loss," "Other Insurance," the "Insured's Duties in the Event of Occurrence, Claim or Suit," "Underlying Insurance," "Defense-Settlement," "Retained Limit -- Limit of Liability," "Subrogation" and/or "Maintenance of Underlying Insurance."

Respectfully submitted,
Plaintiff Invensys Systems, Inc.
By its attorney,

Robert J. Gilbert BBO#565466
GILBERT & RENTON LLC
23 Main Street
Andover, MA 01810
(978) 475-7580
(978) 475-1881

Dated: May 4, 2006

## Certificate of Service

I, Robert J. Gilbert, hereby certify that, on this 4th day of May, 2006, I caused the original of the foregoing document to be served by telecopy and first class mail upon John T. Harding, Esq., counsel of record for Defendant Centennial Insurance Company.

Robert J. Gilbert

# GILBERT & RENTON LLC

23 Main Street
Andover, Massachusetts 01810

Robert J. Gilbert, Esq.
Jeffrey B. Renton, Esq.
Edward J. Denn, Esq.
Stacy J. Silveira, Esq.

Telephone:  (978) 475-7580
Facsimile:  (978) 475-1881

September 19, 2005

**BY FAX AND FIRST-CLASS MAIL**

John T. Harding, Esq.
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210

> **Re:     Invensys Systems, Inc. v. Centennial Insurance Company
> Civil No. 1:05-CV-11589-WGY**

Dear John:

Enclosed please an original Plaintiff's Automatic Disclosures (Fed. R. Civ. P. 26(a)) and a copy of Plaintiff's Local Rule 16.1(D)(3) Certification.

If you have any questions, please feel free to call me.

Very truly yours,

Robert J. Gilbert

RJG/lpl

Enclosures

cc:     Jay S. Ehle, Esq.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INVENSYS SYSTEMS, INC., <br> Plaintiff, <br><br> v. <br><br> CENTENNIAL INSURANCE COMPANY, <br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Civ. No. 1:05-CV-11589-WGY

## PLAINTIFF'S AUTOMATIC DISCLOSURES (Fed. R. Civ. P. 26(a))

Pursuant to Rule 26(a), Fed. R. Civ. P., Plaintiff Invensys Systems, Inc., through its

undersigned counsel of record, hereby makes the following automatic disclosures.

## I.    NAMES OF PERSONS WITH KNOWLEDGE OF DISCOVERABLE INFORMATION

The individuals and entities identified below are known or believed by Plaintiff to have

knowledge of discoverable information relating to the issues raised in the Complaint:

a)    Leonard Sarapas, Cabot Corporation, 157 Concord Road, Billerica, MA 01821, or other
       present or former Dames & Moore/Balsam Environmental representative(s)
b)    Keeper of Records, Invensys Systems, Inc., 33 Commercial Street, Foxboro, MA  02035
c)    Keeper of Records, Liberty Mutual Insurance Company, 175 Berkely Street, Boston, MA
d)    Keeper of Records, Centennial Insurance Company, New York, NY

By identifying these individuals and entities, Plaintiff does not waive, and expressly

reserves, any and all objections it may have to the appropriateness and/or scope of discovery

involving these individuals.  Plaintiff reserves the right to supplement this list as additional

witnesses are identified through the course of investigation and discovery.

## II.    DESCRIPTION AND LOCATION OF PERTINENT DOCUMENTS

Pursuant to Rule 26(a)(1)(B) of the Federal Rules of Civil Procedure, Plaintiff states that

the following documents are relevant to the disputed facts alleged with particularity in the

pleadings.  Documents in the possession of Plaintiff's attorney will be made available to

Defendant for inspection and copying.

1.  Centennial Excess Liability Policy No. 462-00-76-30 and secondary evidence of this policy;

2.  Numerous and voluminous reports of environmental conditions at the subject site; and

3.  Filings of Fact and Rulings of Law After a Trial Without Jury in One Wheeler Road Associates v. The Foxboro Company, C.A. No. 90-12873-RGS (D. Mass. Dec. 13, 1995) (Stearns, J.).

Plaintiff reserves the right to supplement the list of documents upon which it may rely in this case, based on further investigation and discovery.

III.    CALCULATION OF DAMAGES

Pursuant to Rule 26(a)(1)(C) of the Federal Rules of Civil Procedure, Plaintiff's tentative computation of damages is as follows:

| | |
|---|---|
| Net Attorneys Fees for Defending Action through 10/8/96 (date of satisfaction of judgment): | $ 375,908.28 |
| Satisfaction of Judgment (4/19/96 Judgment plus post-judgment interest and costs through 10/8/96 date of payment); | $1,187,202.90 |
| Response costs (including payments to environmental engineers and costs incurred pursuant to Settlement Agreement entered into between the parties to the underlying action dated February 4, 2000): | $ 337,886.42 |
| Accrued interest at Massachusetts statutory rate (12%) through March 28, 2000 primary insurance payment by Liberty Mutual (including interest calculated on attorneys fees through 10/8/96; response costs; and 4/19/96 judgment): | $ 862,384.17 |
| **Total Damages to Date:** | **$ 2,763,381.77** |

In addition, pursuant to the terms of the Judgment and Settlement Agreement reached between the parties to the underlying action, Foxboro continues to incur engineering, operational and legal fees in connection with the ongoing remediation at the site. On a going-forward basis, these future costs are estimated to be $29,690 per year (not adjusted for inflation) for the life of the remediation operation (estimated at 30 years for a projected cost of $890,700).

From these total damages, Invensys will deduct the settlement payment received in March 2000 from the underlying primary insurer, Liberty Mutual Insurance Company. The amount of the settlement is confidential, but will be disclosed upon execution of a protective order.

Except as expressly noted, Plaintiff's estimate of damages does not include multiple, liquidated or punitive damages, attorney's fees, interest, litigation expenses, costs and other categories/items of damages which become known or apparent by further legal analysis, passage of time, or further investigation/discovery. Plaintiff reserves the right to supplement or revise its estimate of damages at or before trial, based on further analysis, investigation and discovery.

IV.    INSURANCE AGREEMENTS

Centennial Excess Insurance Policy No. 462-00-76-30.

INVENSYS SYSTEMS, INC.,
By its attorney,

Robert J. Gilbert (BBO# 565466)
Edward J. Denn (BBO# 633030)
GILBERT & RENTON LLC
23 Main Street
Andover, MA 01810
Telephone: (978) 475-7580
Telecopy: (978) 475-1881

Dated: September 19, 2005

3

**Certificate of Service**

I hereby certify that a true and correct copy of the above document was served upon John T. Harding, Morrison Mahoney LLP, 250 Summer Street, Boston, MA 02210, counsel of record for Defendant Centennial Insurance Company, by First Class Mail, postage prepaid, on September 19, 2005.

Robert J. Gilbert

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INVENSYS SYSTEMS, INC., <br> Plaintiff, | ) <br> ) <br> ) |
| v. | ) <br> )    Civ. No. 1:05-CV-11589-WGY <br> ) |
| CENTENNIAL INSURANCE COMPANY, <br> Defendant. | ) <br> ) <br> ) |

## PLAINTIFF'S LOCAL RULE 16.1(D)(3) CERTIFICATION

Pursuant to Local Rule 16.1(D)(3), Plaintiff Invensys Systems, Inc. and its attorneys certify that they have conferred (a) with a view toward establishing a budget for the costs of conducting the full course - and various alternative courses - of the litigation; and (b) to consider the resolution of the litigation through the use of alternative dispute resolution programs such as those outlined in Local Rule 16.4.

INVENSYS SYSTEMS, INC.,
By its President:

Dated: September 9, 2005

Jay S. Ehle

By its attorney,

Robert J. Gilbert (BBO# 565466)
Edward J. Denn (BBO# 633030)
GILBERT & RENTON LLC
23 Main Street
Andover, MA 01810
Telephone: (978) 475-7580

Dated: September 19, 2005

Telecopy: (978) 475-1881

## Certificate of Service

I hereby certify that a true and correct copy of this document was served upon John T. Harding, Morrison Mahoney LLP, 250 Summer Street, Boston, MA 02210, by First Class Mail, postage prepaid, on September 9, 2005.

Robert J. Gilbert

```
*********************
***  TX REPORT  ***
*********************
```

TRANSMISSION OK

| | |
|---|---|
| TX/RX NO | 4233 |
| CONNECTION TEL | 16173424888 |
| SUBADDRESS | |
| CONNECTION ID | |
| ST. TIME | 09/19 11:40 |
| USAGE T | 02'21 |
| PGS. | 7 |
| RESULT | OK |

# GILBERT & RENTON LLC
23 Main Street
Andover, MA 01810
(978) 475-7580
Telecopy: (978) 475-1881

## TELECOPY TRANSMISSION MEMO

DATE: September 19, 2005

TO: John T. Harding, Esq.

TELECOPY NUMBER: (617) 342-4888

FROM: Robert J. Gilbert, Esq.

<u>7</u> pages (Including Cover Sheet)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

MESSAGE:

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## Confidentiality Notice:
The documents accompanying this telecopy transmission, as well as messages contained on this cover sheet, may contain confidential or privileged information from Gilbert & Renton LLC. This information is intended for use by the individual or entity named on this transmission memo. If you are not the intended recipient, be aware that any disclosure, copying, transmission or use of the contents of this transmission and/or accompanying documents is prohibited. If you have received this telecopy in error, please advise us by telephone immediately so that we can arrange for retrieval of the faxed documents.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

INVENSYS SYSTEMS, INC.,        \*
    Plaintiff,              \*
                         \*
  v.                          \*    CIVIL ACTION NO: 05-11589 WGY
                         \*

CENTENNIAL INSURANCE COMPANY, \*
    Defendant.              \*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### PLAINTIFF'S RESPONSE TO DEFENDANT'S
### FIRST SET OF INTERROGATORIES

Pursuant to Fed. R. Civ. P. 33 and applicable local rules, Plaintiff Invensys Systems, Inc.

hereby objects and responds to Defendant's First Set of Interrogatories (the "Interrogatories").

### GENERAL OBJECTIONS

1.    Plaintiff objects to the Interrogatories to the extent that they seek to impose

obligations on them other than those set forth in the Federal Rules of Civil Procedure.

2.    Plaintiff objects to the Interrogatories to the extent they seek information or

materials protected from discovery by the attorney-client privilege, the common interest

privilege or protection, the work product protection, the spousal immunity, the joint defense

doctrine and/or any other privilege, protection, immunity or exemption.  Plaintiff will provide no

information that is subject to any such privilege, protection, immunity or exemption.

3.    Plaintiff objects to the Interrogatories to the extent they are over broad, unduly

burdensome, or seek information or materials not described with reasonable particularity or not

relevant to the claim or defense of any party.

4.    Plaintiff objects to the Interrogatories as overly broad and unduly burdensome to

the extent they seek information or materials outside its possession, or in the possession of the

Defendant or its counsel any person not a party to this lawsuit, or in the public domain.

5.      Plaintiff has not yet completed its trial preparation, including discovery. Thus, Plaintiff reserves the right to amend, modify or supplement its objections and responses.

6.      Plaintiff objects to discovery requests seeking information or documents created or pertaining to events occurring outside the time periods relevant to this case and has not attempted to provide any such information.

These General Objections are incorporated into each of the Specific Responses below and are neither waived nor in any way limited by the Specific Responses.

## SPECIFIC RESPONSES

### Interrogatory No. 1

Identify all damages, costs, response costs, fees or expenses relating to the Wheeler Road Lawsuit; the Final Judgment; and/or any other amount claimed by Invensys from Centennial in this action and State the Basis for Invensys' claim that Centennial is liable for each such item of damages, costs, response costs, fees or expenses.

### Objections to Interrogatory No. 1

Plaintiff objects to this Interrogatory to the extent it requires disclosure of the work product, including mental impressions, of Plaintiff's attorney.

Without waiving any objection, Plaintiff responds as follows.

### Response to Interrogatory No. 1

Invensys has incurred the following cost/damages in Wheeler Road Lawsuit:

| | |
|---|---|
| Net Attorneys Fees for Defending Action through 10/8/96 (payment of judgment): | $ 375,908.28 |
| Satisfaction of Judgment (4/19/96 Judgment plus post-judgment interest and costs through 10/8/96 date of payment); | $1,187,202.90 |

| Response costs (including engineers and consultants, costs incurred under 2/4/00 Settlement Agreement) | $ 506,286.34 |
|---|---|
| Future remedial costs per Settlement Agreement | $ 712,560.00 |
| Interest (through March 2006 - will be updated at trial) | $ 529,293.00 |
| Total Past and (Estimated) Future Ultimate Net Loss: | $ 3,311,250.52 |
| Less Amount Received from Primary Insurer | ($ 1,250,000.00) |
| **TOTAL AMOUNT OF CLAIM** | **$ 2,061,250.52** |

The total response costs set forth above includes costs incurred by Invensys for groundwater remediation, including costs incurred both before and after the "Settlement Agreement and Release" dated February 4, 2000, as follows:

| | |
|---|---|
| Remediation costs prior to settlement | $235,123.81 |
| Settlement Payment (February 4, 2000) | $102,762.59 |
| Subsequent remediation payments per agreement | $168,399.94 |
| 3/1/99 - 3/15/00 ($41,822.88) | |
| 4/1/00 - 10/14/00 ($14,131.86) | |
| 11/1/00 - 5/31/01 ($20,952.02) | |
| 6/1/01 - 5/31/02 ($20,050.55) | |
| 6/1/02 - 2/28/03 ($25,515.72) | |
| 3/1/03 - 4/30/04 ($15,567.74) | |
| 5/1/04 - 8/31/05 ($19,578.79) | |
| 9/1/05 - 3/31/06 ($10,780.38) | |
| **Total Remediation Costs (through 8/31/05)** | **$506,286.34** |

In addition, Invensys continues to pay ongoing engineering, operational and other remedial costs, which are estimated at $29,690 per year (not adjusted for inflation) through 2030, for additional costs of $712,560.

These amounts are recoverable pursuant to the definition of "ultimate net loss" and, depending upon the basis upon which Centennial is deemed to have a coverage obligation, upon policy provisions defining the scope of Centennial's obligation to pay defense costs.

## Interrogatory No. 2

Identify all liability insurance policies issued to Invensys (including The Foxboro Company or Trans-Sonics Inc.) whether or not at issue in the current action, allegedly providing coverage to Invensys (including The Foxboro Company or Trans-Sonics, Inc.) from 1954 to 1991, including the following information:

a)    Identity of the issuing company;

b)    Policy number(s);

c)    Date(s) during which the policy(ies) were in effect;

d)    Named Insured;

e)    Whether or not Invensys possesses a true and accurate copy of each such policy;

f)    If Invensys does not possess a copy of each policy, identify all available facts and documents relating to the limits of liability, terms, condition, endorsements and exclusions contained in each such policy;

g)    The limits of liability of each such policy (including any "per accident" or "per occurrence" limits) and, if applicable, the amount of underlying insurance.

## Objections to Interrogatory No. 2

Invensys objects to this interrogatory to the extent it requires information or documents relating to "pre-acquisition coverage," i.e., policies issued to The Foxboro Company/Invensys Systems, Inc. prior to the date in 1974 that it acquired Trans-Sonics, Inc.  Invensys further objects to this interrogatory to the extent it requires information or documents relating to "non-underlying coverage," i.e., policies issued to The Foxboro Company/Invensys Systems, Inc. or Trans-Sonics, Inc. in periods other than the time period of January 1, 1972 - January 1, 1975 in which Defendant provided first-layer excess/umbrella coverage to Trans-Sonics. Plaintiff further

objects to this Interrogatory to the extent it requires disclosure of the work product, including mental impressions, of Plaintiff's attorney.

Without waiving any objection, Plaintiff responds as follows:

## Response to Interrogatory No. 2

Pursuant to Rule 33(b), Fed. R. Civ. P., the burden of deriving or ascertaining the answer to this interrogatory is substantially the same for Defendant as it is for Plaintiff, and the answer to this interrogatory may be derived from a review of the copies of policies and secondary evidence of coverage that has previously been produced to Defendant and/or made available to Defendant. These copies of policies and secondary evidence will be made available for further inspection at a time and place mutually convenient to counsel for Plaintiff and Defendant.

## Interrogatory No. 3

Please identify all liability insurance policies, whether or not at issue in this action, which Invensys contends have exhausted their limits or which are otherwise unavailable to respond to the Final Judgment or any of the other costs, damages, response costs, fees or expenses claimed by Invensys in this action and State the Basis for Invensys' contention with respect to why each such policy has been exhausted or is otherwise unavailable.

## Objections to Interrogatory No. 3

Invensys objects to this interrogatory to the extent it requires information or documents relating to "pre-acquisition coverage," i.e., policies issued to The Foxboro Company/Invensys Systems, Inc. prior to the date in 1974 that it acquired Trans-Sonics, Inc. Invensys further objects to this interrogatory to the extent it requires information or documents relating to "non-underlying coverage," i.e., policies issued to The Foxboro Company/Invensys Systems, Inc. or Trans-Sonics, Inc. in periods other than the time period of January 1, 1972 - January 1, 1975 in

which Defendant provided first-layer excess/umbrella coverage to Trans-Sonics. Plaintiff further

objects to this Interrogatory to the extent it requires disclosure of the work product, including

mental impressions, of Plaintiff's attorney.  Plaintiff further objects to this Interrogatory to the

extent it requires disclosure of information or documents that cannot be disclosed pursuant to a

confidentiality requirement in the Settlement Agreement between Liberty Mutual and Plaintiff.

Without waiving any objection, Plaintiff responds as follows:

**Response to Interrogatory No. 3**

Pursuant to Rule 33(b), Fed. R. Civ. P., the burden of deriving or ascertaining the answer

to this interrogatory is substantially the same for Defendant as it is for Plaintiff, and the answer

to this interrogatory may be derived from a review of the copies of policies and secondary

evidence of coverage that has previously been produced to Defendant and/or made available to

Defendant.  These copies of policies and secondary evidence will be made available for further

inspection at a time and place mutually convenient to counsel for Plaintiff and Defendant.

Answering further, Plaintiff states that there has been complete exhaustion of the

property damage policy limits of the primary comprehensive general liability policies issued by

Liberty Mutual to Trans-Sonics for periods January 1, 1972-73, January 1, 1973-74, and January

1, 1974-75.  Plaintiff further states that there has been complete exhaustion of the available

property damage limits of the primary comprehensive general liability policies issued by Liberty

Mutual to The Foxboro Company (now known as Invensys Systems, Inc.) for the periods

January 1, 1975 - June 29, 1982.  The basis for Invensys's contention that these policies have

been exhausted in whole or in part is that in the year 2000, Liberty Mutual paid a settlement of

$1,250,000 that had the effect of exhausting the available property damage limits of liability of

the aforementioned primary policies issued to Trans-Sonics and to Foxboro/Invensys. (Plaintiff

cannot presently produce the applicable Settlement Agreement as it is covered by a confidentiality agreement.)

**Interrogatory No. 4**

Please identify all settlements or other amounts received by Invensys from any insurer for any costs, damages, response costs, fees, expenses or other sums relating to the Wheeler Road Lawsuit and/or the Final Judgment, including:

a)    the amount(s) received;

b)    the source of each such amount;

c)    the date(s) on which each such amount was received;

d)    all agreements pertaining to each such settlement amount; and

e)    how the amounts were allocated or apportioned with respect to the various items of Invensys' claimed damages and State the Basis for any such allocation or apportionment.

**Objections to Interrogatory No. 4**

Invensys objects to this interrogatory to the extent it requires information or documents relating to "pre-acquisition coverage," i.e., policies issued to The Foxboro Company/Invensys Systems, Inc. prior to the date in 1974 that it acquired Trans-Sonics, Inc. Invensys further objects to this interrogatory to the extent it requires information or documents relating to "non-underlying coverage," i.e., policies issued to The Foxboro Company/Invensys Systems, Inc. or Trans-Sonics, Inc. in periods other than the time period of January 1, 1972 - January 1, 1975 in which Defendant provided first-layer excess/umbrella coverage to Trans-Sonics. Plaintiff further objects to this Interrogatory to the extent it requires disclosure of the work product, including mental impressions, of Plaintiff's attorney. Plaintiff further objects to this Interrogatory to the

extent it requires disclosure of information or documents that cannot be disclosed pursuant to a

confidentiality requirement in the Settlement Agreement between Liberty Mutual and Plaintiff.

Without waiving any objection, Plaintiff responds as follows:

**Response to Interrogatory No. 4**

In March 2000, Plaintiff and Liberty Mutual settled a coverage lawsuit over the scope of

the primary insurance coverage, with Liberty Mutual paying a total of $1,250,000 for a complete

release of any insurance claims relating to the defense costs, cleanup costs, judgment, and

settlement costs that are now the subject of this action. This settlement amount from Liberty

Mutual consisted of (i) $300,000 for Foxboro/Invensys's attorneys' fees incurred in defending

the Wheeler Road Lawsuit and (ii) $950,000 in indemnity coverage. Foxboro/Invensys and

Liberty Mutual agreed that the first $300,000 of the indemnity payment would be applied to

exhaust the $100,000 per policy limits of the three Trans-Sonics policies (January 1, 1972 - 73,

January 1, 1973-74 and January 1, 1974-75), which could not be shown to contain a pollution

exclusion and therefore provided the clearest source of coverage. The remaining $650,000 was

allocated to subsequent Liberty Mutual policies (all containing pollution exclusions) issued to

The Foxboro Company after the December 1974 merger.

The net effect of the settlement with Liberty Mutual was the complete exhaustion of all

property damage limits of liability in all primary policies sitting directly below the Centennial

policy, and the exhaustion of available property damage limits in various policies issued

subsequent to the expiration of Trans-Sonics' policies.

**Interrogatory No. 5**

Identify the date on which notice of the Wheeler Road Lawsuit and the Final Judgment were provided to Centennial; the manner by which notice thereof was given to Centennial; and the reasons why notice was not given to Centennial prior to that date.

**Objections to Interrogatory No. 5**

Plaintiff objects to this Interrogatory to the extent it requires disclosure of the work product, including mental impressions, of Plaintiff's attorney.

**Response to Interrogatory No. 5**

On June 24, 1999, Invensys's counsel wrote to Centennial to apprise them of the pendency of the coverage lawsuit with Liberty Mutual and requesting Centennial to search for evidence of coverage issued to Trans-Sonics. Numerous conversations thereafter ensued between John Yandrasitz (an attorney at Centennial) and Invensys's attorneys, including Kathryn E. Perrotta. Thus, as of July 1999, Centennial had received both written and oral notification of the coverage dispute with Liberty Mutual and the underlying Wheeler Road Lawsuit.

On June 9, 2000 -- shortly after receiving the settlement check from Liberty Mutual -- Invensys's attorneys tendered a formal claim for coverage to Centennial. The tender was made at this time, and not earlier, because it was only after the payment by Liberty Mutual that the excess coverage in the Centennial had been triggered by exhaustion of the limits of the underlying primary policies in the 1972, 1973 and 1974 policy years.

Numerous letters were exchanged between the parties, as Invensys responded to Centennial's requests for information. Ultimately, on July 12, 2001, Centennial denied coverage.

**Interrogatory No. 6**

Identify the employees, officers or directors of Invensys who were responsible for handling, supervising or managing the Wheeler Road Lawsuit and state whether each such person is still an employee, officer or director of Invensys.

**Response to Interrogatory No. 6**

Anthony R. Franciose, Esq., who was and continues to be an in-house attorney for The Foxboro Company (now known as Invensys Systems, Inc.) was the employee responsible for handling, supervising or managing the Wheeler Road Lawsuit.

**Interrogatory No. 7**

Identify the employees, officers or directors of Invensys who are or were responsible for handling, managing or supervising any requests or demands for insurance coverage relating to the Wheeler Road Lawsuit and/or the Final Judgment and state whether each such person is still an employee, officer or director of Invensys.

**Response to Interrogatory No. 7**

Bruce E. Wilson, who was the risk manager for The Foxboro Company (now known as Invensys Systems, Inc.) and Anthony R. Franciose, Esq., who was and continues to be an in-house attorney for The Foxboro Company (now known as Invensys Systems, Inc.) were the employees responsible for handling, supervising or managing insurance matters relating to the Wheeler Road Lawsuit.  Mr. Wilson is no longer employed by Plaintiff.

**Interrogatory No. 8**

Identify all settlement agreements entered into by Invensys and the plaintiffs in the Wheeler Road Lawsuit and for each such agreement:

a)      identify the date on which it was entered into by Invensys;

b)    state the terms of the agreement;

c)    identify the person(s) who made the decision to enter into the agreement on behalf of Invensys;

d)    State the Basis for Invensys' decision to enter into the settlement agreement; and

e)    Identify the date on which notice of the agreement was provided to Centennial.

## Objections to Interrogatory No. 8

Plaintiff further objects to this Interrogatory to the extent it requires disclosure of the work product, including mental impressions, of Plaintiff's attorney.

## Response to Interrogatory No. 8

Pursuant to Rule 33(b), Fed. R. Civ. P., the burden of deriving or ascertaining the answer to this interrogatory is substantially the same for Defendant as it is for Plaintiff, and the answer to this interrogatory may be derived from a review of the copy of the settlement agreement that has previously been produced to Defendant and/or made available to Defendant.  A copy of the settlement agreement will be made available for further inspection at a time and place mutually convenient to counsel for Plaintiff and Defendant.

Answering further, Plaintiff states that Invensys decided to enter into the settlement agreement with the plaintiff in the Wheeler Road Lawsuit following the entry of final judgment, based on its assessment of the costs, likely outcome and risks of an appeal (including the possibility that the First Circuit might reverse Judge Stearns' ruling absolving Foxboro/Invensys of any liability for soil contamination. The settlement agreement with the underlying plaintiff was provided to Defendant pursuant to the notices previously identified in response to Interrogatory No. 5.

Signed under pains and penalties of perjury this 5th day of September, 2006.

Plaintiff Invensys Systems, Inc.
By: Jay S. Ehle
Its: Vice President

As to objections only:

Robert J. Gilbert BBO#565466
GILBERT & RENTON LLC
23 Main Street
Andover, MA 01810
(978) 475-7580
(978) 475-1881

Dated: September 5, 2006

## Certificate of Service

I, Robert J. Gilbert, hereby certify that, on this 5th day of September, 2006, I caused the original of the foregoing document to be served by telecopy and First Class Mail upon counsel of record for Defendant Centennial Insurance Company.

Robert J. Gilbert

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INVENSYS SYSTEMS, INC.,<br>　　　　Plaintiff,<br><br>　　　v.<br><br>CENTENNIAL INSURANCE  COMPANY,<br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civ. No. 1:05-CV-11589-WGY

## JOINT MOTION TO AMEND SCHEDULING ORDER

Plaintiff Invensys Systems, Inc. and Defendant Centennial Insurance Company

respectfully file this joint motion to amend the Scheduling Order in this matter as set forth below.

In support, the Parties state as follows:

1.　　The parties have delayed the completion formal discovery while engaging in

extensive settlement negotiations (including two mediation sessions with the Magistrate Judge

Alexander).  It has now become clear that a settlement cannot occur until further discovery is

taken, including depositions.  An extended Scheduling Order will enable the parties to take the

formal discovery that is necessary either to reach a settlement or try the case.

2.　　This is the first request for an extension of the Scheduling Order.

**Wherefore**, Plaintiffs and Defendants respectfully request that the Court enter the

following revised Scheduling Order:

1

| Pre-Trial Event | Revised Deadline |
|---|---|
| Completion of Fact Discovery | October 31, 2006 |
| Exchange of Expert Reports | November 30, 2006 |
| Exchange of Rebuttal Expert Reports | December 15, 2006 |
| Completion of Expert Discovery | January 15, 2006 |
| Dispositive Motions Filed<br>Opposition Due<br>Reply Due | January 30, 2006<br>February 28, 2007<br>March 15, 2007 |
| Final Pretrial Conference<br>(or at earliest convenience of the Court thereafter) | TBD by court |

Respectfully submitted:
PLAINTIIFF INVENSYS SYSTEMS, INC.,
By its attorneys:


_____/s Robert J. Gilbert/_____
Robert J. Gilbert (BBO# 565466)
GILBERT & RENTON LLC
23 Main Street
Andover, MA 01810
Telephone: (978) 475-7580
Telecopy: (978) 475-1881

Dated: July 31, 2006

DEFENDANT CENTENNIAL INSURANCE
COMPANY
By its attorneys:


\_\_\_\_/s John T. Harding_____
Michael F. Aylward (BBO #024850)
John T. Harding (BBO#221270)
MORRISON, MAHONEY LLP
250 Summer Street
Boston, MA 02210
Telephone: (617) 439-7558
Telecopy: (617) 342-4888

Dated: July 31, 2006

2

**Certificate of Service**

    I hereby certify that a true and correct copy of this document was served upon John T. Harding, Morrison Mahoney LLP, 250 Summer Street, Boston, MA  02210, by telecopy and first class mail, postage prepaid, on July 31, 2006.

                     \_\_\_\_\_/sRobert J. Gilbert/_____
                     Robert J. Gilbert

3

## Motions

1:05-cv-11589-WGY Invensys Systems, Inc. v Centennial Insurance Company

United States District Court

District of Massachusetts

Notice of Electronic Filing

The following transaction was received from Gilbert, Robert J. entered on 7/31/2006 at 11:53 AM EDT and filed on 7/31/2006

**Case Name:**        Invensys Systems, Inc. v Centennial Insurance Company
**Case Number:**      1:05-cv-11589
**Filer:**            Invensys Systems, Inc.
**Document Number:** 12

**Docket Text:**
Joint MOTION to Amend *Scheduling Order* by Invensys Systems, Inc..(Gilbert, Robert)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** yes
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=7/31/2006] [FileNumber=1519147-0
] [850d50791da53fb110433dceb017479c1812296f9b4dd803d61e6f64872f616fe3f
d72c6bce9403badb42d4f1b03e004666439a7977190033d7de8bc2366f2ad]]

**1:05-cv-11589 Notice will be electronically mailed to:**

Michael F. Aylward     maylward@morrisonmahoney.com, jnickerson@morrisonmahoney.com

Robert J. Gilbert     rgilbert@gilbertandrenton.com

John T. Harding     jharding@morrisonmahoney.com, tcitron@morrisonmahoney.com

**1:05-cv-11589 Notice will not be electronically mailed to:**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| INVENSYS SYSTEMS, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 1:05-CV-11589-WGY |
| | ) | |
| CENTENNIAL INSURANCE  COMPANY, | ) | |
| Defendant. | ) | |
| | ) | |

### AFFIDAVIT OF ROBERT J. GILBERT IN SUPPORT OF
### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

I, Robert J. Gilbert, hereby testify and affirm as follows:

**1)**      I am of the age of majority and I make this affidavit freely, voluntarily and based on my own firsthand personal knowledge as counsel for Plaintiff Invensys Systems, Inc.

**2)**      On September 21, 2006, I called John Harding, counsel for Centennial Insurance Company, informing him that Invensys would be filing two expert affidavits. I asked whether he wanted to set a schedule for exchanging expert reports and taking expert depositions.  He stated that that he did not expect to submit any expert affidavits for his summary judgment motions. He also reserved all rights as to depositions or motions to strike until he could see our expert reports.

**3)**      Since that conversation on September 21, 2006, I have not received any further communications from Mr. Harding regarding the scheduling of expert depositions, nor have I received any call from him pursuant to Local Rule 7.1 concerning Centennial's motion to strike.

I, Robert J. Gilbert, testify under the pains and penalties of perjury that the foregoing is true and correct to the best of my knowledge, this 10th day of November, 2006.

_____
Robert J. Gilbert

1