```
 1                UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF MASSACHUSETTS
 2
                                           Civil Action
 3                                         No. 05-11589-WGY

 4

 5  * * * * * * * * * * * * * * * * *
                                     *
 6  INVENSYS SYSTEMS, INC.,          *
                                     *
 7            Plaintiff,             *
                                     *
 8  v.                               *    HEARING
                                     *
 9  CENTENNIAL INSURANCE COMPANY,    *
                                     *
10            Defendant.             *
                                     *
11  * * * * * * * * * * * * * * * * *

12

13            BEFORE:  The Honorable William G. Young,
                              District Judge
14

15

16
    APPEARANCES:
17

18        GILBERT & RENTON LLC (By Robert J. Gilbert,
       Esq.), 344 North Main Street, Andover,
19     Massachusetts 01810, on behalf of the Plaintiff

20
          MORRISON MAHONEY LLP (By John T. Harding,
21     Esq. and Michael F. Aylward, Esq.), 250 Summer
       Street, Boston, Massachusetts 02210, on behalf of
22     the Defendant

23

24                                        1 Courthouse Way
                                          Boston, Massachusetts
25
                                          November 13, 2006
```

```
 1              THE CLERK:  All rise.  Court is in session, please
 2     be seated.
 3              Calling Civil Action 05-11589, Invensys Systems v.
 4     Centennial.
 5              THE COURT:  Good afternoon.  Would counsel identify
 6     themselves.
 7              MR. GILBERT:  Your Honor, Robert J. Gilbert for
 8     plaintiff, Invensys Systems, Inc.
 9              MR. HARDING:  Good afternoon, your Honor.  John
10     Harding from Morrison Mahoney for the defendant, Centennial
11     Insurance Company.
12              MR. AYLWARD:  Michael Aylward from Morrison
13     Mahoney.  I'm with Mr. Harding.
14              THE COURT:  Let's review the procedural context to
15     be clear we're in agreement.
16              This case came before the Court originally on
17     cross-motions for summary judgment.  At the invitation of
18     the clerk, the parties may, agree that the case may be
19     treated as a case stated.  That means that I have the record
20     of the case before me, I will entertain argument this
21     afternoon in the nature of final argument, and then based
22     upon the record I have before me, drawing such inferences as
23     are reasonable, I will resolve the case.
24              Authority for this approach, similar to the case
25     stated approach in the state courts, is found in two First
```

```
 1   Circuit cases, Boston Five Cents Savings Bank and
 2   Continental Grain.
 3            We're agreed, for the plaintiff?
 4            MR. GILBERT:  Yes, your Honor.
 5            THE COURT:  Defense?
 6            MR. HARDING:  Yes, your Honor.
 7            THE COURT:  All right.  Now, off the record for a
 8   minute, on the side bar, if you would.
 9            (Side bar conference off the record.)
10            THE COURT:  I think that it makes sense as we have
11   these arguments to follow the Massachusetts order of
12   argument, which would have the defendant Centennial argue
13   first and then Invensys Systems.  So, I'll hear first from
14   Centennial.
15            MR. HARDING:  Thank you, your Honor.  John Harding
16   on behalf of the defendant, Centennial.
17            The central issue presented here is whether a
18   policyholder can delay notice for ten years until after a
19   claim is completely resolved by final judgment, it's paid
20   that judgment, it's then entered into an additional
21   settlement to resolve certain aspects of the judgment, and
22   then turn around and present that claim to its excess
23   carrier as a fait accompli for payment.
24            THE COURT:  Well, let me ask you this.  In, in
25   terms of the record now, and I have the complete record
```

```
 1    before me, in terms of the record, you're agreed that
 2    Centennial has to demonstrate some actual prejudice from
 3    that time line, correct?
 4             MR. HARDING:  That's the Massachusetts standard,
 5    your Honor, yes.
 6             THE COURT:  Okay.  What is it in this case, on this
 7    record?
 8             MR. HARDING:  In this case, on this record, it's
 9    the fact that a judgment was entered that clearly invaded
10    our layer of coverage.  That's the primary aspect of
11    prejudice.  There was a final judgment entered years before
12    we had notice of this claim.  They then paid the cash
13    portion of that judgment as determined by Judge Stearns and
14    then entered into a separate settlement agreement.
15             THE COURT:  None of that's disputed, but does that
16    constitute prejudice under Massachusetts law?
17             MR. HARDING:  Yes, it does, your Honor, and I'll
18    address that.
19             THE COURT:  Well, I want you to.  Because it would
20    seem to me that unless the delay resulted in an outcome that
21    would have been different had there not been the delay
22    that's not prejudice.
23             Is that a proper way of stating the Massachusetts
24    law?
25             MR. HARDING:  No, your Honor.  Because there's no
```

1   Massachusetts case that says in an excess situation or even
2   in a primary situation that the insurer must come in and
3   demonstrate the impossible.  In other words, that it must
4   demonstrate that had it been notified of the claim in a
5   timely manner the result of the underlying case would have
6   been different.
7           And just to give your Honor very concrete examples,
8   the two leading cases that plaintiff relies upon are the
9   Darcy and the Johnson Controls case, both involving primary
10  insurers.
11          In Darcy, the critical fact is that even though
12  there the delay was determined to be extreme, because it was
13  five years, the notice was still given two years before
14  there was, the case was just meandering along in the state
15  court and it was still an additional two years after notice
16  was given before the plaintiff in that case finally moved
17  for the entry of a default judgment and a default was
18  entered.  So there was plenty of time.
19          **THE COURT:**  But you want me to hold, in essence --
20  because the points that you raise are undisputed -- you want
21  me to hold that because judgment has entered here that is
22  prejudice, per se.
23          **MR. HARDING:**  Yes.  Or it equates to -- we're not
24  asking for a presumption of prejudice.  We're saying that on
25  the facts of this case, that fact, coupled with all the

1     other facts, the subsequent settlement and everything else,
2     constitutes actual prejudice, it meets our burden of showing
3     actual prejudice.
4            Because under the cases, what Augat and all the
5     cases emphasize are was there a lost opportunity.  They do
6     not require the insurer to come in and show exactly how, had
7     it been apprised of the opportunity, what it would have
8     done.  And it's particularly so in this case where you have
9     an excess insurer situation.
10           The fact is that we had no opportunity to evaluate
11    one single aspect of this case at any point in the process
12    for more than ten years, and weren't contacted until after
13    everything was done.  They had attempted to collect as much
14    as they could from Liberty Mutual and then turned to us.
15           **THE COURT:**  All right, I've read the briefs.
16           **MR. HARDING:**  Okay.
17           **THE COURT:**  And I'm familiar with it.
18           Let me ask you this.  You're saying we don't have
19    to show any particular, particularized prejudice that would
20    have led to a different outcome because that's impossible
21    given the undisputed delay.
22           **MR. HARDING:**  Exactly.  In other words, in
23    plaintiff's submissions they keep bringing up how we haven't
24    put on any evidence of prejudice in terms of what we would
25    have done or how we would have done it.  The fact is that

```
 1   given this scenario ten years after the fact, anything that
 2   we would submit along those lines would be pure speculation.
 3   For my head of the claims unit today to say, well, if we had
 4   got this in 1990, we would have done X, Y and Z and we would
 5   have, you know, hired counsel to associate and we would have
 6   done that.  There's no way that a person today can recreate,
 7   or create for the first time what they would have done had
 8   they been placed in that situation.  It would be pure
 9   speculation.  And that's why there's not a single
10   Massachusetts case that requires an insurer to make such a
11   showing.
12           THE COURT:  After judgment has entered.
13           MR. HARDING:  After judgment has entered.  I think
14   that's the critical difference between our case and cases
15   like Johnson Controls and Darcy where there, even though
16   perhaps the insurer had been compromised in some respect,
17   they still had the opportunity to come in and defend.  In
18   Johnson Controls it was actually quite early in the case, it
19   was about a year late, but it was still a long time before
20   any trial date or anything else, they had the opportunity to
21   come in and do something.  Even though Darcy was a much
22   longer delay in giving notice, still, because the plaintiff
23   there had essentially never pursued the case, there was
24   ample opportunity to simply appoint defense counsel.  There
25   were no other coverage issues raised by the insurer there.
```

```
 1   So all they had to do was hire defense counsel and go ahead
 2   and defend it and protect their interests and control the
 3   defense.
 4           THE COURT:  One last question, and don't take this
 5   question amiss because I'm going to ask him precisely the
 6   same question.
 7           Assume for purposes of this question that this
 8   Court's reasoning is to the contrary and you lose the case.
 9   You have a right to appeal the case.  This case is
10   quintessentially an issue of Massachusetts law.  I'm not for
11   certifying the issue to the Supreme Judicial Court -- well,
12   I don't want to do it twice is the --
13           MR. HARDING:  Right.
14           THE COURT:  -- thing.  But if you were in that
15   posture, and I will ask him --
16           MR. HARDING:  Yes.
17           THE COURT:  -- exactly the same question, are you
18   interested in my certifying it to the Supreme Judicial Court
19   of Massachusetts, obviously with my opinion --
20           MR. HARDING:  Right.
21           THE COURT:  -- which will set out the facts, or
22   not?
23           MR. HARDING:  I think possibly.  I mean, I guess my
24   only hesitation is that I'm not sure that certification is
25   necessary in the sense that I think based on existing
```

1   Massachusetts precedent you would be able to, you know --
2       **THE COURT:** Of course.
3       **MR. HARDING:** -- find in our favor on that.
4       **THE COURT:** And I'm not saying that I couldn't, and
5   I'm going to ask him that question. But if my reasoning was
6   to the contrary, I'm just wondering how interested you are
7   in having it ultimately resolved.
8       **MR. HARDING:** Yes.
9       **THE COURT:** Because cases about reinsurance are
10  few. The cases that we're talking about are cases about
11  insurance.
12      **MR. HARDING:** Right.
13      **THE COURT:** Correct?
14      **MR. HARDING:** Right.
15      **THE COURT:** All right.
16      **MR. HARDING:** And I would say given that scenario,
17  I mean, technically there is not an SJC decision that has
18  squarely addressed these particular facts. We've cited the
19  Lusalon case which was an Appeals Court case that discussion
20  of late notice is very short, and then the SJC affirmed but
21  really relied on other grounds, they didn't in any way say
22  they disagree with the Appeals Court on notice. So there's
23  not, as there is in other jurisdictions, and we've cited
24  cases from a number of other state and federal courts which
25  have dealt more precisely with our facts in terms of a

1    judgment having been entered, there is no, you know, clearly
2    controlling precedent of the SJC on these particular facts.
3    So, I think in light of that certification, whether it be by
4    your Honor or by the First Circuit, might well make sense
5    here.
6             **THE COURT:**  Thank you.
7             All right.  Why don't I, just to show that I'm
8    being evenhanded, why don't I start with the question I
9    finished with them.
10            Assume that I make my memorandum of decision and
11   you lose.  You have a right to appeal.  Would you prefer I
12   certify it to the Supreme Judicial Court?
13            **MR. GILBERT:**  No, your Honor.
14            **THE COURT:**  You would like to go to the First
15   Circuit?
16            **MR. GILBERT:**  We're fine with the First Circuit.
17            **THE COURT:**  All right.
18            **MR. GILBERT:**  The short answer is even though we
19   originally filed in the state court, we're perfectly content
20   with what your Honor does in this case.  We think that --
21            **THE COURT:**  Well, I'm asking you to assume that
22   you're not content at all, that I reject your position and
23   you decide to go for further proceedings, then what?
24            **MR. GILBERT:**  In that case, your Honor, we will not
25   be content with your Honor's decision, but we'll be

1   satisfied with going up to the First Circuit in arguing
2   existing Massachusetts precedent.
3           **THE COURT:**  Thank you.  That's a direct answer and
4   I appreciate it.
5           All right, let me ask you to start.  There's really
6   two different arguments here that I see, or two different
7   issues.  One's the delayed notice.
8           **MR. GILBERT:**  Yes.
9           **THE COURT:**  And the notice was extremely delayed
10  here.  And I've asked them questions about that.  But the
11  other's the voluntary payment.  Why don't you start there.
12          **MR. GILBERT:**  I will, your Honor.
13          **THE COURT:**  Was this payment voluntary and in
14  violation of the insurance agreement?
15          **MR. GILBERT:**  You've asked two questions, was it
16  voluntary and was it in violation of the insurance
17  agreement.  And I think the answer to both of those
18  questions is no.  It could not remotely be called voluntary
19  because the judgment has entered.  This puts it in a
20  materially different posture than any of the voluntary
21  payments that have been discussed in any of the case law
22  that's been cited by both sides.
23          There was a settlement agreement post-judgment, but
24  that settlement agreement truly tracked the final judgment
25  that was binding on the parties.  There's nothing in the

1  settlement agreement that says, wait a second, we'll take
2  soil, you take ground water, or we'll split things up in
3  some other way.  So that so-called settlement agreement is a
4  pure expression of what the declaratory relief was that was
5  entered by Judge Stearns.  It was not --
6       **THE COURT:**  So in essence this is the not uncommon
7  case that the case goes through to judgment in the trial
8  court and thereafter is settled which obviates the further
9  expense and uncertainty or likelihood of affirmance in an
10 appellate court.
11      **MR. GILBERT:**  That's right.
12      **THE COURT:**  You say that's not voluntary?
13      **MR. GILBERT:**  It's not voluntary and it doesn't
14 violate the agreement.  Because the agreement itself says
15 that their duty to pay arises upon entry of a final
16 judgment.  And we cited the relevant language.  Now, there
17 might be a notice issue.  But at that point under the terms
18 of the policy we haven't done anything that's prohibited by
19 the policy other than the failure to provide notice on the
20 timing that we should have.
21      **THE COURT:**  So where I started in questioning you,
22 you say, well, it's just no breach at all.
23      **MR. GILBERT:**  Correct.
24      **THE COURT:**  And on notice you say, well, there's a
25 breach but no prejudice.

1          **MR. GILBERT:**  Correct.
2          **THE COURT:**  There is no case, and if there is you
3     tell me, where the proceedings had reached this stage -- he
4     framed it well when he started his argument.  The case goes
5     through litigation, goes to judgment, goes to a resolution
6     of that judgment, which invades the reinsurance.  The
7     primary is exhausted.
8          **MR. GILBERT:**  I think your Honor means the excess
9     insurance?
10         **THE COURT:**  Yes, the excess.  Only after all of
11    those things are resolved -- I won't call it a fait
12    accompli -- then notice is given and this litigation begins.
13    Correct?
14         **MR. GILBERT:**  Sarnafil comes awfully close,
15    although it's not an excess insurance case.
16         **THE COURT:**  Right.
17         **MR. GILBERT:**  It's a primary insurance case.  But I
18    think the core proposition is whether there has been a
19    completion of the underlying proceedings before the notice
20    is provided.  That question has been answered by Sarnafil,
21    the follow-on case to Augat, and which the SJC took another
22    crack at it.  But you know what?  They still have to show
23    prejudice, and under the facts of some cases it would be so
24    clear that the insurer's actual interests were adversely
25    affected.  And the paradigm, your Honor, would be a

```
 1    situation where the insurer learns of it, a primary insurer
 2    learns of it and there's not even an opportunity for the
 3    primary insurer to get involved to make sure there's
 4    competent defense counsel, do all the things that primary
 5    insurers did, and in fact which Liberty Mutual did in this
 6    case before getting off the claim.  The counsel that they
 7    put in place, the insurance company was satisfied with it.
 8    Invensys, a very sophisticated entity, was satisfied with
 9    it.  The record is absent of any suggestion that underlying
10    defense counsel did anything wrong.
11         But this is a case that's outside the rubric that
12    they would like to put it in.  In fact, they cited one case
13    that was written by Judge Harrington.  I think they said
14    Judge Keeton, but I believe it was Judge Harrington who
15    decided the Fireman's Fund v. Valley Products Manufacturing
16    Company.  And that was a case where there was a primary
17    insurer and an excess insurer and neither one of them got
18    notice.
19         And so in that case, in addition to finding that
20    witnesses were gone, evidence had disappeared, that there
21    was actual material injury to the insurer's ability to make
22    their insurance case, Judge Harrington also found there
23    wasn't even a primary insurer on the scene at the beginning
24    to make sure that the case was defended properly.  That's
25    not this case.
```

1          So we're back to Sarnafil which says, you know
2    what, you've got to prove prejudice.  And then we look at
3    Hoechst-Celanese from the Massachusetts Appeals Court.
4    That's a very important case on the whole question of
5    prejudice.  Because that's a case where the insurer, unlike
6    Centennial in this case, the insurer in that case, an excess
7    insurer came in and said this witness was gone, we didn't
8    have access to that document.  And then there is a lively
9    discussion between the parties, resolved by the Court
10   ultimately, on the issue were those missing witnesses or
11   those missing documents material to anything.  And that was
12   the discussion.  Okay, you have shown that you don't have
13   access to things.  Did it really hurt you.  Are you in a
14   position that's worse than you would have been if you had
15   received notice.
16          And that, your Honor, I would suggest is the actual
17   question that's presented to you for resolution.  Has
18   Centennial come forward with evidence to meet their burden
19   of proof on the question did they have actual and
20   substantial prejudice.  So --
21          **THE COURT:**  So you, not surprisingly, take the
22   contrary of, it's clear that judgment has entered, that they
23   haven't got any chance to appeal, and they say, well, as a
24   matter of law that's prejudice.  You say not so under the
25   Massachusetts decided cases.

1          **MR. GILBERT:**  That is our position, your Honor.
2     But we also think --
3          **THE COURT:**  What are they supposed to do?  If they
4     have the burden, but it is difficult to see that someone
5     need prove an impossibility, how, at that remove, are they
6     going to go about it?
7          **MR. GILBERT:**  Well, that's an important question.
8     And I want to -- give me a chance to answer that because it
9     is the question.  It's a fair question to ask.  And there
10    are lots of cases in Massachusetts, federal and state, where
11    insurers in fact set out to discharge their burden of
12    proving prejudice.
13         First, let me say, start by saying courts in
14    Massachusetts have repeatedly rejected the notion that there
15    should be a presumption of prejudice.  They have rejected
16    the argument that your Honor just posited to me, which is,
17    my gosh, it's very hard for the insurance company to go
18    forward with this burden, so there should be some sort of
19    presumption.  There's even a suggestion in a case that was
20    decided by the SJC that for extreme notice, anything over
21    five years, at least in that situation let's have a
22    presumption of prejudice.  And again, the SJC said no, there
23    will be no presumption.
24         So the SJC truly has considered the very issue that
25    your Honor has posited, that it is kind of tough for an

1  insurance company to go forward, and I wouldn't say prove a
2  negative, but to prove something about what would have
3  happened if they had received notice earlier.
4         There are a number of ways that they can set about
5  doing it.  One of them is to say there are key witnesses
6  that we need in order to prove one of our exclusions, to
7  prove that this was expected or intended discharge, or to
8  prove that something didn't happen until a certain date.
9  Those witnesses have died or are otherwise unavailable.
10         Same thing with missing documents.  There's no
11  suggestion of this.  Indeed, when they issued their coverage
12  opinion back in 2001, they had a year to investigate the
13  claim.  We sent a lot of letters.  We attached them all.
14  Those are responses.  All the questions were answered.  And
15  when they issued their opinion they didn't even suggest that
16  they had been prejudiced.  They didn't raise the defense of
17  late notice or voluntary payments.
18         So when they made the decision about coverage all
19  they were concerned about were issues like allocation.  In
20  fact, allocation was the one issue.
21         Another thing that they can do is come forward and
22  say, as in Valley Products, the Judge Harrington decision,
23  not even the primary insurer was involved, there was no
24  competent defense counsel there.  It was a poorly defended
25  case.

```
 1              Looking at the record these are the things that
 2   could have and should have been done differently.  It
 3   requires a little bit of work, your Honor, on the part of
 4   the insurance company.  But to say that they need to
 5   undertake some work in order to meet their burden is
 6   different than saying that it's an impossible task.
 7              THE COURT:  Thank you.
 8              All right.  As I said at the side bar, I'm going to
 9   take the matter under advisement.  Now, it is my intention
10   to get busy on it.  I've prepared for this argument and the
11   argument has been very helpful to the Court.  If you were to
12   resolve it all it takes is a phone call to Ms. Smith.  But
13   unless you jointly request, I'm not giving some outside date
14   as to when I'll decide it.  But when I decide it, it's
15   decided.  And I do thank you very much.
16              MR. HARDING:  Your Honor?
17              THE COURT:  Yes.
18              MR. HARDING:  Would I be able to just address a
19   couple of the points that Mr. Gilbert raised?
20              THE COURT:  Well, we don't normally have rebuttal,
21   but I'll give you two minutes.
22              MR. HARDING:  Okay.  On the first Celanese case, I
23   just think it's worth noting that it's a different notice
24   provision, it didn't require immediate notice like ours did.
25   They did not have a voluntary payments provision in those
```

```
 1   policies.  And the third thing is all the Court ultimately
 2   determined was that it was a matter for trial, not for
 3   summary judgment.
 4          On the voluntary payments issue, I think it's
 5   important to note that in the Augat case, Note 4, the Court
 6   says that what is determinative of whether it's voluntary is
 7   whether it was done without the knowledge or consent of the
 8   insurer, not whether they did it because of some legal
 9   compulsion, whether it be the DEP after them, pursuant to a
10   court judgment, or anything else.  What determines whether
11   it's voluntary is whether they chose to act without
12   notifying their insurer.
13          **THE COURT:**  But even if that's so and it
14   constitutes a breach then the prejudice issue kicks in
15   again, correct?
16          **MR. HARDING:**  Well, Augat says that that, breach of
17   that provision equals prejudice, or in the alternative that
18   no prejudice may be established.
19          **THE COURT:**  Augat is not the last word on the
20   point, though, is it?
21          **MR. HARDING:**  Well, Atlas Tack came after that and
22   adopted the same ruling.  There are other decisions which
23   haven't followed as well.  But here we've got a final
24   judgment in place and that a settlement entered into after
25   that, no notice to anyone until ten years after the fact.
```

```
 1         THE COURT:  I understand those things are
 2    undisputed.  I thank you both.  We'll recess.
 3         MR. GILBERT:  Thank you.
 4         MR. HARDING:  Thank you, your Honor.
 5         MR. AYLWARD:  Thank you.
 6         THE CLERK:  All rise.  Court is in recess.
 7         (Whereupon the matter concluded.)
 8
 9
10              C E R T I F I C A T E
11
12
13         I, Donald E. Womack, Official Court Reporter for
14    the United States District Court for the District of
15    Massachusetts, do hereby certify that the foregoing pages
16    are a true and accurate transcription of my shorthand notes
17    taken in the aforementioned matter to the best of my skill
18    and ability.
19
20
21              _____
                       DONALD E. WOMACK
22                   Official Court Reporter
                        P.O. Box 51062
23             Boston, Massachusetts 02205-1062
                    womack@megatran.com
24
25
```