UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| INVENSYS SYSTEMS, INC., | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 1:05-CV-11589-WGY |
| | ) |
| CENTENNIAL INSURANCE  COMPANY, | ) |
| Defendant. | ) |

---

## OPPOSITION OF PLAINTIFF INVENSYS SYSTEMS, INC.
## TO DEFENDANT CENTENNIAL'S REQUEST FOR CERTIFICATION

Plaintiff Invensys Systems, Inc. respectfully opposes Defendant Centennial Insurance

Company's request for certification of a legal question to the Massachusetts Supreme Judicial

Court.  Plaintiff opposes the request for two reasons: (1) it is unnecessary and inappropriate,

because Massachusetts state law is well-established on the relevant issues in this case; and (2) it

represents an improper attempt by Centennial to return to a state court forum that it deliberately

abandoned by removing this case to Federal District Court.  The First Circuit has repeatedly

rejected such attempts to bounce back and forth between state and federal forums.

For these reasons, Plaintiff respectfully requests the Court to decline Centennial's request

to certify any question to the Massachusetts Supreme Judicial Court.

### ARGUMENT

Plaintiff originally filed this state law action in Massachusetts Superior Curt.  On or

about July 29, 2005, Centennial -- the party now seeking certification to the Massachusetts SJC -

- removed the case to Federal District Court, based on diversity of citizenship.

At no time prior to the last sentence of its closing argument did Centennial suggest that

certification was necessary or appropriate.  In its written motion and memorandum seeking

1

summary judgment (as well as in opposition to Invensys's cross-motion for summary judgment),

Centennial made no argument that Massachusetts law was unclear or unsettled in any respect

material to this case.  Indeed, at oral argument, counsel for Centennial agreed with the Court that

Massachusetts law requires "that Centennial has to demonstrate some actual prejudice" arising

from late notice and/or voluntary payments. See Exh. 1 at 3-4 ("MR. HARDING: That's the

Massachusetts standard, your Honor, yes.").  It was not until the Court expressly raised the issue

of possible certification that Centennial first suggested that it would be amenable to the

Massachusetts state courts playing any role in the adjudication of this case.

Centennial has now filed a formal request that the Court certify a question of law to the

Massachusetts Supreme Judicial Court.  However, Centennial does not precisely identify the

uncertain issue of law to be certified.  Instead, Centennial requests that this Court set forth its

findings of fact, and then tender the case to the Massachusetts Supreme Judicial Court together

with a request for guidance on the "the appropriate standard to govern the issue of prejudice in

the context of Centennial's defenses based upon late notice and voluntary payments." See

Centennial Request at 1.

In other words, Centennial is seeking a jurisdictional bifurcation: Have the federal court

decide the facts, and then have the state court apply the law to the facts and render an ultimate

decision on the case.  This is ironic, since Centennial chose to remove the case from state court

in the first place.  For two reasons, Invensys opposes certification of any issue to the

Massachusetts Supreme Judicial Court.

First, there is no uncertainty as to the principles of state insurance law that govern this

case.  As Centennial admitted at oral argument, Massachusetts law plainly requires the insurer to

demonstrate actual prejudice in this case. <u>See</u> Exh. 1, Reporter's Transcript at 3-4. <u>See</u> <u>also</u>

<u>Darcy</u> v. <u>Hartford Ins. Co.</u>, 407 Mass. 481, 486, 554 N.E.2d 28 (1990) (requiring showing that

"the insurer's interests have been actually harmed"); <u>Lighter</u> v. <u>Lumbermens Mutual Cas. Ins.</u>

<u>Co.</u>, 43 Mass. App. Ct. 415, 417, 683 N.E.2d 297, 299 (1997) ("[A]n insurance company may

only deny [coverage] because of the insured's failure to provide timely notice to the company if

that delay materially prejudiced the company."), <u>citing</u> <u>Goodman</u> v. <u>American Cas. Co.</u>, 419

Mass. 138, 142, 643 N.E.2d 432 (1994).  The requirement of prejudice applies not only with

respect to late notice, but also as to the "voluntary payments" issue:

> "Finally, apart from the factual considerations just discussed, before Peerless could be relieved of responsibility based on Sarnafil's violations of insurance provisions [including voluntary payments], Peerless would have to show that had incurred actual prejudice."

<u>See</u> <u>Sarnafil, Inc.</u> v. <u>Peerless Ins. Co.</u>, 418 Mass. 295, 305, 636 N.E.2d 247, 253 (1994);

<u>Hoechst-Celanese</u>, <u>Employers' Liability Assur. Corp.</u> v. <u>Hoechst Celanese Corp.</u> ("<u>Hoechst-</u>

<u>Celanese</u>"), 43 Mass. App. Ct. 465, 476, 684 N.E.2d 600, 609 (1997).

Further, the Massachusetts appellate courts have expressly and unambiguously rejected

Centennial's argument that prejudice should be presumed in these or any other circumstances.

<u>See</u>, <u>e.g.</u>, <u>Darcy</u>, 407 Mass. at 485-86, 554 N.E.2d at 31-32 (refusing to adopt rebuttable

presumption of prejudice even in cases of extreme late notice); <u>Hoechst-Celanese</u>, 43 Mass. App.

Ct. at 478-79, 684 N.E.2d 609 ("To create a presumption of prejudice in favor of excess insurers

would be quite anomalous.").  In short, Centennial fails to identify any uncertain issues of law.[1]

Rather than seeking clarification of uncertain law, Centennial is essentially asking this

---

[1]    To the extent that Centennial is seeking certification so that it can ask the SJC to reconsider its decision not to adopt a presumption of prejudice, this would be an inappropriate use of the certification procedure. <u>See</u> <u>Cantwell</u> v. <u>Univ. of Massachusetts</u>, 551 F.2d 879, 880 (1st Cir. 1977) ("this is a misconception of the purpose of certification,

Court to abdicate to the state court the job of making the ultimate decision, i.e., applying settled legal principles to undisputed facts, and determining which party is entitled to judgment. This is not the purpose for which certification was intended. See 17A Charles A. Wright, Arthur R. Miller, and Edward C. Cooper, Federal Practice & Procedure § 4248, 172 (2d 1988) ("Where certification is available, it is not a device to be used indiscriminately. As the Fifth Circuit has said, 'we use much judgment, restraint and discretion in certifying. We do not abdicate.'"), citing Barnes v. Atlantic & Pacific Life Ins. Co. of America, 514 F.2d 704, 705 n.4 (5th Cir. 1975). This Court is well capable of applying settled principles of Massachusetts insurance law to the undisputed facts of the case; certification to the SJC is unnecessary.

Simply put, Centennial has failed to identify a valid justification for certification.

\* \* \* \* \*

Invensys also objects to certification because it is being sought by a party that consciously failed to avail itself of an opportunity to have the Massachusetts state courts resolve this case. As noted, Invensys originally filed this action in state court. Centennial -- the party now seeking removal -- decided to remove the case to Federal District Court. As the First Circuit has repeatedly held, the discretion to certify a question to state court is less likely to be exercised at the request of a party that has previously avoided the state forum to which it now seeks to return:

> For reasons that are largely self-explanatory, we have held that "one who chooses to litigate [her] action in the federal forum (as plaintiff did here) must ordinarily accept the federal court's reasonable interpretation of extant state law rather than seeking extensions via the certification process." Croteau v. Olin Corp., 884 F.2d 45, 46 (1st Cir. 1989); see also Charles A. Wright, Arthur R. Miller, and Edward C. Cooper, Federal Practice & Procedure § 4248, 172 (2d 1988) (courts "should be slow to honor a request

---

which is not to permit a party to seek to persuade the state court to change what appears to be present law.").

for certification from a party who chose to invoke federal justification.").

Santiago v. Sherwin Williams Co., 3 F.3d 546, 548 (1st Cir. 1993). See also Manchester School

District v. Crisman, 306 F.3d 1, 14 (1st Cir. 2002) (declining certification request by party that

had "the option to bring a civil action 'in any state court'" but chose to sue in federal court).

At bottom, Centennial consciously opted to litigate in federal rather than state court. Not

until, literally, the final sentence of its closing argument, did Centennial ever suggest that

Massachusetts law was even a bit unclear as to the applicable legal principles, let alone that this

Court was incapable of applying those established principles to the undisputed facts of this case.

Having selected this federal forum and given no prior reason, up to the moment of decision, that

this court was incapable of ruling on the case, Centennial should not be permitted to proceed all

the way to closing argument before requesting that a different court system render the decision.

## CONCLUSION

For the reasons set forth above, Plaintiff Invensys Systems, Inc. respectfully requests the

Court to deny Defendant Centennial Insurance Company's request for certification.

<div style="margin-left:50%">

Respectfully submitted,
PLAINTIFF INVENSYS SYSTEMS, INC.,
By its attorneys,


_____/s Robert J. Gilbert/_____
Robert J. Gilbert, Esq. (BBO # 565466)
GILBERT & RENTON LLC
344 North Main Street
Andover MA 01810
Tel (978) 475-7580
Fax (978) 475-1881

</div>

Dated: November 22, 2006

## <u>CERTIFICATE OF SERVICE</u>

I, Robert J. Gilbert, hereby certify that on November 22, 2006, a true and correct copy of the foregoing document was served electronically upon John T. Harding, Esq., counsel of record for Defendant Centennial Insurance Company.

_____/s Robert J. Gilbert/_____
Robert J. Gilbert

111306b

1

| | |
|---|---|
| 1 | UNITED STATES DISTRICT COURT |
| | FOR THE DISTRICT OF MASSACHUSETTS |
| 2 | |
| | Civil Action |
| 3 | No. 05-11589-WGY |
| 4 | |
| 5 | * * * * * * * * * * * * * * * * * |
| | * |
| 6 | INVENSYS SYSTEMS, INC., * |
| | * |
| 7 | Plaintiff, * |
| | * |
| 8 | v. * HEARING |
| | * |
| 9 | CENTENNIAL INSURANCE COMPANY, * |
| | * |
| 10 | Defendant. * |
| | * |
| 11 | * * * * * * * * * * * * * * * * * |

13          BEFORE:   The Honorable William G. Young,
14                             District Judge

16
APPEARANCES:
17

18          GILBERT & RENTON LLC (By Robert J. Gilbert,
       Esq.), 344 North Main Street, Andover,
19     Massachusetts 01810, on behalf of the Plaintiff

20
            MORRISON MAHONEY LLP (By John T. Harding,
21     Esq. and Michael F. Aylward, Esq.), 250 Summer
       Street, Boston, Massachusetts 02210, on behalf of
22     the Defendant

24                                 1 Courthouse Way
                                   Boston, Massachusetts
25
                                   November 13, 2006

2

1          THE CLERK:  All rise.  Court is in session, please
2     be seated.

Page 1

111306b

3           Calling Civil Action 05-11589, Invensys Systems v.

4    Centennial.

5           THE COURT:  Good afternoon.  Would counsel identify

6    themselves.

7           MR. GILBERT:  Your Honor, Robert J. Gilbert for

8    plaintiff, Invensys Systems, Inc.

9           MR. HARDING:  Good afternoon, your Honor.  John

10   Harding from Morrison Mahoney for the defendant, Centennial

11   Insurance Company.

12         MR. AYLWARD:  Michael Aylward from Morrison

13   Mahoney.  I'm with Mr. Harding.

14         THE COURT:  Let's review the procedural context to

15   be clear we're in agreement.

16         This case came before the Court originally on

17   cross-motions for summary judgment.  At the invitation of

18   the clerk, the parties may, agree that the case may be

19   treated as a case stated.  That means that I have the record

20   of the case before me, I will entertain argument this

21   afternoon in the nature of final argument, and then based

22   upon the record I have before me, drawing such inferences as

23   are reasonable, I will resolve the case.

24         Authority for this approach, similar to the case

25   stated approach in the state courts, is found in two First

3

1    Circuit cases, Boston Five Cents Savings Bank and

2    Continental Grain.

3          We're agreed, for the plaintiff?

4         MR. GILBERT:  Yes, your Honor.

5         THE COURT:  Defense?

6         MR. HARDING:  Yes, your Honor.

111306b

7      THE COURT:  All right.  Now, off the record for a
8   minute, on the side bar, if you would.
9          (Side bar conference off the record.)
10     THE COURT:  I think that it makes sense as we have
11   these arguments to follow the Massachusetts order of
12   argument, which would have the defendant Centennial argue
13   first and then Invensys Systems.  So, I'll hear first from
14   Centennial.
15     MR. HARDING:  Thank you, your Honor.  John Harding
16   on behalf of the defendant, Centennial.
17         The central issue presented here is whether a
18   policyholder can delay notice for ten years until after a
19   claim is completely resolved by final judgment, it's paid
20   that judgment, it's then entered into an additional
21   settlement to resolve certain aspects of the judgment, and
22   then turn around and present that claim to its excess
23   carrier as a fait accompli for payment.
24     THE COURT:  Well, let me ask you this.  In, in
25   terms of the record now, and I have the complete record

4

1   before me, in terms of the record, you're agreed that
2   Centennial has to demonstrate some actual prejudice from
3   that time line, correct?
4      MR. HARDING:  That's the Massachusetts standard,
5   your Honor, yes.
6      THE COURT:  Okay.  What is it in this case, on this
7   record?
8      MR. HARDING:  In this case, on this record, it's
9   the fact that a judgment was entered that clearly invaded
10   our layer of coverage.  That's the primary aspect of

111306b

11   prejudice.  There was a final judgment entered years before

12   we had notice of this claim.  They then paid the cash

13   portion of that judgment as determined by Judge Stearns and

14   then entered into a separate settlement agreement.

15        THE COURT:  None of that's disputed, but does that

16   constitute prejudice under Massachusetts law?

17        MR. HARDING:  Yes, it does, your Honor, and I'll

18   address that.

19        THE COURT:  Well, I want you to.  Because it would

20   seem to me that unless the delay resulted in an outcome that

21   would have been different had there not been the delay

22   that's not prejudice.

23        Is that a proper way of stating the Massachusetts

24   law?

25        MR. HARDING:  No, your Honor.  Because there's no

5

1   Massachusetts case that says in an excess situation or even

2   in a primary situation that the insurer must come in and

3   demonstrate the impossible.  In other words, that it must

4   demonstrate that had it been notified of the claim in a

5   timely manner the result of the underlying case would have

6   been different.

7        And just to give your Honor very concrete examples,

8   the two leading cases that plaintiff relies upon are the

9   Darcy and the Johnson Controls case, both involving primary

10  insurers.

11        In Darcy, the critical fact is that even though

12  there the delay was determined to be extreme, because it was

13  five years, the notice was still given two years before

14  there was, the case was just meandering along in the state

111306b

15    court and it was still an additional two years after notice

16    was given before the plaintiff in that case finally moved

17    for the entry of a default judgment and a default was

18    entered. So there was plenty of time.

19         THE COURT: But you want me to hold, in essence --

20    because the points that you raise are undisputed -- you want

21    me to hold that because judgment has entered here that is

22    prejudice, per se.

23         MR. HARDING: Yes. Or it equates to -- we're not

24    asking for a presumption of prejudice. We're saying that on

25    the facts of this case, that fact, coupled with all the

6

1    other facts, the subsequent settlement and everything else,

2    constitutes actual prejudice, it meets our burden of showing

3    actual prejudice.

4         Because under the cases, what Augat and all the

5    cases emphasize are was there a lost opportunity. They do

6    not require the insurer to come in and show exactly how, had

7    it been apprised of the opportunity, what it would have

8    done. And it's particularly so in this case where you have

9    an excess insurer situation.

10         The fact is that we had no opportunity to evaluate

11    one single aspect of this case at any point in the process

12    for more than ten years, and weren't contacted until after

13    everything was done. They had attempted to collect as much

14    as they could from Liberty Mutual and then turned to us.

15         THE COURT: All right, I've read the briefs.

16         MR. HARDING: Okay.

17         THE COURT: And I'm familiar with it.

18         Let me ask you this. You're saying we don't have

111306b

19    to show any particular, particularized prejudice that would

20    have led to a different outcome because that's impossible

21    given the undisputed delay.

22         MR. HARDING:  Exactly.  In other words, in

23    plaintiff's submissions they keep bringing up how we haven't

24    put on any evidence of prejudice in terms of what we would

25    have done or how we would have done it.  The fact is that

7

1    given this scenario ten years after the fact, anything that

2    we would submit along those lines would be pure speculation.

3    For my head of the claims unit today to say, well, if we had

4    got this in 1990, we would have done X, Y and Z and we would

5    have, you know, hired counsel to associate and we would have

6    done that.  There's no way that a person today can recreate,

7    or create for the first time what they would have done had

8    they been placed in that situation.  It would be pure

9    speculation.  And that's why there's not a single

10   Massachusetts case that requires an insurer to make such a

11   showing.

12         THE COURT:  After judgment has entered.

13         MR. HARDING:  After judgment has entered.  I think

14   that's the critical difference between our case and cases

15   like Johnson Controls and Darcy where there, even though

16   perhaps the insurer had been compromised in some respect,

17   they still had the opportunity to come in and defend.  In

18   Johnson Controls it was actually quite early in the case, it

19   was about a year late, but it was still a long time before

20   any trial date or anything else, they had the opportunity to

21   come in and do something.  Even though Darcy was a much

22   longer delay in giving notice, still, because the plaintiff

Page 6

111306b

23    there had essentially never pursued the case, there was

24    ample opportunity to simply appoint defense counsel. There

25    were no other coverage issues raised by the insurer there.

8

1    So all they had to do was hire defense counsel and go ahead

2    and defend it and protect their interests and control the

3    defense.

4          THE COURT: One last question, and don't take this

5    question amiss because I'm going to ask him precisely the

6    same question.

7          Assume for purposes of this question that this

8    Court's reasoning is to the contrary and you lose the case.

9    You have a right to appeal the case. This case is

10    quintessentially an issue of Massachusetts law. I'm not for

11    certifying the issue to the Supreme Judicial Court -- well,

12    I don't want to do it twice is the --

13          MR. HARDING: Right.

14          THE COURT: -- thing. But if you were in that

15    posture, and I will ask him --

16          MR. HARDING: Yes.

17          THE COURT: -- exactly the same question, are you

18    interested in my certifying it to the Supreme Judicial Court

19    of Massachusetts, obviously with my opinion --

20          MR. HARDING: Right.

21          THE COURT: -- which will set out the facts, or

22    not?

23          MR. HARDING: I think possibly. I mean, I guess my

24    only hesitation is that I'm not sure that certification is

25    necessary in the sense that I think based on existing

111306b

9

1    Massachusetts precedent you would be able to, you know --

2              THE COURT:  Of course.

3              MR. HARDING:  -- find in our favor on that.

4              THE COURT:  And I'm not saying that I couldn't, and

5    I'm going to ask him that question.  But if my reasoning was

6    to the contrary, I'm just wondering how interested you are

7    in having it ultimately resolved.

8              MR. HARDING:  Yes.

9              THE COURT:  Because cases about reinsurance are

10   few.  The cases that we're talking about are cases about

11   insurance.

12             MR. HARDING:  Right.

13             THE COURT:  Correct?

14             MR. HARDING:  Right.

15             THE COURT:  All right.

16             MR. HARDING:  And I would say given that scenario,

17   I mean, technically there is not an SJC decision that has

18   squarely addressed these particular facts.  We've cited the

19   Lusalon case which was an Appeals Court case that discussion

20   of late notice is very short, and then the SJC affirmed but

21   really relied on other grounds, they didn't in any way say

22   they disagree with the Appeals Court on notice.  So there's

23   not, as there is in other jurisdictions, and we've cited

24   cases from a number of other state and federal courts which

25   have dealt more precisely with our facts in terms of a

10

1    judgment having been entered, there is no, you know, clearly

2    controlling precedent of the SJC on these particular facts.

3    So, I think in light of that certification, whether it be by

111306b

4    your Honor or by the First Circuit, might well make sense

5    here.

6            THE COURT:  Thank you.

7            All right.  Why don't I, just to show that I'm

8    being evenhanded, why don't I start with the question I

9    finished with them.

10            Assume that I make my memorandum of decision and

11    you lose.  You have a right to appeal.  Would you prefer I

12    certify it to the Supreme Judicial Court?

13            MR. GILBERT:  No, your Honor.

14            THE COURT:  You would like to go to the First

15    Circuit?

16            MR. GILBERT:  We're fine with the First Circuit.

17            THE COURT:  All right.

18            MR. GILBERT:  The short answer is even though we

19    originally filed in the state court, we're perfectly content

20    with what your Honor does in this case.  We think that --

21            THE COURT:  Well, I'm asking you to assume that

22    you're not content at all, that I reject your position and

23    you decide to go for further proceedings, then what?

24            MR. GILBERT:  In that case, your Honor, we will not

25    be content with your Honor's decision, but we'll be

11

1    satisfied with going up to the First Circuit in arguing

2    existing Massachusetts precedent.

3            THE COURT:  Thank you.  That's a direct answer and

4    I appreciate it.

5            All right, let me ask you to start.  There's really

6    two different arguments here that I see, or two different

7    issues.  One's the delayed notice.

Page 9

111306b

8          MR. GILBERT:  Yes.

9          THE COURT:  And the notice was extremely delayed

10    here.  And I've asked them questions about that.  But the

11    other's the voluntary payment.  Why don't you start there.

12          MR. GILBERT:  I will, your Honor.

13          THE COURT:  Was this payment voluntary and in

14    violation of the insurance agreement?

15          MR. GILBERT:  You've asked two questions, was it

16    voluntary and was it in violation of the insurance

17    agreement.  And I think the answer to both of those

18    questions is no.  It could not remotely be called voluntary

19    because the judgment has entered.  This puts it in a

20    materially different posture than any of the voluntary

21    payments that have been discussed in any of the case law

22    that's been cited by both sides.

23          There was a settlement agreement post-judgment, but

24    that settlement agreement truly tracked the final judgment

25    that was binding on the parties.  There's nothing in the


                                          12

1     settlement agreement that says, wait a second, we'll take

2     soil, you take ground water, or we'll split things up in

3     some other way.  So that so-called settlement agreement is a

4     pure expression of what the declaratory relief was that was

5     entered by Judge Stearns.  It was not --

6          THE COURT:  So in essence this is the not uncommon

7     case that the case goes through to judgment in the trial

8     court and thereafter is settled which obviates the further

9     expense and uncertainty or likelihood of affirmance in an

10    appellate court.

11          MR. GILBERT:  That's right.
                          Page 10

111306b

12      THE COURT:  You say that's not voluntary?

13      MR. GILBERT:  It's not voluntary and it doesn't

14  violate the agreement.  Because the agreement itself says

15  that their duty to pay arises upon entry of a final

16  judgment.  And we cited the relevant language.  Now, there

17  might be a notice issue.  But at that point under the terms

18  of the policy we haven't done anything that's prohibited by

19  the policy other than the failure to provide notice on the

20  timing that we should have.

21      THE COURT:  So where I started in questioning you,

22  you say, well, it's just no breach at all.

23      MR. GILBERT:  Correct.

24      THE COURT:  And on notice you say, well, there's a

25  breach but no prejudice.

                                                        13

1       MR. GILBERT:  Correct.

2       THE COURT:  There is no case, and if there is you

3   tell me, where the proceedings had reached this stage -- he

4   framed it well when he started his argument.  The case goes

5   through litigation, goes to judgment, goes to a resolution

6   of that judgment, which invades the reinsurance.  The

7   primary is exhausted.

8       MR. GILBERT:  I think your Honor means the excess

9   insurance?

10      THE COURT:  Yes, the excess.  Only after all of

11  those things are resolved -- I won't call it a fait

12  accompli -- then notice is given and this litigation begins.

13  Correct?

14      MR. GILBERT:  Sarnafil comes awfully close,

15  although it's not an excess insurance case.

                    Page 11

111306b

16          THE COURT: Right.

17          MR. GILBERT: It's a primary insurance case. But I

18     think the core proposition is whether there has been a

19     completion of the underlying proceedings before the notice

20     is provided. That question has been answered by Sarnafil,

21     the follow-on case to Augat, and which the SJC took another

22     crack at it. But you know what? They still have to show

23     prejudice, and under the facts of some cases it would be so

24     clear that the insurer's actual interests were adversely

25     affected. And the paradigm, your Honor, would be a

                                                    14

1      situation where the insurer learns of it, a primary insurer

2      learns of it and there's not even an opportunity for the

3      primary insurer to get involved to make sure there's

4      competent defense counsel, do all the things that primary

5      insurers did, and in fact which Liberty Mutual did in this

6      case before getting off the claim. The counsel that they

7      put in place, the insurance company was satisfied with it.

8      Invensys, a very sophisticated entity, was satisfied with

9      it. The record is absent of any suggestion that underlying

10     defense counsel did anything wrong.

11          But this is a case that's outside the rubric that

12     they would like to put it in. In fact, they cited one case

13     that was written by Judge Harrington. I think they said

14     Judge Keeton, but I believe it was Judge Harrington who

15     decided the Fireman's Fund v. Valley Products Manufacturing

16     Company. And that was a case where there was a primary

17     insurer and an excess insurer and neither one of them got

18     notice.

19          And so in that case, in addition to finding that
                              Page 12

111306b

20    witnesses were gone, evidence had disappeared, that there
21    was actual material injury to the insurer's ability to make
22    their insurance case, Judge Harrington also found there
23    wasn't even a primary insurer on the scene at the beginning
24    to make sure that the case was defended properly.  That's
25    not this case.

15

1        So we're back to Sarnafil which says, you know
2    what, you've got to prove prejudice.  And then we look at
3    Hoechst-Celanese from the Massachusetts Appeals Court.
4    That's a very important case on the whole question of
5    prejudice.  Because that's a case where the insurer, unlike
6    Centennial in this case, the insurer in that case, an excess
7    insurer came in and said this witness was gone, we didn't
8    have access to that document.  And then there is a lively
9    discussion between the parties, resolved by the Court
10   ultimately, on the issue were those missing witnesses or
11   those missing documents material to anything.  And that was
12   the discussion.  Okay, you have shown that you don't have
13   access to things.  Did it really hurt you.  Are you in a
14   position that's worse than you would have been if you had
15   received notice.
16       And that, your Honor, I would suggest is the actual
17   question that's presented to you for resolution.  Has
18   Centennial come forward with evidence to meet their burden
19   of proof on the question did they have actual and
20   substantial prejudice.  So --
21       THE COURT:  So you, not surprisingly, take the
22   contrary of, it's clear that judgment has entered, that they
23   haven't got any chance to appeal, and they say, well, as a
Page 13

111306b

24    matter of law that's prejudice.  You say not so under the
25    Massachusetts decided cases.

⬚

16

1          MR. GILBERT:  That is our position, your Honor.
2     But we also think --
3          THE COURT:  What are they supposed to do?  If they
4     have the burden, but it is difficult to see that someone
5     need prove an impossibility, how, at that remove, are they
6     going to go about it?
7          MR. GILBERT:  Well, that's an important question.
8     And I want to -- give me a chance to answer that because it
9     is the question.  It's a fair question to ask.  And there
10    are lots of cases in Massachusetts, federal and state, where
11    insurers in fact set out to discharge their burden of
12    proving prejudice.
13          First, let me say, start by saying courts in
14    Massachusetts have repeatedly rejected the notion that there
15    should be a presumption of prejudice.  They have rejected
16    the argument that your Honor just posited to me, which is,
17    my gosh, it's very hard for the insurance company to go
18    forward with this burden, so there should be some sort of
19    presumption.  There's even a suggestion in a case that was
20    decided by the SJC that for extreme notice, anything over
21    five years, at least in that situation let's have a
22    presumption of prejudice.  And again, the SJC said no, there
23    will be no presumption.
24          So the SJC truly has considered the very issue that
25    your Honor has posited, that it is kind of tough for an

⬚

17

111306b

1    insurance company to go forward, and I wouldn't say prove a

2    negative, but to prove something about what would have

3    happened if they had received notice earlier.

4         There are a number of ways that they can set about

5    doing it.  One of them is to say there are key witnesses

6    that we need in order to prove one of our exclusions, to

7    prove that this was expected or intended discharge, or to

8    prove that something didn't happen until a certain date.

9    Those witnesses have died or are otherwise unavailable.

10         Same thing with missing documents.  There's no

11   suggestion of this.  Indeed, when they issued their coverage

12   opinion back in 2001, they had a year to investigate the

13   claim.  We sent a lot of letters.  We attached them all.

14   Those are responses.  All the questions were answered.  And

15   when they issued their opinion they didn't even suggest that

16   they had been prejudiced.  They didn't raise the defense of

17   late notice or voluntary payments.

18         So when they made the decision about coverage all

19   they were concerned about were issues like allocation.  In

20   fact, allocation was the one issue.

21         Another thing that they can do is come forward and

22   say, as in Valley Products, the Judge Harrington decision,

23   not even the primary insurer was involved, there was no

24   competent defense counsel there.  It was a poorly defended

25   case.

⬜

18

1         Looking at the record these are the things that

2    could have and should have been done differently.  It

3    requires a little bit of work, your Honor, on the part of

111306b

4   the insurance company. But to say that they need to

5   undertake some work in order to meet their burden is

6   different than saying that it's an impossible task.

7           THE COURT: Thank you.

8           All right. As I said at the side bar, I'm going to

9   take the matter under advisement. Now, it is my intention

10  to get busy on it. I've prepared for this argument and the

11  argument has been very helpful to the Court. If you were to

12  resolve it all it takes is a phone call to Ms. Smith. But

13  unless you jointly request, I'm not giving some outside date

14  as to when I'll decide it. But when I decide it, it's

15  decided. And I do thank you very much.

16          MR. HARDING: Your Honor?

17          THE COURT: Yes.

18          MR. HARDING: Would I be able to just address a

19  couple of the points that Mr. Gilbert raised?

20          THE COURT: Well, we don't normally have rebuttal,

21  but I'll give you two minutes.

22          MR. HARDING: Okay. On the first Celanese case, I

23  just think it's worth noting that it's a different notice

24  provision, it didn't require immediate notice like ours did.

25  They did not have a voluntary payments provision in those

19

1   policies. And the third thing is all the Court ultimately

2   determined was that it was a matter for trial, not for

3   summary judgment.

4           On the voluntary payments issue, I think it's

5   important to note that in the Augat case, Note 4, the Court

6   says that what is determinative of whether it's voluntary is

7   whether it was done without the knowledge or consent of the

111306b

8    insurer, not whether they did it because of some legal

9    compulsion, whether it be the DEP after them, pursuant to a

10   court judgment, or anything else.  What determines whether

11   it's voluntary is whether they chose to act without

12   notifying their insurer.

13        THE COURT:  But even if that's so and it

14   constitutes a breach then the prejudice issue kicks in

15   again, correct?

16        MR. HARDING:  Well, Augat says that that, breach of

17   that provision equals prejudice, or in the alternative that

18   no prejudice may be established.

19        THE COURT:  Augat is not the last word on the

20   point, though, is it?

21        MR. HARDING:  Well, Atlas Tack came after that and

22   adopted the same ruling.  There are other decisions which

23   haven't followed as well.  But here we've got a final

24   judgment in place and that a settlement entered into after

25   that, no notice to anyone until ten years after the fact.

20

1        THE COURT:  I understand those things are

2    undisputed.  I thank you both.  We'll recess.

3        MR. GILBERT:  Thank you.

4        MR. HARDING:  Thank you, your Honor.

5        MR. AYLWARD:  Thank you.

6        THE CLERK:  All rise.  Court is in recess.

7        (Whereupon the matter concluded.)

8

9

10            C E R T I F I C A T E

11

Page 17

111306b

12

13          I, Donald E. Womack, Official Court Reporter for

14    the United States District Court for the District of

15    Massachusetts, do hereby certify that the foregoing pages

16    are a true and accurate transcription of my shorthand notes

17    taken in the aforementioned matter to the best of my skill

18    and ability.

19

20

21          _____

22                 DONALD E. WOMACK
                 Official Court Reporter
23                   P.O. Box 51062
             Boston, Massachusetts 02205-1062
24               womack@megatran.com

25

**Robert Gilbert**

| | |
|---|---|
| **From:** | ECFnotice@mad.uscourts.gov |
| **Sent:** | Wednesday, November 15, 2006 12:56 PM |
| **To:** | CourtCopy@mad.uscourts.gov |
| **Subject:** | Activity in Case 1:05-cv-11589-WGY Invensys Systems, Inc. v Centennial Insurance Company "Transcript" |

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You will be charged for viewing the referenced documents according to the total number of pages; the usual 'free look' and 30 page limit does not apply.**

### United States District Court

### District of Massachusetts

Notice of Electronic Filing

The following transaction was received from Womack, Donald entered on 11/15/2006 at 12:55 PM EST and filed on 11/15/2006

**Case Name:**      Invensys Systems, Inc. v Centennial Insurance Company
**Case Number:**    1:05-cv-11589
**Filer:**
**Document Number:** 31

**Docket Text:**
TRANSCRIPT of Proceedings held on 11/13/2006 before Judge Young. Court Reporter: Womack. The original transcripts are maintained in the case file in the Clerk's Office. Copies may be obtained by contacting the court reporter at womack@megatran.com or the Clerk's Office. (Womack, Donald)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**yes
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=11/15/2006] [FileNumber=1653138-0] [4a96b9bc3b987fad470c0560719cb3cf4d7789b9075053597f38c50e70b11400cf c75743e98dfa6ccea5ad06b74b7da65163380502902566bb3ea8fb9d72a815]]

**1:05-cv-11589 Notice will be electronically mailed to:**

Michael F. Aylward     maylward@morrisonmahoney.com, jnickerson@morrisonmahoney.com

Robert J. Gilbert     rgilbert@gilbertandrenton.com

John T. Harding     jharding@morrisonmahoney.com, tcitron@morrisonmahoney.com

**1:05-cv-11589 Notice will not be electronically mailed to:**

11/15/2006