UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                               )
INVENSYS SYSTEMS, INC.,        )
                               )
          Plaintiff,           )
                               )
          v.                   )   CIVIL ACTION
                               )   NO. 05-11589-WGY
CENTENNIAL INSURANCE CO.,      )
                               )
          Defendant.           )
                               )
```

MEMORANDUM AND ORDER

YOUNG, D.J.                                    January 17, 2007

I.    **Introduction**

        Invensys Systems, Inc. ("Invensys") here sues its excess
insurer Centennial Insurance Company ("Centennial") for denying
a claim.  The claim arose from a final judgment in an underlying
lawsuit holding Invensys liable for environmental damage to a
parcel of land previously owned by it, as well as for the ongoing
costs of remediation.  While Centennial does not dispute
coverage, it defends based on alleged breaches of the excess
policy.  Specifically, Centennial asserts that Invensys breached
the notice provision and the voluntary payments provision.

        A.    **Procedural Posture**

        Invensys brought suit in the Massachusetts Superior Court
sitting in and for the County of Norfolk on or about July 1,

2005.  Def.'s Centennial Ins. Co.'s Notice of Removal to the U.S.
Dist. Court [Doc. No. 1] ("Notice of Removal") at 2.  Centennial
removed the case to federal court on or about July 29, 2005.  See
id. at 1.  After the parties both moved for summary judgment,
they consented to have their case heard as a case stated on
November 13, 2006.  Transcript of Oral Argument [Doc. No. 31]
("Tr.") at 2:16-3:6.

   **B.   Findings of Fact**[1]

       **I.   The Underlying Claim**

   The plaintiff Invensys is a successor in interest to a
company known as Trans-Sonics, Inc. ("Trans-Sonics").  Separate
Statement of Undisp. Mat. Facts in Support of Pl.'s Mot. for
Summ. Judgment [Doc. No. 23] ("Pl.'s Statement") ¶ 3; Def.
Centennial Ins. Co.'s Statement of Undisp. Mat. Facts in Support
of Mot. for Summ. Judgement [Doc. No. 20] ("Def.'s Statement") ¶
1.  In 1974, Trans-Sonics sold its assets to The Foxboro Company
("Foxboro").  Id.  In 2001, Foxboro changed its name to Invensys.
Pl.'s Statement ¶ 3.

---

   [1] The factual overview is based on the parties' statements
of undisputed facts, as well as their respective motions and
memoranda in support.  In entertaining this case as a case
stated, however, the Court may draw such inferences as are
reasonable from the undisputed facts of record.  See Continental
Grain Co. v. Puerto Rico Maritime Shipping Auth., 972 F.2d 426,
430 n.7 (1st Cir. 1992); Cosme v. The Salvation Army, 284 F.
Supp. 2d 229, 232 & n.1 (D. Mass. 2003); United Companies Lending
Corp. v. Sargeant, 20 F. Supp.2d 192, 195 (D. Mass. 1998).

In 1956, Invensys (then Trans-Sonics) built a factory on an undeveloped site located at 200 Wheeler Road in Burlington, Massachusetts (the "Site"). Pl.'s Statement ¶¶ 4, 6; Def.'s Statement ¶ 1. Invensys (through its predecessors) owned and operated a manufacturing facility at the Site until 1978. Pl.'s Statement ¶ 7; Def.'s Statement ¶ 2. In 1978, Invensys (then Foxboro) sold the Site to Blanton Wiggin and moved its operations to a new location in Burlington, Massachusetts. Pl.'s Statement ¶ 7. In 1982, Wiggin sold the Site to One Wheeler Road Associates. Pl.'s Statement ¶ 8.

When owned and operated by Invensys (through its predecessors), the Site facility manufactured electronic instruments and systems using trichloroethylene ("TCE") and perchloroethylene ("PCE") in the process. See Pl.'s Statement ¶¶ 11, 14; Def.'s Statement ¶ 3. In 1984, the Town of Burlington Board of Health discovered TCE and PCE, amongst other hazardous chemicals, in a leaching basin at the Site. Pl.'s Statement ¶ 15; Def.'s Statement ¶ 4. In 1985, the Massachusetts Department of Environmental Quality Engineering (now the Massachusetts Department of Environmental Protection) issued a Notice of Responsibility ordering "immediate remedial actions" at the Site, including the rerouting of the drainage system and removal of any liquid residues from the leaching basin. Pl.'s Statement ¶ 24; Def.'s Statement ¶ 5.

In 1990, One Wheeler Road Associates and its general partner, The Gutierrez Company, filed suit (the "Wheeler Road Lawsuit") against Invensys in federal court pursuant to the Comprehensive Environmental Response and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., and Mass. Gen. Laws ch. 21E.  Pl.'s Statement ¶ 30; Def.'s Statement ¶¶ 8-9.  One Wheeler Road Associates sought recovery for response and remediation costs, including "damage to the value of the [Site] and the cost of their investigative and remedial measures."  Pl.'s Statement ¶ 30; Def.'s Statement ¶¶ 8-9.

Following a bench trial, Judge Stearns ruled on **December 13, 1995** that Invensys, as the owner and operator of the Site facility from 1954 to 1978, was responsible for TCE contamination of the groundwater in the northeastern area of the Site.  Pl.'s Statement ¶ 31; Def.'s Statement ¶ 13.  Judge Stearns did not find Invensys liable for soil contamination at the Site.  See Pl.'s Statement ¶¶ 33-34; Def.'s Statement ¶ 13.  The final judgment against Invensys amounted to $1,144,523.79 ($335,515.00 in damages; $217,082.79 in interest; $504,249.00 in attorneys' fees and costs; and $87,677.00 in experts' fees and costs).  Pl.'s Statement ¶ 39; Def.'s Statement ¶ 14.  Furthermore, the final judgment included a declaration that Invensys would be responsible for certain ongoing remediation at the Site.  Id.  Judge Stearns assigned responsibility for soil contamination at

the Site to One Wheeler Road Associates and Gutierrez Associates. Pl.'s Statement ¶ 35.

Both sides having partly prevailed at trial, the parties to the Wheeler Road Lawsuit agreed in October 1996 to waive their respective rights of appeal. Pl.'s Statement ¶ 41. On October 8, 1996, Invensys satisfied Judge Stearns' judgment by paying the amount ordered plus accrued interest, for a total payment of $1,187,202.90. Id.; Def.'s Statement ¶ 15. In addition, the parties' respective future remediation obligations were formally set forth in a February 2000 Settlement Agreement and Release ("Settlement Agreement"). Pl.'s Statement ¶ 42. Pursuant to the Settlement Agreement, Invensys has paid a total of $506,286.34 to One Wheeler Road Associates as of September 22, 2006. Id. Invensys has claimed their total loss as of September 22, 2006 to be $2,069,397.52.[2] Id. at 44.

---

[2] In Pl.'s Concise Statement, Invensys clarifies the amount of damages sought:

> In this action, Invensys seeks an award of unreimbursed indemnity costs incurred in the underlying [Wheeler Road Lawsuit]; but Invensys does not seek unreimbursed defense costs incurred in the [Wheeler Road Lawsuit]. The total amount of past indemnity costs sought by Invensys is $743,489.24.

> In addition, Invensys seeks an award of pre-judgment interest at the Massachusetts pre-judgment rate of 12%, accruing from the date of tender of this claim to Centennial, costs or, for costs incurred after the date of tender, the date when those costs became payable by Invensys. . . . Finally, Invensys seeks an order requiring payment of future remedial costs payable under the February

## II.   The Primary Insurance Policies

Liberty Mutual provided primary insurance coverage to Invensys (or its predecessors) in two different capacities over two periods of time.  First, Liberty Mutual issued primary insurance to Invensys (then Trans-Sonics) in a series of three one-year policies for the years 1972, 1973, and 1974 ("the Liberty Mutual primary property damage policies").  Pl.'s Statement ¶ 56.  Other than a schedule of insurance prepared in connection with the Trans-Sonics/Foxboro merger, no one has ever located the actual language of Trans-Sonics' primary coverage issued by Liberty Mutual during this three year time period.  Id. ¶ 57; Def.'s Statement ¶ 46.

During these three years, Liberty Mutual provided property damage with limits of $100,000 per occurrence.  Pl.'s Statement ¶ 58.  Invensys was unaware of the existence of this Liberty Mutual coverage until 1999, when it discovered the schedule of insurance prepared in connection with the 1974 merger.  Id. ¶ 61.

In addition, Liberty Mutual issued Invensys a "claims-made" Pollution Legal Liability policy (the "Liberty Mutual claims-made policy") that was in effect at all times from the date of the

_____

2000 agreement between Invensys and One Wheeler Road
Associates, as well as an award of attorney's fees and costs
incurred in this action and post-judgment interest at the
legal rate.

Pl.'s Concise Statement of Disputed Material Facts [Doc. No. 29]
¶ 20 (citations omitted).

1974 merger through the date upon which the Wheeler Road Lawsuit claim was received in 1990.  Pl.'s Statement ¶¶ 62-63.  There was no relevant coverage under this policy, however, because it contained a "retroactive date" that barred coverage for releases commencing prior to June 1982.  Id.

### III. The Excess Insurance Policy

Centennial issued to Invensys (then Trans-Sonics) a single three-year excess liability policy in effect for the period January 1, 1972 through January 1, 1975.  See Pl.'s Statement ¶ 45; Def.'s Statement ¶ 38.  The Centennial excess policy provided limits as to property damage liability in the amount of $5,000,000 per occurrence in excess of the underlying Liberty Mutual property damage policies, which had corresponding limits of $100,000.[3]  Pl.'s Statement ¶ 46; Def.'s Statement ¶ 39.[4] Centennial also provided umbrella coverage to Invensys (then

---

[3] As originally written, the underlying limits were $50,000 and the excess limits were $2,000,000.  See Pl.'s Statement ¶ 46.

[4] The Centennial excess policy defines "ultimate net loss" as:

> [T]he sum actually paid or payable in cash in the settlement or satisfaction of losses for which the insured is liable either by adjudication or compromise with the written consent of the company, after making proper deduction for all recoveries and salvages collectible, but excludes all loss expenses and legal expenses (including attorneys' fees, court costs and interest on any judgment or award) and all salaries of employees and office expenses of the insured, the company or any underlying insurer so incurred.

Pl.'s Statement, Ex. 4.

Trans-Sonics) during this time period, but because the Wheeler Road Lawsuit was covered by the Liberty Mutual primary property damage insurance policies, only the excess coverage (which obligates Centennial to pay the "ultimate net loss" incurred by the insured) was triggered thereby.  See Pl.'s Statement ¶¶ 47-50; Def.'s Statement ¶ 42.

Section E of the Centennial policy entitled "Insured's Duties in the Event of Occurrence, Claim or Suit" is relevant here.  Section E provides:

> (a) In the event of an occurrence, which appears reasonably likely to involve such insurance as is afforded by this policy, written notice containing particulars sufficient to identify the insured and also reasonably attainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.

> (b) If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

> (c) The insured shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of personal injury or property damage or advertising offense with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses.  The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense; however, in the event that the amount of ultimate net loss becomes certain

8

either through trial court judgment or agreement among
the insured, the claimant and the company, then, the
insured may pay the amount of ultimate net loss to the
claimant to effect settlement and, upon submission of
due proof thereof, the company shall indemnify the
insured for that part of such payment which is in
excess of the retained limit, or the company will, upon
request of the insured, make such payment to the
claimant on behalf of the insured.

Pl.'s Statement, Ex.4.

### IV. Settlement of the Primary Insurance Claim with Liberty Mutual

Invensys (then Foxboro) received notice of the Wheeler Road
Lawsuit on November 29, 1990; it tendered its defense to Liberty
Mutual on December 4, 1990 under the Liberty Mutual claims-made
policy, but not under the Liberty Mutual primary property damage
policies issued to Trans-Sonics, because Invensys was, at that
time, unaware of the existence of those policies.  Pl.'s
Statement ¶¶ 64, 65 & Ex. 6.  Liberty Mutual initially agreed to
defend Invensys in the Wheeler Road Lawsuit pursuant to a
reservation of rights, and acquired counsel.  Id. ¶ 66.  Liberty
Mutual subsequently denied coverage and withdrew its defense in
the Wheeler Road Lawsuit.  Id. ¶ 67.  Invensys, however,
continued to use the legal services of the firm initially
retained by Liberty Mutual.  Id.

In 1997, after the Wheeler Road Lawsuit resulted in judgment
against Invensys, Invensys commenced a declaratory judgment
action against Liberty Mutual to establish its duty to defend and
indemnify under the Liberty Mutual claims made policy.  See Pl.'s

9

Statement ¶ 68; Def.'s Statement ¶ 24.  <u>Id.</u>  In the course of
this litigation, Invensys discovered that Liberty Mutual had also
issued the Liberty Mutual primary property damage policies to
Trans-Sonics prior to the 1974 merger.  Pl.'s Statement ¶ 68.
Upon this discovery, Invensys notified Liberty Mutual that it was
seeking coverage pursuant to those policies as well.  <u>Id.</u>
Liberty Mutual argued that pollution exclusion would have barred
coverage for the Wheeler Road Lawsuit loss.  <u>Id.</u> ¶ 63.
Unfortunately for Liberty Mutual, however, it could not, after so
many years, locate the actual policies, so it had no direct
evidence that any of them contained a pollution exclusion
(particularly the 1972-1973 policy issued prior to the
introduction of the 1973 ISO standard from policy containing a
limited pollution exclusion).  <u>Id.</u> ¶ 59.  In **March** 2000, Invensys
entered into a "confidential settlement agreement" with Liberty
Mutual in which Liberty Mutual received a complete release from
liability at the Site in exchange for payment to Invensys of
$1,250,000 allocated as follows: (1) $300,000 for Invensys's
attorneys' fees incurred in defending the Wheeler Road Lawsuit,
and (2) $950,000 to indemnify Invensys for a portion of the
damages that it had paid and would become obligated to pay as a
result of the Wheeler Road Lawsuit.  <u>Id.</u> ¶ 69.

### V.   Notice to Centennial

10

On June 24, 1999, counsel for Invensys sent a letter to Centennial requesting that Centennial search for evidence of excess and umbrella coverage issued to Trans-Sonics in the 1960s and early 1970s. Pl.'s Statement ¶ 72 & Ex. 7. The letter stated that the documentation was needed in connection with a matter involving Foxboro "scheduled for trial on July 14, 1999 in Middlesex County Superior Court, Cambridge, MA." Id. Ex. 7. Furthermore, the letter stated that "[i]f a thorough search can be achieved, we may avoid the need for Centennial appearing at trial in this matter." Id. This is the first notice Centennial received of the coverage litigation with Liberty Mutual.

Several communications thereafter took place between the attorneys for Centennial and Invensys regarding the existence and nature of coverage issued by Centennial to Trans-Sonics during the relevant time period. See Pl.'s Statement ¶ 73. It was not until June 9, 2000, however, that Invensys forwarded to Centennial a copy of the complaint and final judgment in the Wheeler Road Lawsuit, as well as accompanying documentation. Id. & Ex. 10; Def.'s Statement ¶ 32. Invensys asserts that tender of a formal claim of coverage was issued to Centennial at this time and not earlier because "it was only after payment by Liberty Mutual that the excess coverage in the Centennial [policy] had been triggered by exhaustion of the limits of the underlying

primary policies in the 1972, 1973 and 1974 policy years." Pl.'s Statement ¶ 74.

Upon forwarding this material, Invensys demanded that Centennial agree to pay the difference between the amount of the settlement with Liberty Mutual and its claimed past and future costs arising out of the Wheeler Road Lawsuit. Def.'s Statement ¶ 34. Centennial issued a reservation of rights with respect to Invensys's claim on July 12, 2000, and after further investigation, denied coverage on July 12, 2001. Pl.'s Statement ¶ 76; Def.'s Statement ¶¶ 35-36. Invensys filed this suit against Centennial some four years later. Def.'s Statement ¶ 37; Notice of Removal ¶ 2.

## II. RULINGS OF LAW

In applying the law to the facts, the Court must resolve two significant disputes:

(1) Did Invensys breach the notice provisions of the Centennial excess insurance policy; and

(2) Did Invensys breach the voluntary payments provision of the Centennial excess insurance policy?

The Court addresses these questions in turn.

### A. The Notice Defense

The Court finds that Invensys breached the notice provisions of the Centennial policy. Both the time line of events and the language of the Centennial policy cited above -- sections (a)

and (b) thereof -- support this finding.  Even if the Court
accepts Invensys's assertion that notice of the Wheeler Road
Lawsuit was provided to Centennial in 1999, this was still some
fifteen years after the environmental damage was discovered,
eight years after the Wheeler Road Lawsuit commenced, three years
after the final judgment had entered in that case, and well after
settlement with Liberty Mutual.  Demonstrating a breach of the
notice provision, however, is not enough to insulate Centennial
from contractual liability for the underlying claim; it must show
more.

Under Massachusetts law, an insurance company cannot deny
coverage of a claim under a late notice defense "unless the
insurance company has been prejudiced thereby."  Mass. Gen. Laws
ch. 175, section 112.  The Supreme Judicial Court has held that
insurance companies seeking to deny a claim because of delayed
notice must demonstrate actual and specific prejudice.  See Darcy
v. The Hartford Insurance Co., 407 Mass. 481, 486-87 (1990).  An
insurance company can demonstrate actual prejudice, for example,
by proving a loss of critical evidence or by testimony from
material witnesses that despite diligent good faith efforts on
the part of the insurer to locate such evidence, it cannot be
found.  Id. at 486.

Invensys argues that Centennial's late notice defense is
without merit because Centennial has failed to demonstrate actual

harm to its interests as required by Massachusetts law. Specifically, Invensys asserts that Centennial has failed to show it is in a "substantially less favorable position than it would have been in had timely notice been provided." Darcy, 407 Mass. at 487. Centennial responds that delay in this case requires judgement in its favor as matter of law without a showing of actual prejudice. Def. Centennial Ins. Co.'s Mem. of Law in Supp. of Mot. for Summ. Judgment [Doc. No. 21] ("Def.'s Mem.") at 11-12.

In Darcy, however, the Supreme Judicial Court declined to adopt a rebuttable presumption of prejudice in favor of the insurer even where the delay in notice is "extreme." 407 Mass. at 485. The Supreme Judicial Court reasoned that such a rule would "constitute a retreat to a mode of interpretation of insurance policies which invites technical forfeitures, and would conflict sharply with the view, previously expressed by both the Legislature and this court, that forfeitures should occur only upon a showing of actual prejudice to an insurer's interests." Id. at 486.

Centennial attempts to distinguish Darcy on the ground that final judgment had not entered in that case against the insured upon the underlying claim as it has in this case against Invensys. During oral argument, counsel for Centennial argued strenuously that when final judgment has entered in the

14

underlying lawsuit, prejudice to the insurer should be presumed because to ask the insurance company to show actual prejudice thereafter would be well nigh impossible. Specifically, it asserted that any effort on the insurer's behalf to identify actual prejudice <u>post judgment</u> would necessarily almost always be general and speculative and would therefore never allow for an insurer's success. Tr. at 6:22-8:3.

The Massachusetts Appeals Court credited this distinction in <u>Lusalon</u> v. <u>The Hartford Accident and Indem. Co.</u>, 23 Mass. App. Ct. 903, 904 (1986). Centennial asserts that, under <u>Lusalon</u>, when final judgment has entered against the insured, prejudice is presumed as matter of law. <u>See</u> Def.'s Mem. at 11-12. The Massachusetts Appeals Court, however, relied on case law that the Supreme Judicial Court had expressly overruled in <u>Johnson Controls v. Bowes</u>, 381 Mass. 278, 280, 282 (1980).[5] In any

_____

[5] In <u>Lusalon</u>, the Massachusetts Appeals Court relied on <u>Spooner</u> v. <u>General Accident Fire & Life Assurance Corp.</u>, 379 Mass. 377 (1979). <u>Spooner</u> was decided in 1979, after the Massachusetts Legislature amended section 112 in 1977 to require prejudice to the insurer. Because the underlying dispute concerned facts occurring prior to the amendment and section 112 has only prospective application, the Supreme Judicial Court did not have occasion to apply the statute. Rather, the court considered whether to abolish the common law rule requiring timely notice. The court declined to modify the rule on a retroactive basis, <u>Spooner</u>, 379 Mass. at 378-80, and it was not until <u>Johnson Controls</u>, 381 Mass. at 280, 282, that the court found a more "appropriate vehicle" for reconsidering the common law rule. Although <u>Johnson Controls</u> purported to modify the common law in cases when section 112 did not apply, the Supreme Judicial Court has since relied on <u>Johnson Controls</u> in interpreting section 112. <u>See</u> <u>Darcy</u>, 407 Mass. at 486.

15

event, when Lusalon reached the Supreme Judicial Court, that
court ruled in the insurer's favor on wholly different grounds,
declining even to address the issue of notice.  Lusalon v.
Hartford Accident & Indem. Co., 400 Mass. 767, 773, n.9 (1987).

Moreover, post-Lusalon Massachusetts case law addressing the
notice defense reaffirms the insurer's burden of proving actual
prejudice before it may be relieved of liability.  Sarnafil, Inc.
v. Peerless Ins. Co., 418 Mass. 295, 305 (1994); Darcy, 407 Mass
at 485 (1990); Employers' Liability Assur. Corp., Ltd. v. Hoechst
Celanese Corp., 43 Mass. App. Ct. 465, 476 (1997); see also
Liberty Mutual Ins. Co. v. Black and Decker, 2003 U.S. Dist.
LEXIS 25397, Civ. A. No. 96-10804-DPW, at *85-87 (D. Mass. Dec.
5, 2003) (Woodlock, J.); New England Extrusion, Inc. v. American
Alliance Ins. Co., 874 F.Supp. 467, 470 (D. Mass. 1995) (Ponsor,
J.); Fireman's Fund Ins. Co. v. Valley Manufactured Prods. Co.,

---

Notably, the Centennial excess policy provided coverage for
a period prior to the 1977 amendment of section 112.  Centennial
did not, however, argue that the amendment should not apply
because it did not work a retroactive change in either the
statute or the common law.  Spooner is potentially
distinguishable on the ground that whereas the insurer in that
case received late notice in 1975, before the 1977 amendment,
Invensys presumably did not know about the environmental
contamination until well after 1977.  See Liberty Mut. Ins. Co.
v. Gibbs, 773 F.2d 15, 18 (1985) (stating that "the controlling
date is when the reinsured became obligated to give notice");
Fireman's Fund Ins. Co. v. Valley Manufactured Prods. Co., 765 F.
Supp. 1121, 1124 (D. Mass. 1991) (Harrington, J.) (looking to
date when insured could have given notice and not the date the
insurance policy was executed).  In any event, as Centennial did
not raise this argument, this Court considers it waived.

765 F. Supp. 1121, 1124 (D. Mass. 1991) (Harrington, J.).   In
addition, courts post-<u>Lusalon</u> have specifically refused to adopt
rebuttable presumptions in favor of insurance companies under a
notice defense.   <u>See, e.g.</u>, <u>Employers' Liability Assur. Co.</u>, 43
Mass. App. Ct. at 476 (rejecting "general propositions or
presumptions" on appeal when the insurer has "scanted below in
presenting the basic grass roots evidence of the effects upon
them of delayed notice").

Although this Court recognizes the distinction drawn by
Centennial, it must decline to adopt, as Centennial suggests, a
rebuttable presumption of prejudice when final judgement has
entered.   The adoption of such a presumption would conflict
sharply with Massachusetts law, expressed both through the
legislature and the courts.   <u>See</u> Mass. Gen. Laws ch. 175, § 112;
<u>Darcy</u>, 407 Mass. 481; <u>Johnson Controls</u>, 381 Mass. 278.

This Court finds that Centennial has failed to meet its
burden of showing actual prejudice.   Centennial has argued that
it has been so prejudiced by the time line of events in this case
(particularly the fact that it did not receive notice until after
final judgment in the underlying matter had entered), it ought be
relieved of liability as matter of law.   In fact, however, no
prejudice to the insurer has been demonstrated.

Even though final judgment in the underlying matter had
entered, as an excess insurer with no duty to defend, Centennial

is not prejudiced by the final judgment as might a primary insurer. See Employers' Liability Assur. Co., 43 Mass. App. Ct. at 478-479 ("To create a presumption in favor of excess insurers would be quite anomalous [because they] are not as likely as primary carriers to suffer harm from late notice because they are at a remove from the investigation and handling of claims: ordinarily, they are not bound to do this work and they have no duty to defend the insured.").

Based on the record before the Court, Centennial has shown no actual prejudice as a result of Invensys's delay in notifying it of the underlying matter. General assertions or speculations are not enough to make out such a defense and Centennial has provided nothing more to the Court. Therefore, the Court must reject Centennial's defense under the theory of late notice.

**B.    The Voluntary Payments Defense**

Alternatively, Centennial defends its denial of the Invensys claim under the voluntary payments language in the excess insurance contract. After review of the specific language of the Centennial policy and the Massachusetts statutory law governing this matter, this Court finds that there was no "voluntary" payment made by Invensys in the underlying Wheeler Road Lawsuit and therefore rejects this theory of defense as well.

Under the terms of the Centennial policy, coverage is provided for "the ultimate net loss in excess of the retained

18

limit . . ., which the insured shall become legally obligated to pay as damages by reason of the liability imposed upon the insured by law . . . ." Pl.'s Statement, Ex. 4. Centennial argues that in entering into a settlement agreement with One Wheeler Road Associates regarding how payment of the remediation costs at the Site would be structured, Invensys entered into a voluntary agreement and subsequently made voluntary payment. Def.'s Mem. at 16. Specifically, Centennial asserts that as "the Final Judgment [in the Wheeler Road Lawsuit] did not specify the exact amount that would ultimately be owed and left it up to the parties to negotiate a resolution," that agreement was voluntary. Id.

The Court does not agree.

The exact amount owed for remediation efforts was not specified in the final judgment because to specify such a figure would be nearly impossible. Remediation efforts are ongoing and unpredictable. See Employers' Liability Assur. Corp., 43 Mass. App. Ct. at 475 ("[T]he nature and causes of environmental threats may not be instantly apparent. The contemplated costs of cleanup may vary as findings are progressively made and technical analysis proceeds. The unexpected regularly obtrudes. The attitudes and requirements of regulatory agencies are not constant and the changes and variations must affect the estimates."); Liberty Mutual Ins. Co., 2003 U.S. Dist. LEXIS

19

25397, at *86-87 (quoting <u>Employers' Liability Assur. Corp.</u>).
The settlement agreement Invensys reached with the One Wheeler
Road Associates was in furtherance of a specific and final
judgment of the United States District Court and therefore will
not be considered "voluntary" by this session of the Court.  It
is not the judgment alone that renders the payment by Invensys
involuntary, it is the unequivocal order of Judge Stearns.  The
Court need go no further assessing this argument.  It necessarily
must fail.

## III. CONCLUSION

Centennial must indemnify Invensys for its ultimate net loss, including unreimbursed indemnity costs arising from the Wheeler Road Lawsuit as well as future remediation costs, but not the interest on the underlying judgment, all pursuant to the terms of the policy.  Invensys, however, is not entitled to reimbursement for attorneys' fees incurred in bringing this action against Centennial.  See John Hancock Mut. Life Ins. Co. v. Banerji, 447 Mass. 875, 888-89 (2006) ("[E]ach party to litigation in an insurance coverage dispute is responsible for his own attorney's fees and costs."); Wilkinson v. Citation Ins. Co., 447 Mass. 663, 669, 672-73 (2006) (limiting the insurer exception to the American Rule to duty to defend litigation).[6]

SO ORDERED.

/s/ William G. Young

_____
WILLIAM G. YOUNG
DISTRICT JUDGE

---

[6] Invensys moved for summary judgment on Counts II and IV; it was not until the hearing on the motion that the parties consented to have the matter heard as a case stated.  Tr. at 2:16-3:6.  The Court assumes that Invensys has waived Counts I and III, which allege that Centennial breached its duty to defend in the Wheeler Road Lawsuit.