UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
INVENSYS SYSTEMS, INC.,            )
        Plaintiff,                 )
                                   )
v.                                 )   Civ. No. 1:05-CV-11589-WGY
                                   )
CENTENNIAL INSURANCE COMPANY,      )
        Defendant.                 )
                                   )   **REQUEST FOR HEARING**
_____)

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S CONSOLIDATED MOTIONS TO
MAKE ADDITIONAL FINDINGSAND/OR TO ALTER OR AMEND JUDGMENT**

On January 18, 2007, the Court entered judgment for Plaintiff Invensys Systems on Count II (Breach of Contract-Duty to Indemnify) and Count IV (Declaratory Relief), ruling as follows:

> Centennial must indemnify Invensys for its ultimate net loss, including unreimbursed costs arising from the Wheeler Road lawsuit as well as future remediation costs, but not the interest on the underlying judgment, all pursuant to the terms of the policy.

See Judgment (January 18, 2007). Invensys respectfully requests the Court to alter or amend its judgment, or enter additional findings, on two issues.

**Request 1:** First, Invensys requests the Court to amend the judgment to enter a dollar amount of damages (Invensys believes the amount should be $734,489.24, as discussed herein). This request is necessitated by the fact that the Court ordered Centennial to indemnify "unreimbursed costs arising from the Wheeler Road lawsuit," but did not state the specific dollar amount of contract damages owed by Centennial. As established by the undisputed evidence, see Pl. Sep. Stmt., Fact Nos. 42-44, 82-84, the proper amount of damages to enter is $734,489.24 (which is the difference between (a) the total costs incurred to date by Invensys and (b) the indemnity payment by Liberty Mutual in the amount of $950,000). As discussed below, any

1

deduction for "interest on the underlying judgment" is unnecessary and improper, based on the facts of the case and the relevant policy language.

**Request 2:** In addition, after the Court has stated a dollar amount of damages, Invensys requests the Court to award prejudgment interest on these damages. Such interest is available as a matter of right, at the statutory rate of 12% on contract damages, pursuant to Mass. Gen. L. c. 231, § 6C. Such interest has been consistently requested by Invensys, including in its Complaint, its Motion for Summary Judgment, and its supporting memorandum. In addition, the factual materials provided by Invensys provide a detailed and explicit basis on which to calculate prejudgment interest on every component of Invensys's damages. See Franciose Aff., Exh. 34 at ¶¶ 15-17; Pl. Sep. Stmt., ¶ 84; Pl. Concise Statement of Disputed Material Facts, ¶ 20.

I.  **INVENSYS REQUESTS THE COURT TO SPECIFICY THE DAMAGES OWED BY CENTENNIAL FOR BREACH OF THE DUTY TO INDEMNIFY (COUNT II)**

The Court has held that "Centennial must indemnify Invensys for its ultimate net loss, including unreimbursed costs arising from the Wheeler Road lawsuit … but not the interest on the underlying judgment." See Judgment (January 18, 2007). The Court's judgment, however, does not specify the dollar value of those damages. By this motion, Invensys first requests the Court to amend the judgment to specify a precise amount of damages currently owed by Centennial.

This should not be a complicated task, as the evidence before the Court establishes that, after giving 100% credit to Liberty Mutual's $950,000 payment for indemnity costs, Invensys is entitled to an additional $743,489.24. See Pl. Sep. Stmt., Fact Nos. 42-44, 82-84; Franciose Aff., Pl. Exh. 34 at ¶¶ 15-17; Pl. Response to Dfdt. Sep. Stmt., Fact No. 20. As set forth in the evidence, Invensys has incurred $1,693,489.24 in damages resulting from the Wheeler Road

lawsuit, of which $950,000 has been reimbursed by Liberty Mutual. This leaves $743,489.24 to be paid by Centennial.

The only complication in stating the precise damages is that Centennial's policy excludes "interest on judgments and awards" from the calculation of "ultimate net loss." The underlying judgment that was paid by Invensys included $217,082.79 in prejudgment interest (see Pl. Exh. 2) and an additional $42,880.11 in postjudgment interest that accrued prior to Invensys's satisfaction of the judgment.[1] Thus, the total amount of interest in question is $259,962.90. The question to be resolved: Whether Centennial is entitled to credit any part of this interest against the amount that it owes, and if so, how much? In other words, the Court must decide whether to award the full $743,489.24; or whether, instead, to award some lower amount.

There are three possible courses the Court might take. The possibilities are:

1. Award the full amount of damages, with no deduction for interest costs; or
2. Award a *pro rata* amount of damages, with a partial deduction of interest on the underlying judgment; or
3. Deduct 100% of the interest on the underlying judgment.

For the reasons set forth below, Invensys believes that only the first of these three courses -- no deduction on account of interest -- is proper under Massachusetts law, particularly based on the language of the Centennial policy as well as the specific facts of this case.

---

1    The post-judgment interest is determined by calculating the difference between Judge Stearns's judgment amount of $1,144,322.79 and the sum of $1,187,202.90 that Invensys paid to satisfy the judgment. See Pl. Exh. 25.

### Approach 1:   Centennial Gets No Credit, Based on Principles of Joint and Several Liability

Invensys believes that the only approach that is consistent with joint and several liability, as well as the language of the Centennial policy and the facts of this case, is for Centennial to pay the entire ultimate net loss of $743,489.24, without any reduction for amounts paid by Invensys as interest on the underlying judgment. This approach is proper, as Liberty Mutual's indemnity payment ($950,000) far exceeds the interest on the underlying judgment ($259,962.90).

Under Massachusetts law, policyholders have wide latitude to maximize their coverage by selecting which items of damage shall be payable by which insurers.  This latitude is implicit not only in the Massachusetts rule that insurers are jointly and severally liable for losses, see, e.g., Rubenstein v. Royal Ins. Co. of America, 44 Mass. App. Ct. 842, 852, 694 N.E.2d 381, 388 (1998) (adopting rule that "each policy provides indemnity for the insured's entire liability, and each insurer is jointly and severally liable for the entire claim"), aff'd on other grounds, 429 Mass. 355 (1999), but also in common sense.  Suppose that a policyholder received coverage from two insurers, Insurer A and Insurer B, and that both insurers are jointly and severally liable with respect to any damages covered by their respective policies.  If Insurer A's policy covers some items that are not covered in Insurer B's policies, then it is both rational and foreseeable for the policyholder to ask Insurer A to pay for those items covered under its policy but not under Insurer B's policy; and vice versa.  This is fair, provided (i) the policyholder does not obtain a double recovery and (ii) no insurer is required to pay for items that its policy does not

cover.[2]

Thus, it is reasonable and appropriate for Invensys to designate which items of underlying loss shall be covered by the primary insurer's payment, and then to seek indemnity from the excess insurer for any unpaid items that fall within the excess policy's coverage. Exercising this approach, it is appropriate for Invensys to allocate Liberty Mutual's $950,000 indemnity payment to include payment of the entirety of the interest component of the underlying judgment ($259,962.90), thus leaving no amount of interest to be paid by Centennial.[3]

Such an approach -- allowing the policyholder to allocate insurer payments in a manner that maximizes its recovery -- is consonant with the language of the Centennial policy. Although the policy defines "ultimate net loss" to exclude "legal expense (including … interest on any judgment or award)," see Pl. Exh. 4 at 3, the very next sentence of the policy expressly acknowledges that underlying primary policies might provide coverage for such "legal expense." If Centennial had intended that the policyholder could not allocate primary insurer payments to such covered "legal expenses" for purposes of maximizing recovery, then it could have inserted

---

2       "Joint and several" liability applies with full force to Centennial as an excess insurer. See, e.g., Boston Gas Co. v. Century Indem. Co., 2006 U.S. Dist. LEXIS 41133, *5-6 (D. Mass. June 21, 2006) (Zobel, J.) (applying joint and several liability to excess insurers); Massachusetts Elec. Co. v. Commercial Union Ins. Co., 20 Mass. L. Rep. 193, 2005 Mass. Super. LEXIS 548, *5-6 (Oct. 25, 2005) (joint and several liability to excess policies).

3       In its opposition to Invensys's motion for summary judgment (and, in particular, in opposition to the sections of Invensys's Separate Statement relating to damages), Centennial did not contest the amount of the damages incurred by Invensys, nor did it dispute that the damages sought by Invensys were properly recoverable pursuant to the underlying Liberty Mutual policies. While Centennial asserted that it was not bound by the settling parties' allocation of Liberty Mutual's $1,250,000 settlement between defense costs ($300,000) and indemnity costs ($950,000), Centennial did not contend that the settling parties' allocation was unreasonable or collusive. (Indeed, as the Court will quickly ascertain, the allocation of the Liberty Mutual settlement was straightforward and non-controversial: $300,000 was allocated to defense costs, which works out to 80% of the total defense costs incurred by Invensys ($375,000); and $950,000 was allocated to indemnity, which similarly works out to 80% of the amount paid by Invensys in satisfaction of Judge Stearns's judgment ($1,187,202.90).)

explicit policy language to accomplish that purpose. However, nothing in the policy remotely supports such a result.

To the contrary, Condition K of the Centennial policy states, very plainly, that "[i]f underlying insurance is exhausted by the payment of any occurrence, the company shall be obligated to assume charge of the settlement or defense of such suit …." See Pl. Exh. 4 at 4 (Condition K).[4] This language supports the conclusion that once the primary insurer has made payments for items covered under its primary policy that are sufficient to exhaust underlying limits, Centennial must then step in and pay any remaining costs that are covered under the Centennial policy. Again, if Centennial wanted to refine Condition K to state that a policyholder could not allocate underlying primary payments to items of damage not covered by the Centennial policy, then it should have said so -- but it did not.

Thus, under the plain terms of the Centennial policy as well as the application of the Massachusetts rule of "joint and several liability," the proper approach is to give no credit to an excess insurer for items covered by the primary policy but not the umbrella policy, where the dollar value of such items is below the amount actually paid by the primary insurer.[5]

In the event the Court adopts this first approach (which Invensys believes appropriate under the law and the policy language), then the total amount of damages to be entered in the judgment is $743,489.24. This is the amount established by the evidence in the case, and

---

4  Similarly, the definition of "ultimate net loss" in the Centennial Policy mandates that the "ultimate net loss" is determined after "proper deduction of recoveries." See Pl. Exh. 4 at 3. However, the Policy nowhere explains what "proper deduction" means, creating an ambiguity that must be resolved in the insured's favor.

5  Invensys concedes that if the total amount of interest had exceeded the amount paid by Liberty Mutual, then Centennial would not be required to pay the excess portion of such interest. Thus, if the total interest (hypothetically) had been $1,000,000, then Liberty Mutual's $950,000 payment would not have covered this amount, and Centennial would receive a $50,000 credit against the ultimate net loss. However, that is not the case under the facts of this case.

Centennial offered no alternative damages calculation or argument to counter this evidence.

### Approach 2: Centennial Gets *Pro Rata* Credit for a Percentage of the Interest Paid by Liberty Mutual

A second possible approach is to give Centennial a *pro rata* credit for some of the interest paid by Liberty Mutual, by allocating Liberty Mutual's $950,000 indemnity payment evenly to each component of damages contained in the underlying judgment. In other words, since Liberty Mutual's indemnity payment of $950,000 was equal to 80% of the amount paid by Invensys to satisfy the judgment ($1,187,202.90), see note 1 *supra*, then Liberty Mutual also would be deemed to have paid 80% of each component of the judgment. This would result in the following calculation:

**Amount of Interest Paid by Liberty Mutual:** 80% X $259,962.90 = $207,970.32

**Amount of Interest Not Paid by Liberty Mutual:** 20% X $259,962.90 = $51,992.58

In other words, if the Court applied a *pro rata* approach, then it would deduct $51,992.58 from the ultimate net loss, for an adjusted damages amount of $691,496.66 (i.e., $743,489.24, minus the *pro rata* interest credit of $51,992.58).

While a *pro rata* approach might have some superficial "equitable" appeal, Invensys emphasizes that such an approach would be inconsistent with the principles of joint and several liability that permit the policyholder to maximize its insurance coverage (without, of course, obtaining a double recovery). See Rubenstein, supra (rejecting *pro rata* allocation between insurers). Just as importantly, there is no language in the Centennial policy to support such a *pro*

*rata* approach.  Finally, at no point in any of its papers did Centennial seek *pro rata* allocation.

### Approach 3:   Centennial Gets 100% Credit for All Interest Amounts

The final possible approach would be to deduct 100% of the interest on the underlying judgment from the damages amount established by Invensys.  This approach would result in a net damages amount of $483,526.34 (i.e., $743,489.24, minus the interest amount of $359,962.90).

Invensys respectfully suggests that a 100% credit should be rejected for three reasons.  First, it would be contrary to the principles of joint and several liability that govern insurer obligations under Massachusetts law. See Rubenstein, *supra*; Boston Gas Co., supra; Massachusetts Elec. Co., *supra*.

Second, as discussed above, there is nothing in the Centennial policy to support such a windfall to Centennial.  This third approach would allow Centennial to arrogate to itself the right to allocate payments by a primary insurer in a manner that *minimized* the policyholder's recovery.  The creation of such unwritten insurer rights is inconsistent with every rule of insurance policy construction; and it cannot be reconciled with Massachusetts's rule of joint and several liability.

Finally, this approach would require the Court to enter a damages finding that was never requested by Centennial, and thus has been waived.  If Centennial disagreed with Invensys's calculation of damages, then it was incumbent on Centennial to present evidence and reasoned argument in support of the position prior to submission of the matter as a case stated.

\* \* \* \* \*

In sum, Invensys respectfully requests the Court to alter or amend the judgment to specify a damages award.  Invensys further requests the Court to enter the damages award in the amount of $743,489.24.

## II.     INVENSYS REQUESTS THE COURT TO ALTER OR AMEND THE JUDGMENT TO INCORPORATE PREJUDGMENT INTEREST

Invensys further requests the Court to enter additional findings and to alter or amend the judgment to calculate prejudgment interest on damages at the Massachusetts rate of 12%, see Mass. Gen. L. c. 231, § 6C, and to incorporate a dollar amount of interest into the judgment.

In federal diversity actions, state law governs prejudgment interest. See Commercial Union Ins. Co. v. Walbrook Ins. Co., 41 F.3d 764, 774 (1st Cir. 1994).  Under Mass. Gen. L. c. 231, § 6C, prejudgment interest at 12% is mandatory in private breach-of-contract cases. See, e.g., Bushkin Assoc. v. Raytheon, 906 F.2d 11, 17 (1st Cir. 1990); Saint-Gobain Indus. Ceramics Inc. v. Wellons, Inc., 98 F. Supp. 2d 117 (D. Mass. 2000) ("The award of pre-judgment interest to a successful party in a contract action is required under M.G.L. c. 231, § 6C."); O'Malley v. O'Malley, 419 Mass. 377, 381, 645 N.E.2d 684, 686 (1995) ("Section 6C of G.L. c. 231, concerning prejudgment interest in contact actions, commands a ministerial act.").

This rule applies with full force in insurance coverage disputes. See, e.g., Dash v. Chicago Ins. Co., 2004 U.S. Dist. LEXIS 17309 *40, *49-50 (D. Mass. Aug. 23, 2004) ("[J]ust as Dash is entitled to prejudgment interest for defense costs, he can recover prejudgment interest on the indemnity amount running from the time of payment of the settlement with Intertek.").[6]

---

6       By contrast, if, ***prior to entry of judgment,*** Centennial had paid the indemnity amounts that are owed under the policy, then interest would be available at the federal prejudgment interest rate, rather than pursuant to Mass.

This matter provides a straightforward case for the calculation and award of prejudgment interest. Invensys has submitted a detailed and specific request for interest, both in its opening Separate Statement (see Pl. Fact Nos. 42-44, 82-84) and in its response to Centennial's Separate Statement. See Pl. Concise Statement of Disputed Material Facts, Fact No. 20. In particular, Invensys seeks an award of prejudgment interest on the following items of damages:

> Interest to be calculated from June 9, 2000 (date of tender to Centennial)
> 1. Balance of Satisfaction of Judgment on 10/8/96, after giving full credit to Liberty Mutual's indemnity payment ($1,187,202.90, minus $950,000) -- $237,202.90 (interest to be calculated from June 9, 2000)
> 2. Remediation costs through 2/99, paid pursuant to February 2000 agreement) -- $235,123.81 (interest to be calculated from June 9, 2000)
> 3. Remediation costs through 2/00, also paid pursuant to February 2000 agreement - $102,762.59 (interest to be calculated from June 9, 2000)
>
> Interest to be calculated from later dates, for subsequent remedial items paid by Invensys
> 1. Payment for additional remedial items through March 15, 2000 - $41,822.88 (interest to run from April 14, 2000)
> 2. Payment for additional remedial items through October 14, 2000 - $14,131.86 (interest to run from November 13, 2000)
> 3. Payment for additional remedial items through May 31, 2001 - $20,952.02 (interest to run from June 30, 2001)
> 4. Payment for additional remedial items through May 31, 2002 - $20,050.55 (interest to run from June 30, 2002)
> 5. Payment for additional remedial items through February 28, 2003 - $25,515.72 (interest to run from March 30, 2003)
> 6. Payment for additional remedial items through April 30, 2004 - $15,567.74 (interest to run from May 30, 2004)
> 7. Payment for additional remedial items through August 31, 2005 - $19,578.79 (interest to run from September 30, 2005)
> 8. Payment for additional remedial items through March 31, 2006 - $14,131.86 (interest to run from April 30, 2006)

* * * * *

---

Gen. L. c. 231, § 6C. As set forth by Judge Woodlock in Liberty Mutual Ins. Co. v. Black & Decker Corp., 2004 U.S. Dist. LEXIS 17367 (D. Mass. Aug. 25, 2004), "The right to prejudgment interest attaches only 'upon a verdict, finding or order for judgment for pecuniary damages.' *Mass. Gen. L. c. 231, § 6C.*" Id. at *12. But that is not the case here, because a "verdict, finding or order for judgment" entered on January 18, 2007, thus triggering Invensys's

Invensys anticipates that Centennial will argue that interest should not be awarded in this case, or should be awarded in a reduced amount. While Invensys is not certain of the grounds that will be cited by Centennial, Invensys wants to briefly note the following.

First, this is *not* a case in which the damages award already incorporates a time-value-of-money element. The Massachusetts Supreme Judicial Court, while recognizing the mandatory nature of the Section 6C's language, has recognized a limited exception where an award of interest would amount to a double recovery. See Sterilite Corp. v. Continental Cas. Co., 397 Mass. 837, 841-42, 494 N.E.2d 1008, 1011 (1986). Two common examples of such potential double recoveries are where (i) the damages award is made on a "present value" basis, and (ii) where the damages award includes late fees or other elements of damages that contemplate for the defendant's failure to make timely payment. See, e.g., Interstate Brands Corp. v. Lily Transportation Corp., 256 F. Supp. 2d 58, 62-63 (D. Mass. 2003) (declining to add statutory interest on top of a jury verdict awarding "present value" damages, in order to prevent "a double recovery windfall"); Spiritual Trees v. Lamson and Goodnow Mg. Co., 424 F. Supp. 2d 298, 301 (D. Mass. 2006) (declining to impose interest where verdict included "late fees" that fully compensated plaintiff for the time value of the money damages incurred as a result of the breach). However, these cases are inapplicable to the facts of this case, because the damages sought by Invensys constitute the nominal amounts actually paid by Invensys, without adjustment to account for the time value of money or the loss of use of money.

Nor does this case raise the concerns identified in Sterilite, *supra*, or RLI Ins. Co. v.

---

right to prejudgment interest at the Massachusetts statutory rate.

Wood Recycling, Inc. 2006 U.S. Dist. LEXIS 70926 (D. Mass. Sept. 29, 2006), in which the policyholder sought interest dating to the date of notice, rather than the later date when it made defense and indemnity payments.  In those cases, the courts held that interest should be calculated from the later of the date of notice or the date when the policyholder actually paid the cost, notwithstanding the explicit language of the statute.

As the Court will ascertain from the request made by Invensys, see Pl. Fact Nos. 82-84, and Pl. Concise Statement of Disputed Material Facts, Fact No. 20, interest is being sought only from the *later* of (i) the date in June 2000 when either notice was given (thus triggering the duty to indemnify already-incurred costs) or (ii) for costs after notice was given to Centennial, the date when Invensys actually incurred such costs.  Thus, Invensys's request complies fully with the approach set forth in Sterilite and followed by Judge Woodlock in RLI Ins. Co.[7]

Finally, Invensys would note that there is no cause to reduce any award of interest based on the Court's finding that Invensys breached the "late notice" condition.  The issue of "late notice" is a red herring on the issue of prejudgment interest, because Invensys does not seek interest for any period of time preceding the date that it provided notice to Centennial.  In other words, Invensys seeks prejudgment interest only from the later of either (i) the date that

---

[7]    Invensys notes that this Court recently stated in *dicta* that "the award of prejudgment interest lies in the discretion of the court." Tiverton Power Assocs. LP v. Shaw Group, Inc., 376 F. Supp. 2d 21, 25 (D. Mass. 2005) (holding that Delaware law, not Massachusetts law, governs interest award in private contract dispute).  Invensys respectfully suggests that this statement does not accurately reflect Massachusetts law.  In stating that the award of pre-judgment interest in a private contract action was discretionary under Massachusetts law, this Court cited only one case, McDonough v. City of Quincy, 353 F. Supp. 25 179, 190-91 (D. Mass. 2005). However, McDonough did not involve a private contract dispute, but rather a case against the City of Quincy, in which the Court found as a matter of state law that pre-judgment interest against the Commonwealth and its instrumentalities was barred by sovereign immunity absent a specific statutory grant, but that it would be available under federal law as a matter of judicial discretion pursuant to Title VII of the Federal Civil Rights Act. See id.  Invensys respectfully suggests that notwithstanding the Court's statement in *dicta* in Tiverton, an award of interest in private contract cases is mandatory (not discretionary) under Massachusetts law.

Centennial received notice or (ii) the date that a particular indemnity cost was incurred.

* * * * * *

Accordingly, Invensys requests the Court to alter or amend the judgment to incorporate an award of prejudgment interest at the Massachusetts statutory rate of 12%.

## CONCLUSION

Invensys respectfully requests an order pursuant to Rules 52(b) and/or 59(e) to enter additional findings and/or to alter or amend the judgment to enter a specified amount of damages and, further, to award prejudgment interest at the Massachusetts statutory rate of 12%.

Respectfully submitted,
PLAINTIFF INVENSYS SYSTEMS, INC.,
By its attorneys,

_____/s Robert J. Gilbert/_____
Robert J. Gilbert, Esq. (BBO # 565466)
GILBERT & RENTON LLC
344 North Main Street
Andover MA 01810
Tel (978) 475-7580
Fax (978) 475-1881

Dated: February 1, 2007

## CERTIFICATE OF SERVICE

I, Robert J. Gilbert, hereby certify that on February 1, 2007, a true and correct copy of the foregoing document was served electronically upon John T. Harding, Esq., counsel of record for Defendant Centennial Insurance Company.

_____/s Robert J. Gilbert/_____
Robert J. Gilbert