UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INVENSYS SYSTEMS, INC., )<br>)<br>Invensys,  )<br>)<br>v.  )<br>)<br>CENTENNIAL INSURANCE COMPANY, )<br>)<br>Defendant.  )<br>) | CIVIL ACTION<br>NO. 1:05-CV-11589-WGY |

**DEFENDANT CENTENNIAL INSURANCE COMPANY'S
MEMORANDUM IN OPPOSITION TO INVENSYS' MOTIONS TO
MAKE ADDITIONAL FINDINGS AND/OR TO ALTER OR AMEND JUDGMENT**

Defendant Centennial Insurance Company ("Centennial") opposes the Consolidated Motions to Make Additional Findings and/or to Alter or Amend Judgment" dated February 1, 2007 [Document Nos. 37, 38]("Invensys' Motions") filed by Invensys Systems, Inc. ("Invensys").[1] Invensys' Motions amount to an entirely unwarranted request that the Court award Invensys a "profit" in the form of hundreds of thousands of dollars of pre-judgment interest for its failure to have notified Centennial of this claim until ten years after the underlying action commenced against Invensys had been filed; four years after the case had proceeded to final judgment; only after the judgment had been paid and Invensys had entered into an agreement committing it to the payment of significant future costs; after Invensys had entered into a settlement agreement with its primary insurer, Liberty Mutual Insurance Company ("Liberty Mutual"), in which it compromised millions of dollars of available coverage for a

---

[1] For ease of reference, "Invensys" shall refer to Centennial's policyholder, Trans-Sonics, Inc. and its successor, The Foxboro Company, as well as to Invensys.

1047498v1

much lesser amount; and where Invensys did not commence the instant declaratory judgment action until four years after coverage for the claim was denied by Centennial.

Although the Court determined that these facts did not amount to the requisite showing of prejudice that would relieve Centennial of its contractual obligation to indemnify Invensys [Memorandum and Order entered on January 17, 2007 at 12-18 ("Mem. and Order"), Document No. 34], the Court elected *not* to award Invensys interest on any amounts that Centennial may be required to pay in connection with this claim. [Mem. and Order at 21; Judgment entered on January 18, 2007 ("Judgment"), Document No. 35]. The Court was well within its discretion not to award Invensys a "profit" in the form of interest at the rate of 12% for the years of delay involved in this matter and where the policy issued by Centennial excludes coverage for interest on judgments. The Court was aware of Invensys' request for interest and made no such award. The Court did not err. Invensys' Motions should be denied and the Judgment as issued should stand.[2]

## ARGUMENT

### I. INVENSYS HAS FAILED TO DEMONSTRATE THAT THE JUDGMENT SHOULD BE ALTERED OR AMENDED

Invensys' Motions never address the relevant legal standard for a motion to alter or amend a judgment or for the entry of supplemental findings under Fed.R.Civ.P. 52 and 59(e). While these rules allow a party to move to alter or amend a judgment, the District Court has

---

[2] In order to avoid any confusion in the record in the event that this case is appealed to the First Circuit Court of Appeals, Centennial does not object to Invensys' Motions insofar as Invensys requests that the Court set forth in its Judgment the dollar amount that Centennial owes Invensys as of this time based upon its rulings. Centennial does contest the amount claimed by Invensys as it is not consistent with the Court's rulings, the terms of the Centennial policy, and applicable law. Based upon the Court's rulings, and as set forth below, Centennial contends that the correct amount should be $187,068.82. To the extent necessary, Centennial cross moves that the Judgment be corrected or modified to reflect the amounts due as of the time of Judgment. *See* Fed.R.Civ.P. 52, 59 and 60.

1047498v1

considerable discretion in deciding whether to grant or deny such a motion. *Venegas-Hernandez v. Sonulux Records,* 370 F.3d 183, 190 (1st Cir. 2004); *Storie v. Household International, Inc.,* No. 03-40262-FDS, 2005 U.S. Dist. LEXIS 40292, *1, 11 (D. Mass. Sept. 22, 2005); *Kalman v. Berlyn Corp.,* 706 F.Supp. 970, 975 (D. Mass. 1989). It has been recognized that such motions should only be granted in limited circumstances. *Linton v. N.Y. Life Ins. & Annuity Corp.,* No. 04-11362-RWZ, 2006 U.S. Dist. LEXIS 77368, *1, 2 (D. Mass. Oct. 25, 2006).

A motion to alter or amend a judgment under Fed.R.Civ.P. 59(e) may be granted only if the moving party "presents (1) new evidence not previously available; (2) an intervening change in controlling law; or (3) the need to correct a clear error of law or to prevent manifest injustice." *Storie,* 2005 U.S. Dist. LEXIS at *11; *see also FDIC v. World Univ., Inc.,* 978 F.2d 10, 16 (1st Cir. 1992). In order to prevail upon such a motion, the moving party is required to demonstrate "some substantial reason that the court is in error." *Kalman,* 706 F.Supp. at 974. Unless the party seeking an amendment of a judgment claims that there is newly discovered evidence (which is not the case here), the District Court is only required to amend its findings of fact based upon the evidence contained in the record. *Aybar v. Crispin-Reyes,* 118 F.3d 10, 16 (1st Cir. 1997).

The policy considerations underlying these rules require that the Court strike a balance between the need for finality of judgment and the desire to render a just decision. *Sonulux Records,* 370 F.3d at 190; *White v. NH Dept. of Empl. Sec.,* 455 U.S. 445, 450 (1982)(noting that the Advisory Committee Notes to the 1946 amendments to Rule 59(e) explain that the rule was adopted to "[make] clear that the district court possesses the power" to correct its own mistakes in the period immediately following the entry of judgment); *Aybar,* 118 F.3d at 16 ("Rule 59(e) allows a party to direct the district court's attention to newly discovered material evidence or a manifest error of law or fact and enables the court to correct its own errors and thus avoid

-3-

unnecessary appellate procedures," *quoting Moro v. Shell Oil Co.,* 90 F.3d 872, 876 (7th Cir. 1996)). However, the rules are not to be used for the purpose of relitigating issues on which a party lost. *Dash v. Chicago Ins. Co.,* No. 00-11911-DPW, 2004 U.S. Dist. LEXIS 20682, *3 (D. Mass. Oct. 18, 2004)("A Rule 52(b) motion is meant 'to correct, clarify or amplify the findings [and] is not meant to provide an avenue for re-litigating issues on which the moving party did not prevail at trial,'" *quoting* 9 Moore's Federal Practice §52.60).

Invensys' Motions never articulate how the instant situation satisfies these legal standards. The Court determined that Invensys was not entitled to interest. [Mem. and Order at 21; Judgment]. The decision not to award interest was based upon the terms of the policy issued to Invensys by Centennial and is also well within the Court's discretion. Invensys cannot point to any clear error of law that warrants modification of the Judgment.

## II.   INVENSYS IS NOT ENTITLED TO INTEREST

The Court should adhere to its determination that Invensys is not entitled to an award of interest on any amounts previously paid by Invensys that Centennial is required to indemnify under its policy. Invensys' Motions proceed from the erroneous premise that the Court was required to award Invensys prejudgment interest at the rate of 12% from the date on which Invensys first provided notice of this claim to Centennial. Contrary to Invensys' position, there is no "automatic" entitlement to prejudgment interest. Neither Massachusetts law nor the terms of the Centennial policy require such a result. The facts of this claim as recited in the Court's Memorandum and Order at 2-12, particularly the decade of delay in providing notice to Centennial and only after the underlying case and the action against Liberty Mutual were finally resolved, fully support a decision by the Court to deny Invensys an award of interest.[3]

---

[3] Invensys' handling of its claim against Centennial equally supports denying Invensys an award of interest in these circumstances. After investigating Invensys' untimely claim for coverage

1047498v1

A.      **The Massachusetts Pre-Judgment Interest Statute Does Not Apply**

Invensys' Motions contend that the Court is obligated to award Invensys interest at the rate of 12% from date of notice based upon the provisions of G.L. c.231, §6C. [Invensys Mem. at 9-13]. As a threshold matter, Invensys has failed to demonstrate that G.L. c. 231, §6C governs this claim. By its express terms, the Massachusetts interest statute only applies when there has been an express finding of breach of contract. The Court's Memorandum and Order and accompanying Judgment do not contain any such finding of breach of contract by Centennial. Ruling that Centennial is obligated to indemnify Invensys for a portion of the underlying judgment and related settlement costs that are within the scope of the policy's definition of "Ultimate Net Loss" and finding that Centennial breached the terms of the contract are two very different things. While the Court made a determination that Centennial is obligated to do the former, it never made a finding of the latter.

This was not an oversight or error by the Court. The simple fact is that Invensys did not present any facts which, when coupled with the Court's legal construction of the Centennial policy, support a finding of breach. When Invensys first presented this claim to Centennial in June 2000, Invensys claimed to have incurred indemnity costs in connection with the *Wheeler Road Lawsuit* in the amount of $1,525,089.32. [Ex. 10 to Invensys' Statement of Undisputed Facts, Document No. 23].[4] The letter from Invensys did not include any supporting

---

more than a decade after Invensys had been sued, Centennial denied that it was obligated to indemnify Invensys under its policy on July 12, 2001. [Mem. and Order at 12]. Invensys then waited another four years, until July 2005, to commence this action against Centennial in Suffolk Superior Court. [Mem. and Order at 12].
[4] Invensys' demand also included its claimed defense costs even though this claim had never been tendered to Centennial until four years after final judgment in the underlying case had been entered. Invensys demanded defense costs even though such costs are clearly excluded from the definition of "Ultimate Net Loss." Consistent with its present attempt to turn a "profit" on this litigation, Invensys also demanded the payment of $862,384.17 in interest that had supposedly

1047498v1

documentation for these costs or any additional information concerning the ten year history of this claim. Of the amount set forth in Invensys' bare-bones letter, $259,962.90 represented interest on the underlying judgment, leaving a balance of $1,265,126.42. By that time, Invensys had already received $1,250,000.00 from Liberty Mutual. Invensys had not been reimbursed (at most) for $15,126.42, even assuming that there were no valid coverage issues (which there obviously were in light of the history of this claim as recited in the Court's Memorandum and Order). On these facts, there was no basis for the Court to have found that Centennial breached the terms of the policy; the Court made no such finding.

This Court has recognized that an essential element of a claim for interest under G.L. c.231, §6C in an insurance coverage dispute is a finding that the party from whom interest is sought breached the contract. *See Liberty Mutual Ins. Co. v. The Black & Decker Corp.*, No. 04-10648-DPW, 2004 U.S. Dist. LEXIS 17367 (Aug. 25, 2004). As Judge Woodlock summarized:

> However, the particulars of this case do not meet the requirements of §6C. The right to prejudgment interest attaches only 'upon a verdict, finding or order for judgment for pecuniary damages.' Mass. Gen. Laws c. 231, §6C. There has been no such verdict, finding, or order for judgment with respect to these claims, and presumably there never will be, for the simple reason that Liberty Mutual paid the amounts required before any verdict or judgment could issue. I do not foresee how I or a jury could issue a verdict, finding or order for judgment for pecuniary damages arising from a breach of the duty to defend in these cases, since I assume, but see supra note 1, that Liberty Mutual fulfilled that obligation. Nor could the fact that Black & Decker has requested interest itself constitute a prayer for the finding upon which to ground prejudgment interest under §6C. Such a theory 'puts the cart before the horse. One must secure a judgment or finding for pecuniary damages arising out of a breach before an entitlement to prejudgment interest can attach.' *Protective Life Ins. Co. v. Dignity Viatical Settlement Partners, L.P.*, 171 F.3d 52, 55 (1st Cir. 1999).

---

accrued on this claim during the decade before it was ever presented to Centennial. [Ex. 10 to Invensys St., Document No. 23].

-6-

*Id.* at *11-12. While this case is not precisely the same as *Black & Decker*, the principle set forth in that case and the *Protective Life Insurance Company* case on which it relies is fully applicable here. Interest should only be awarded when there is a finding of breach and the date upon which it occurred has been firmly established. The Court made no such finding here. Since Invensys did not prove a breach of contract, G.L. c. 231, §6C does not apply.

      B.      <u>The Court Should Exercise its Discretion Not to Award Interest</u>

Even if the Court were to conclude that the interest statute facially applies to Invensys' claim against Centennial, this Court, the First Circuit Court of Appeals and Massachusetts appellate courts have recognized that the ultimate determination of whether to award interest is a matter of the trial court's discretion. As Judge Woodlock stated in *Black & Decker, supra*:

> Even if §6C were in fact applicable, it would not apply as simply as Black & Decker suggests. Courts applying §6C have taken a common-sense approach towards the availability of prejudgment interest to avoid creating a windfall for either party. The particulars of this case defy a simple application of §6C and the uncomplicated resolution that would result: "At first glance, application of the rule would appear straightforward and even mechanical. . .[But] although the statute 'commands a ministerial act, its sole or primary purpose was not to provide administrative ease'. . .[and] 'we should not accept the literal words of a statute without regard for that statute's purpose and history.'"

2004 U.S.Dist. LEXIS at *13-14, *quoting Interstate Brands Corp. v. Lily Transp. Corp.*, 256 F.Supp. 2d 58, 62 (D. Mass. 2003). *See Boston Children's Heart Foundation v. Nadal-Ginard*, 73 F.3d 429, 440-442 (1st Cir. 1996)(where awarding interest at 12% would create a windfall, application of Treasury bill rates was appropriate); *Henley-Lundgren Co. v. Commonwealth*, 543 N.E.2d 698, 699 (Mass. App. 1989)(prejudgment interest not available where "there was no verdict, finding or order for judgment on the claim for extra work on which interest could be computed").

The District Court has considerable discretion in deciding whether to award prejudgment interest at all and its determination will only be set aside for an abuse of that discretion. *See Tiverton Power Associates Limited Partnership v. The Shaw Group, Inc.,* 376 F.Supp.2d 21, 24 (D. Mass. 2005)(award of prejudgment interest lies in the discretion of the court); *Hall v. Meadwestvaco Corp.,* No. 03-30310-KPN, 2005 U.S. Dist. LEXIS 9686, *13-15 (D. Mass. May 18, 2005)(award of interest is discretionary); *Monte Carlo Cruise Concessions, Inc. v. Lassman,* No. 04-12215-DPW, 2005 U.S. Dist. LEXIS 2155, *15 (D. Mass. Feb. 8, 2005)(award of prejudgment interest in a bankruptcy action is discretionary); *McDonough v. City of Quincy,* 353 F.Supp. 2d 179, 190 (D. Mass. 2005)(court has discretion to determine whether prejudgment interest is reasonable and appropriate, as well as the rate that should apply).  The Court can consider a range of equitable factors in determining whether to award prejudgment interest (and, if so, how much), including unnecessary delays by the party seeking an award of interest. *Black & Decker,* 2004 U.S. Dist. LEXIS 17367, *15, *quoting Foley v. City of Lowell,* 948 F.2d 10, 17-18 (1st Cir. 1991).

Here, the Court was clearly within its discretion to decide that the nearly fifteen years of delay by Invensys between the time when the *Wheeler Road Lawsuit* was filed and when the instant declaratory judgment action was commenced against Centennial militated against an award of prejudgment interest.  Although the Court concluded that the delays by Invensys did not constitute the material prejudice to Centennial that was necessary to bar the claim altogether [Mem. and Order at 12-18], the Court found that notice was in fact delayed for an incredibly long period of time. [Id.].  Under these circumstances, it was entirely appropriate for the Court to determine that prejudgment interest should not be awarded.  The Judgment should not be modified to include such an award.

1047498v1

### III. IN THE ALTERNATIVE, INTEREST SHOULD ONLY RUN FROM THE DATE OF SUIT OR TENDER AND AT A COMMERCIALLY REASONABLE RATE

As demonstrated above, there is no reason for the Court to amend its Judgment by providing for an award of interest to Invensys. No such amendment of the Judgment is required under Massachusetts law and in light of the clear terms of the Centennial policy. There is no equitable reason to award interest to Invensys since it waited more than a decade to present this claim to Centennial as a *fait accompli*. If, however, the Court determines that some award of interest should be made, the Court should exercise its discretion to award interest (1) only from the date on which Invensys commenced this suit against Centennial for amounts that were paid and due prior to the filing of suit; (2) from the date when any amounts paid after the suit was filed were actually tendered to Centennial; and (3) at a commercially reasonable rate, rather than at the 12% rate set forth in Mass. G.L. c. 231, §6C. To the extent that the purpose of prejudgment interest is to compensate a party such as Invensys for the lost time value of money, and taking into account the equities of the case, awarding interest in accordance with these terms will accomplish that purpose without imposing an unfair penalty upon Centennial.

### A. Interest Should Run from the Date of Suit for Costs Incurred Prior to Suit

As demonstrated herein, Centennial owed Invensys (at most) around $15,000 on the date when this claim was tendered to Centennial—not the more than $1.5 million that Invensys demanded in its initial notice letter. [Ex. 10 to Invensys' Statement of Facts]. During the period from June 2000 until July 2005 when Invensys finally commenced this action, Invensys alleges that it incurred another $157,619.56 in remediation costs pursuant to the terms of the settlement that it entered into to resolve the *Wheeler Road Lawsuit*. [Invensys Mem. at 10]. However, there is no evidence in the record which suggests that Invensys ever presented these additional

1047498v1

costs for payment by Centennial prior to the date of suit. Essentially, Centennial heard nothing more about this claim between July 2001 when it denied coverage and July 2005 when the instant declaratory judgment action was filed.

Under these circumstances, interest should be awarded (if at all) only from the date of suit. Even if the Court was to conclude that G.L. c. 231 §6C has some application to this case, the statute expressly provides that where the date of breach or demand is not established, interest runs from the date the action is commenced as to all costs incurred prior to suit.[5] *See Starr v. Fordham*, 420 Mass. 178, 194-95, 648 N.E.2d 1261, 1271 (holding that prejudgment interest is to be calculated from the date of the commencement of the suit where the date of breach or demand is not established). Moreover, since Centennial was never advised of the additional payments made by Invensys after June 2000, Centennial had no ability to reconsider the claim or to pay these costs. A party such as Invensys should not be encouraged to fail to tender the additional items of claimed indemnity to its insurer, or to promptly file a declaratory judgment action to resolve the matter, because it can earn a greater return on the "claim" than would be the case if it actually had the funds available to invest at the prevailing interest rate. Accordingly, for all costs incurred by Invensys prior to July 2005, any award of interest should only run from the date of suit.

---

[5] Although Invensys made some form of "demand" to Centennial on June 9, 2000, the lack of supporting documentation and the fact that Invensys was making claims for amounts that were wholly inconsistent with the terms of the Centennial policy (such as for the recovery of defense costs and more than $800,000 in interest) suggests that this date should not be used to calculate any interest that may be owed. *See Shapiro v. Am. Home Assurance Co.*, 616 F.Supp. 906, 918 (D. Mass. 1985)("Although the [prejudgment interest] statute states that interest should be awarded 'from the date of the breach or demand,' it would be highly inequitable to award interest from the date of the demand letter, at which time defendant insurers had been given no opportunity to affirm coverage and avoid any breach. Were I to accept the plaintiffs' assertion [that interest accrues from the date of their letter demanding coverage], parties to a contract would have an inducement to send immediate demand letters to each other so as to allow for the computation of interest from the date of such letters in the event of any future breach.")

### B. Interest on Post-Suit Costs Should Run from the Date of Tender

Similarly, to the extent that Invensys incurred additional costs for remediation at the site after this suit was filed, Invensys has failed to present any evidence as to the date on which these costs were submitted to Centennial for payment. It is not until Invensys offers proof of its tender of payment for these costs that the dates for Invensys' loss of use of its own funds can be established. *Liberty Mutual Ins. Co. v. Continental Cas. Co.*, 771 F.2d 579, 584 (1st Cir. 1985). Just as Invensys claims that Centennial had ongoing obligations under its policy to indemnify Invensys for costs incurred relating to this claim, Invensys' reciprocal duties under the policy did not end when it filed this action. In particular, the Centennial policy specifically obligates Invensys to "assist and cooperate" with Centennial in the handling of a claim and to promptly present any claim for payment under the policy. [*See* Conditions E, F and H to Centennial Policy; Ex. 5 to Centennial's Statement of Facts, Document No. 20].[6] Invensys has offered no proof that it complied with these terms and conditions. Accordingly, Invensys should either be barred from obtaining interest on these amounts or be limited to interest from the date on which it provided actual notice to Centennial of these additional costs.

### C. Interest Should Be at a Commercially Reasonable Rate

Finally, it cannot be open to dispute that the statutory interest rate of 12% set forth in G.L. c. 231, §6C bears no reasonable relationship to prevailing market interest rates during the period from June 2000 to the present. As many cases have noted, the purpose of interest is to put a party who has been deprived of the loss of use of funds in a position comparable to the position the party would have been in if it had received timely payment. *Perkins School for Blind v. Rate Setting Commission,* 383 Mass. 825, 835, 423 N.E.2d 765 (1981)(primary purpose of

---

[6] A more readable copy of the Centennial Policy is attached as Exhibit A to Centennial's Memorandum of Law in Opposition to Plaintiff Invensys Systems, Inc.'s Motion for Summary Judgment dated November 1, 2006 [Document No. 27].

prejudgment interest is "to compensate a damaged party for the loss of use or unlawful detention of money"); *Monte Carlo Cruise Concessions, Inc. v. Lassman,* No. 04-12215-DPW, 2005 U.S. Dist. LEXIS 2155, * 15 (D. Mass. Feb. 8, 2005)(purpose of prejudgment interest is not punitive but compensatory). The intent of the interest statute is not to enable a party to obtain a "windfall" or make a "profit" on a claim. *Black & Decker,* 2004 U.S. Dist. LEXIS 17367, *15-16. Accordingly, the Court has discretion as to the interest rate to be applied. *Black & Decker,* 2004 U.S. Dist. LEXIS 17367, *23-24 (interest should be awarded at a commercially reasonable rate); *Radford Trust v. First UNUM Life Ins. Co.,* 321 F.Supp.2d 226, 252 (D. Mass. 2004)(noting in ERISA case that District Courts have "considerable discretion in determining whether to award interest, as well as in determining the appropriate period and rate").

Here, Centennial suggests that if interest is to be awarded at all it should be at the commercially reasonable rate based upon the Treasury bill rates specified in 28 U.S.C. §1961 governing awards of interest in federal court actions. Numerous cases have recognized that awarding interest at the rate specified in this statute is intended to mirror the actual lost time value of funds because it reflects a commercially reasonable rate. *Black & Decker,* 2004 U.S. Dist. LEXIS 17367, *24 ("[a]n appropriate market rate would be the weekly average one-year constant maturity United States Treasury yield. Cf. 28 U.S.C. §1961 (establishing this as federal rate for postjudgment interest)"); *McDonough v. City of Quincy,* 353 F.Supp.2d 179, 191-192 (D. Mass. 2005)(awarding interest at the rate of 1.41% in Title VII case); *Troy v. Bay State Computer Group, Inc.,* No. 92-12267-RCL, 1997 U.S. Dist. LEXIS 2580, *23-27 (D. Mass. March 4, 1997)(reversing initial determination to apply 12% interest rate). Awarding interest in accordance with this statute accomplishes the purpose of compensating a party for the lost time value of money without creating any prospect of a "windfall" because the rate set forth in the Massachusetts interest statute bears no reasonable relationship to actual interest rates that were

commercially available during the time that Invensys was out of pocket for any costs relating to the *Wheeler Road Lawsuit.*

This case presents a particularly compelling situation in which any interest awarded should be limited to a commercially reasonable rate. Invensys delayed notifying Centennial of this claim until ten years after the underlying *Wheeler Road Lawsuit* had been filed and four years after final judgment had been entered. [Mem. and Order at 11]. Invensys waited another four years after Centennial denied coverage for this claim before it filed the instant action. [Mem. and Order at 12]. Invensys has never offered any reasonable explanation for these excessive delays. The Court should not take any action which would "reward" Invensys for its delay in presenting this claim to Centennial and, once it was determined that it could not be resolved, promptly seeking a judicial resolution. Awarding interest (if at all) only at the commercially reasonable rate established by 28 U.S.C. §1961 accomplishes this result.

### IV. INVENSYS' CALCULATION OF DAMAGES IS ERRONEOUS

In its Motions, Invensys claims that Centennial presently owes Invensys the sum of $743,489.24 for the costs that it has incurred to date, as well as the hundreds of thousands of dollars of interest that Invensys claims should be awarded on top of those costs.[7] Centennial's calculation of damages is wrong. At most, the Court should find that Centennial presently owes Invensys the sum of $187,068.82.

---

[7] While Invensys does not provide the Court with a precise calculation of its interest claim, Invensys asserts that interest should be awarded at the rate of 12% per year on a total of $575,089.30 for the more than six and one-half years since June 2000 when notice of this claim was first provided to Centennial. [Invensys Mem. at 10]. As of now, this would add ***approximately 80%*** onto the amounts claimed by Invensys. More than 50% of that amount is attributable to the nearly four year period between the time that Centennial advised Invensys that it would not agree to provide coverage for this claim and when Invensys finally commenced suit.

A.      **Centennial Does Not Owe Interest Included in the Original Judgment**

The Court has already determined that Invensys is not entitled to recover any interest that was added to the amount of the original judgment in the *Wheeler Road Lawsuit*. As the Court stated: "Centennial must indemnify Invensys for its ultimate net loss, including unreimbursed indemnity costs arising from the Wheeler Road Lawsuit as well as future remediation costs, but not the interest on the underlying judgment, all pursuant to the terms of the policy." [Mem. and Order at 21]. This same statement is included in the Court's Judgment. This should end the matter.

Invensys has not even attempted to demonstrate how (if at all) the Court erred in reaching this result. The Court was simply enforcing the plain and unambiguous terms of the Centennial policy. In particular, the insuring agreement contained in the Centennial policy states that Centennial only agreed to provide coverage for "Ultimate Net Loss," which is defined as follows:

> (10) **Ultimate Net Loss** – The term "Ultimate Net Loss" shall mean the sum actually paid or payable in cash in settlement or satisfaction of losses for which the insured is liable either by adjudication or compromise with the written consent of the company,[8] after taking proper deduction for all recoveries and salvages collectible, ***but excludes*** all loss expenses and legal expenses (including attorneys' fees, court costs and interest on any judgment or award) and all salaries of employees and office expenses of the insured, the company or any underlying insurer so incurred. This insurance shall not apply to defense, investigation, settlement or legal expenses covered by underlying insurance.

[Mem. and Order at 7, n. 4 (emphasis added)].

---

[8] To the extent that Invensys is claiming coverage for costs that it paid pursuant to the terms of the post-judgment settlement agreement that it entered into with the plaintiff in the *Wheeler Road Lawsuit*, it is undisputed that the agreement was not entered into with the "written consent" of Centennial as the agreement predated the first notice to Centennial by several months.

Invensys did not contend, nor did the Court find, that this language was ambiguous in any way. This provision sets forth the types of losses that are within the scope of the policy and those that are not. Under this definition, "interest on any judgment or award" is clearly excluded. The Final Judgment that was entered against Invensys in the *Wheeler Road Lawsuit* included an award of interest. Specifically, the Final Judgment [Ex. 2 to Invensys' Statement of Undisputed Facts; Document No. 23] required Invensys to pay $335,515.00 in environmental response costs. The Final Judgment further provided, however, that Invensys was required to pay $217,082.79 in pre-judgment interest on these damages. It is undisputed that Invensys paid another $42,880.11 in post-judgment interest, representing interest from the date of judgment through the date in October 1996 when the judgment was paid. [Invensys Mem. at 3]. There is no reason why these amounts should be included in calculating the amount of "Ultimate Net Loss" that Centennial is required to pay under its policy. These costs are specifically and clearly excluded, and the Court so found. The Judgment should not be modified.

The various "theories" put forth by Invensys regarding the treatment of interest [Invensys Mem. at 4-12] bear no relationship to the terms of the Centennial policy. Centennial's obligations cannot be expanded based upon what was included or not included in the Liberty Mutual policy with respect to payment of interest, particularly since Liberty Mutual was a primary insurer with both the right and the duty to defend suits against Invensys. If anything, Invensys' argument simply proves that it settled too cheaply with Liberty Mutual and is now trying to make up the difference for its bad decision from Centennial.

B.  **Centennial Does Not Owe Any Defense Costs**

For the same reasons that are set forth above, none of the defense costs incurred by Invensys in the *Wheeler Road Lawsuit* (whether reimbursed by Liberty Mutual or not) should be included in any calculation of what Centennial owes under its policy. The definition of

"Ultimate Net Loss" contained in the Centennial policy excludes all legal expenses. The policy specifically states that "[t]his insurance shall not apply to defense, investigation, settlement or legal expenses covered by underlying insurance." There is no question that the costs of defending the *Wheeler Road Lawsuit* were covered by the underlying Liberty Mutual policies. Indeed, prior to the time that Invensys settled with Liberty Mutual, the Massachusetts Superior Court found that Liberty Mutual had such a defense obligation. [Centennial's St., ¶25 and Ex. 8 thereto]. The Court ruled that Centennial had no obligation to defend Invensys for the underlying suit. [Mem. and Order at 17-18]. Accordingly, the Court's calculation of the amounts that Centennial owes should entirely exclude all defense costs incurred by Invensys, whether they were recovered from Liberty Mutual or not.

    C.    **Centennial is Entitled to an Offset for the Full Amount of the Liberty Mutual Settlement**

The logical corollary of the "Ultimate Net Loss" provision is that Centennial is entitled to an offset for the entire amount of the recovery that Invensys obtained from Liberty Mutual without regard to how Invensys and Liberty Mutual agreed to allocate that amount in the settlement agreement they negotiated. Centennial was not a party to those negotiations; the voluntary "allocation" between defense and indemnity costs agreed to by those parties cannot be used as a basis to expand Centennial's contractual obligations. An insured that settles with another insurer "should, in fairness, bear the risk of settling too conservatively." *A.W. Chesterton Co. v. Mass. Insurers Insolvency Fund*, 445 Mass. 502, 525 (2005).

As quoted above, the definition of "Ultimate Net Loss" contained in the Centennial policy requires that the amount that Centennial owes on a covered claim be computed "after taking proper deduction for all recoveries and salvages collectible. . ." The policy does not grant Invensys the right to determine how to allocate any such "recoveries or salvages" or bind

Centennial to agreements that were entered into between the policyholder and another insurer. The Centennial policy states that Centennial is entitled to a credit for "all" recoveries and salvages, not just those that Invensys agrees should serve as an offset to Centennial's liabilities. The uncontested fact is that Invensys "recovered" the sum of $1,250,000 from Liberty Mutual in connection with this claim. [Mem. and Order at 10]. The full amount of this settlement should be deducted from the total amounts incurred by Invensys on this claim before Centennial can be required to contribute any amounts. Otherwise, Invensys would be recovering twice for the same loss. *See Danca v. Taunton Savings Bank*, 385 Mass. 1, 10 (1982)(plaintiffs who sought damages in other suits from different defendants for the same losses should not be allowed to recover twice); *Villarini-Garcia v. Hosp. Del Maestro*, 112 F.3d 5, 7 (1st Cir. 1997)(settlement payments to plaintiff from one of several joint tortfeasors reduce any judgment later secured against non-settling tortfeasor).

  Invensys' suggestion that Centennial is trying to take advantage of the Liberty Mutual settlement and obtain a "windfall" is entirely inappropriate. The Court expressly found that Invensys breached the notice provision in the Centennial policy. [Mem. and Order at 12]. It was uncontested that Liberty Mutual issued policies to Invensys over the period from at least 1970 to 1971 and that the contamination at the Invensys facility took place over the course of at least several decades. [Ex. B to Centennial's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, 11/1/06; Mem. and Order at 2-5]. The Liberty Mutual policies had collective limits of liability of at least $15 million. Invensys advanced the position in its litigation with Liberty Mutual that, as a result of Liberty Mutual's wrongful failure to defend Invensys in the *Wheeler Road Lawsuit*, Liberty Mutual was estopped from denying its obligation to indemnify Invensys. [Invensys St., ¶¶67-69 and Ex. 34 thereto]. Based upon these legal positions, Invensys apparently negotiated what it believed was a favorable settlement before

-17-

Centennial had any reason to know that Invensys intended to pursue a claim against Centennial. Invensys was hardly doing Centennial a "favor" and, in any event, the clear policy language mandates that Centennial receive a credit for the full amount of the Liberty Mutual settlement without regard to how Invensys and Liberty Mutual elected to allocate the settlement between defense costs and indemnity.

The fact that Invensys now contends that under decisions such as *Rubenstein v. Royal Insurance Company,* 44 Mass.App.Ct. 842, 852, 694 N.E. 2d 387, 388 (1998)[9] it is entitled to "pick and choose" which policies it wants to be indemnified for with respect to the *Wheeler Road Lawsuit* [Invensys Mem. at 4] only serves to illustrate why the late notice to Centennial was inherently prejudicial. Invensys apparently now claims that it can select any year of coverage to apply to this claim and that all it needs to do is exceed $100,000 in costs to reach the Centennial excess policy. If that is the case, then the failure to have notified Centennial of this claim at an earlier point in time is even more egregious. Invensys clearly knew very early in the suit that the costs of remediation could easily exceed $100,000, yet chose not to give notice to Centennial. It should not be permitted after the fact to transform its failure to give timely notice

---

[9] Centennial disagrees that *Rubenstein* correctly states the law of Massachusetts. The Massachusetts SJC has never directly addressed the issue of allocation in the context of an environmental coverage claim, nor indicated that it approves of the holding in *Rubenstein*. The decision in *Rubenstein* has no bearing on this case to the extent that *Rubenstein* only deals with a situation where there are insurers who are consecutively on the risk over a long period of time. *Rubenstein* does not address any issue concerning the interaction of a primary and excess policy in the same year. Moreover, while Invensys contends that Centennial did not raise the issue of allocation in the proceedings before the Court, that is not correct. Centennial specifically contended that the costs incurred by Invensys relating to the *Wheeler Road Lawsuit* should be allocated on a *pro rata* basis over the entire period of alleged injury. *See* "Defendant Centennial Insurance Company's Memorandum of Law In Opposition to Invensys Systems, Inc.'s Motion for Summary Judgment" dated November 1, 2006 at 13-18 [Document No. 27]. If the Court were to allocate these costs over the entire period when the contamination occurred, the claim would never reach Centennial's layer of coverage. The Court did not rule upon the allocation issue in its Memorandum and Order.

to Centennial into a justification for not applying the full amount of the recovery from Liberty Mutual to offset Centennial's obligation to indemnify.[10]

D.   **The Bottom Line**

Based upon the analysis set forth above, the Court should calculate the judgment in this matter as follows:

| | | |
|---|---|---|
| 1. | Judgment in *Wheeler Road* Lawsuit | $927,431.00 (excludes interest) |
| 2. | Post-Judgment Settlement | $337,886.40 |
| 3. | Additional Remediation Costs | $171,751.42 |
| **SUB-TOTAL** | | **$1,437,068.82** |
| 4. | Less Liberty Mutual Settlement | $1,250,000.00 |
| **TOTAL** | | **$187,068.82** |

## CONCLUSION

The clear intent of the Court's Memorandum and Order and Judgment was to require Centennial to indemnify Invensys for its unreimbursed costs relating to the *Wheeler Road Lawsuit* to the extent that such costs are within the scope of the "Ultimate Net Loss" provision in the Centennial policy. The Court should not do more. Invensys' Motions seeking to make a profit on this matter should be denied.[11]

---

[10] Further, as noted in "Defendant Centennial Insurance Company's Memorandum of Law in Opposition to Invensys Systems, Inc.'s Motion for Summary Judgment" dated November 1, 2006 at 18-19 [Document No. 27], in addition to the definition of "Ultimate Net Loss," the Centennial policy contains an "other insurance" provision which requires an offset for all other insurance that is "collectible" by the policyholder. At a minimum, this provision should be read to require that all amounts actually "collected" by Invensys from another insurer be applied to reduce Centennial's liability in order to avoid any possibility of a double recovery.

[11] In light of the fact that Invensys is entitled under the Court's rulings to far less than what it claimed, the Court should further exercise its discretion to deny Invensys' request for an assessment of costs against Centennial. The Court did not make any award of costs in its Judgment.

>Respectfully submitted,
>
>The Defendant,
>CENTENNIAL INSURANCE COMPANY,
>
>By its Attorneys,
>MORRISON MAHONEY LLP
>
>*/s/ John T. Harding*
>
>───────────────────────────────
>John T. Harding, BBO No. 221270
>250 Summer Street
>Boston, MA 02210
>(617) 439-7500
>(617) 342-4888 (facsimile)

Dated:  February 23, 2007

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 23, 2007.

>*/s/ John T. Harding*
>
>───────────────────────────────
>John T. Harding, Jr., BBO No. 221270

-20-

1047498v1